IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Case Number:  0:10-cv-60786-Cooke/Bandstra

COQUINA INVESTMENTS,

      Plaintiff,

vs.

SCOTT W. ROTHSTEIN and TD BANK, N.A.,

      Defendants.

FILED by _AJS_ D.C.

MAY 1 2 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. MIAMI

RULE 7.5 (C) STATEMENT OF FACTS

TD Bank, N.A. ("TD Bank" or the "Bank"), submits the following statement of
undisputed material facts which entitle the Bank to summary judgment.

    1.    As an integral part of his scam, Scott Rothstein used employees at Rothstein
Rosenfeldt Adler, P.A. ("RRA"), to create false TD Bank documents, including letters from
former Regional President of TD Bank Frank Spinosa, false accountant balance statements, and
indeed a fake TD Bank website, which were used by Rothstein to persuade Plaintiff Coquina
Investments ("Coquina") and other investors that their investments were genuine and secure.
(*See infra* at ¶¶ 2-6.)

    2.    Debra Villegas was Rothstein's long-time paralegal and office manager who
eventually became the chief operating officer for RRA.  Curtis Renie was RRA's Director of
Information Technology.  Villegas, who pled guilty and was sentenced to 10 years in prison,
acknowledged at her plea hearing and deposition that she prepared fictitious settlement
agreements and forged the names of plaintiffs and defendants.  Villegas Dep. at 9-15, 18, 20-22;
30 attached to the Holly Skolnick Declaration[1].  Documents produced by the Bankruptcy Trustee

---

[1] Excerpts from all deposition relevant transcripts and exhibits are attached to the Skolnick Declaration.

in the RRA bankruptcy, *In re Rothstein Rosenfeldt Adler, P.A.*, No. 09-34791-BKC-RBR (filed Nov. 10, 2009), and marked as exhibits at Villegas' recent deposition demonstrate the extent of Rothstein's manipulation of TD Bank. The authenticity and chain of custody of those exhibits is addressed in the Foster Declaration attached as Exhibit G to the Skolnick Declaration.

3.      Exhibit 4 is a Rothstein email directing Villegas to create a bank statement "just the way we did before" using "our standard bank statement format" with the account information Rothstein provides in the email and directing her to attach the bank statement to a letter purportedly from Spinosa, the exact contents of which were spelled out by Rothstein in the email. Exhibit 5 is Villegas' completion of the assignment.

4.      Exhibits 6-9 are email exchanges in September 2009 between Rothstein and Villegas. Exhibit 6 shows Villegas creating an unsigned Spinosa letter with the notation, "THIS IS A TEST," which purports to have Spinosa state that the Coquina 11 Trust Account contained $32 million. Exhibit 8, marked "FINAL TEST," is the same letter with Spinosa's forged signature. Exhibit 9 is a forged letter from Spinosa to Rothstein dated September 30, 2009, apologizing for issues accessing the bank's "updated internet banking system" and offering to pay RRA's clients 20% interest for any delay. Spinosa's signature on Exhibit 8 and Exhibit 9 are identical.

5.      Exhibit 14 is another email exchange between Rothstein and Villegas preparing a fake TD Bank letter with Spinosa' fake signature. Exhibit 15 is another exchange between Rothstein and Villegas but this time concerning how to fake a hard copy of a Spinosa document with his signature. Rothstein directs Villegas: "Need an 'original' of franks letter," "Color copier." Villegas responds: "I have in color but how do I get an inked signature. I only have copies of his signature." Rothstein: "Try something whatever u can do"

2

6.      Rothstein also had a TD Bank website created on the firm computer system. Exhibits 12, 13, 16-22 are emails between Rothstein and/or Villegas and Curtis Renie, the firm's IT director, relating to the fake TD Bank website Rothstein had installed and maintained. Exhibits 12 directs Renie to "set up another td line on balance summary." Exhibit 13 directs Renie (and Bill Corte) to "add to my TD balance screen a new account  Account number 6861255567 Name of Account  RRA SL2  Balance is 20m" Exhibit 15 is a screen shot of an Updated account balance sheet of various fake RRA account balances at TD Bank. Exhibit 17 is Renie requesting a few minutes from Rothstein to update the links for TD on his computer. Exhibit 18 is an email exchange directing Renie to update the TD stuff and to "get rid of thing that says h drive on my system immediately" which would have identified to anyone seeing this that the website was not a TD Bank website. Renie complied. Exhibit 19 is an email exchange reprimanding Renie and reminding him "to update td everyday first thing. . . . it has not been updated since 7/29" and Renie's apology. Exhibits 20-22 are emails from Villegas to Renie relating fake documents for both TD incoming and outgoing wire transfers. Exhibit 20 directs Renie to "REPLACE the wire sheet with the attached, " a 17-page listing of wire transfers purportedly from February 4 through May 15, 2009.

7.      Both the falsified bank statements and wire transfers reports and fake website (and other machinations) would be used by Rothstein to entice Coquina investments and specifically when he met with Coquina representatives on their due diligence visits. (*See infra* at ¶¶ 17-23.)

8.      There is no evidence that TD Bank had any role in directing, operating, or managing Rothstein's scheme.

Greenberg Traurig P.A.   Attorneys at Law   333 Avenue of the Americas | Suite 4400 | Miami, FL 33131-3238 | Tel 305.579.0500 | Fax 305.579.0717  www.gtlaw.com

| D. | S 31 | June 23, 2009 | $1,100,000 |
|---|---|---|---|
| E. | S 39 | July 2, 2009 | $2,800,000 |
| F. | S 43, S 44 | July 16, 2009 | 51,200,000 |
| G. | S 80, S 81, S 82 | July 29, 2009 | $1,800,000 |
| H. | S 119, 120, 121. 121 123 | August 11, 2009 | $4,000,000 |
| I. | S 127 (partial payment) | August 18, 2009 | $5,000,000 |
| J. | S 127 (partial payment) | August 20, 2009 | $10,000,000 |
| K. | S 143, 144 | September 11, 2009 | $4,000,000 |
| L. | S 154 | September 29, 2009 | $5,000,000 |

15.     TD Bank had no part in soliciting or introducing Coquina to Rothstein's fake investments. The idea of investing in Rothstein's structured settlements was raised by Mel Klein in early 2009. 30(b)(6) Dep. at 28-29. Klein's close friend Ira Sochet had participated in several Rothstein deals. 30(b)(6) Dep. at 33; 37-38, 99. Hawn had a lot of confidence in Klein. 30(b)(6) Dep. at 29. Sochet made the Rothstein investments through Mike Szafranski who was for years a close friend of Socket's and had worked together in New York. 30(b)(6) Dep. at 33. The sample deal Szafranski sent to White for review was a deal in which Socket had participated and Sochet in fact participated in the first investment Coquina made. 30(b)(6) Dep. at 38, 96. Sochet trusted Szafranski and Klein relied on Socket. Klein Dep. at 60-61; 30(b)(6) Dep. at 99-100. When asked what he did to check on Szafranski's background, Klein testified he relied upon Sochet. Klein Dep. at 61.

16.     In deciding to invest in the Rothstein settlement deals, Coquina relied upon Klein's relationship with Sochet, Sochet's recommendation of Szafranski and his integrity, and

Greenberg Traurig P.A.   Attorneys at Law   333 Avenue of the Americas | Suite 4400 | Miami, FL 33131-3238 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

Coquina's understanding that Szafranski was professionaly competent and would use due professional care in his verifications. 30(b)(6) Dep. at 100-01.

17.     Szafranski was the gateway to Rothstein's deals and served as a finder and verifier for which he was paid 15% of Coquina's profits. 30(b)(6) Dep. at 61-69. Prior to Coquina's investments, Szafranski would verify in emails that the plaintiff and Rothstein had signed the agreements upon which Coquina would lend. 30(b)(6) Dep. at 98; 101; 164-165. Szafanski would also verify that the defendant had wired the settlement funds into Rothstein's firm's trust account. He represented that he did this by signing onto a website to view an RRA trust account at TD Bank and by viewing an unredacted copy of the wire receipt. 30(b)(6) Dep. at 101; 168; 186-190. Szafranski would go to Rothstein's office to access TD Bank's website. 30(b)(6) Dep. at 104. Szafranski told White that he had his own account with an exchange company who controls wire transfers to verify the wire transfers. 30(b)(6) Dep. at 102; 105; 155. No one from Coquina questioned Szafranski on this supposed system. 30(b)(6) Dep. at 105-106.

18.     Szafranski was deposed on April 11, 2001, and asserted the Fifth Amendment in response to all substantive questions he was asked related to his online system. Szafranski at Dep. 184.

19.     Coquina's due diligence of the Rothstein deals was done by White, Klein and Barry Damson whom Klein brought in because Damson liked tracking down deals and had more expertise. 30(b)(6) Dep at 46. Coquina relied on Damson, Klein and Ben Wallace, all lawyers, to conduct due diligence and review settlement documents and to ensure that Szafranski had the legal right and authority to undertake his obligations. 30(b)(6) Dep. at 39-40; 43-45; 75; 77-78; 84-86.

Berger Singerman, attorneys at law  200 Avenue of the Americas  Suite 4400  Miami, FL 33131-2345  Tel 305.579.0500  Fax 305.579.0717  www.bergersingerman.com

20.     Klein traveled to Ft Lauderdale and had a due diligence meeting with Rothstein on March 27, 2009 that lasted about an hour and a half to two hours. Klein Dep. at 46-7. Klein had no conversations with Rothstein concerning any specific investment by Coquina. Klein 97-98. After the meeting with Rothstein, Klein's additional due diligence consisted of listening to White and Damson who were really doing the due diligence with Rothstein and Szafranski. Klein also had some further conversations with Ira Sochet. Klein Dep. at 77-78.

21.     Coquina's due diligence with respect to TD Bank was in terms of the structure of Toronto Dominion Bank. That is, to ensure that TD Bank was subject to US regulations as a depository bank. Klein Dep. at 77-78; 30(b)(6) Dep. at 91.

22.     White and Damson conducted due diligence on July 7 and 8, 2009 at Rothstein's offices, although Damson, the lawyer whom White testified Coquina was relying on, was not present during a large part of Rothstein's presentation. 30(b)(6) Dep. at 90- 91; 120; 127; 137, 147, 154. White wrote a report of her meeting with Rothstein. 30(b)(6) Dep. Exhibit 13. Even before the July 7-8 due diligence trip, Coquina had purchased the following investments: S13, S25, S32, S31 and S39. 30(b)(6) Dep. at 122.

23.     During White's due diligence meeting with Rothstein, Rothstein purportedly gave White a bank statement for the firm's trust account. 30(b)(6) Dep. at 131-136. Rothstein purportedly went on-line to view TD Bank online records for RRA's trust account. Rothstein made White turn her back while he entered his password. 30(b)(6) Dep. at 137-142. White asked for a separate account for Coquina and the ability to verify the trust account online, but Rothstein ultimately told her that the firm's account was proprietary and that she could not have access. 30(b)(6) Dep. at 142. White cannot confirm that the on-line access was actually a true TD Bank website.

Greenberg Traurig, P.A.   Attorneys at Law   333 Avenue of the Americas   Suite 4400   Miami, FL 33131-3238   Tel 305.579.0500   Fax 305.579.0717   www.gtlaw.com

24.     There is no evidence that Coquina had any contact with anyone at TD Bank prior to August 2009.

25.     As the chart in paragraph 14 above demonstrates, Coquina invested $13.7 million in Rothstein settlements before it received an August 17, 2009 so-called "lock" letter from Rothstein, countersigned by Spinosa.

26.     Coquina acknowledges that the August 17, 2009 so-called lock letter and the letters to Rothstein from TD Bank employees referencing transmittal of RRA account balance statements were provided to them solely by Rothstein.  30(b)(6) at 203.  The letters from TD Bank to Rothstein dated August 17, 2009 from Ana Tarazona and dated October 21, 2009 from Reggie Araujo, marked respectively as Exhibits 10 and 11 at the Villegas deposition, each attach false TD Bank statements created by Rothstein and his RRA cohorts.

27.     Klein was unable to point to any false representation in the so-called "lock" letter. Klein Dep. at 114-5.

28.     Coquina claims that a telephone call among Mel Klein, Barrie Damson, Rothstein, and a person who identified himself as Spinosa was the first verbal communication between Coquina and anyone who purported to be from TD Bank.  Coquina further claims that this call occurred in August 2009.  30(b)(6) Dep. at 214-15.

29.     On September 25, 2009, White and Damson again met with Rothstein at RRA's offices.  After witnessing the execution of settlement document by a purported Rothstein client in a deal Coquina would invest $5,000,000, Rothstein took White and Damson to meet Spinosa at the bank's executive offices. Coquina claims that Spinosa assured White and Damson that he was familiar with Coquina's account, was familiar with the account's restrictions, knew Scott Rothstein real well and that everything was fine.  30(b)(6) Dep. at 247-256.

GENOVESE JOBLOVE & BATTISTA, P.A. · Attorneys at Law · 100 Avenue of the Americas · Suite 4400 · Miami, FL 33131-3238 · Tel 305.579.0500 · Fax 305.579.0717 · www.gjb-law.com

30.     Near the end of September, after an installment payment was due to Coquina was missed, Coquina received from Rothstein a fake letter he created purportedly from Spinosa apologizing for the failure of TD Bank's online banking systems. 30(b)(6) Dep. at 268-269. As noted, this letter was marked as Exhibit 9 at Villegas' deposition. Spinosa's signature on Exhibit 9 is exactly the same as on Exhibit 8. (*See supra* at ¶ 4.)

31.     In the first deal in which Coquina participated, under the settlement agreement with the defendant the plaintiff would have been entitled to four equal monthly installments of $300,000. 30(b)(6) Dep. at 87-89. Coquina was funding $600,000 to the plaintiff. No one at Coquina though it strange that the plaintiff was willing to give up $300,000 to get her money four months earlier. 30(b)(6) Dep. at 88-89. Klein acknowledged that it occurred to him that Rothstein was taking advantage of his own clients, Klein Dep. at 84, but that Rothstein had answers when asked. Klein Dep. at 85-86. It also occurred to Klein that Rothstein was taking advantage of vulnerable people and had a conflict of interest. Klein Dep. at 92-96.

32.     Coquina received an email from Szafranki indicating that Rothstein had 31 more cases ready and that Rothstein had negotiated with the defendants' lawyers to send him $20,000 of their fee which Rothstein would kick back to funders who funded five cases or more. 30(b)(6) Dep. at 180-181.

33.     Coquina did not think it odd that so many of Rothstein's clients were willing to give up so much money to avoid waiting a few months. 30(b)(6) Dep. at 127; Klein Dep. at 103-108.

34.     Coquina never asked Rothstein, given the confidentiality agreements the plaintiffs and defendants signed, how Szafranski was able to review the underlying documents. 30(b)(6) Dep. at 128-129.

9

35.     On or about July 1, 2009, Coquina received from Szafranski a verification for settlement S39 that $6,072,000 had been deposited from the defendant's bank account to Rothstein's bank account trust account at TD Bank.   30(b)(6) Dep. at 186; 190; Ex. 19. Although the underlying documents for the deal sent to Coquina was dated July 1, the Acknowledgement of Assignment/Purchase was dated August 1, 2009.  30(b)(6) Dep. at 191-192. No one questioned whether there may be a problem with the documentation. *Id.*

36.  Similarly, no one questioned the authenticity of an email verification of a purported incoming wire transfer into RRA account from Bank of America in the amount of $64,260,000. 30(b)(6) Dep. at 193-198.

37.     To entice Coquina to make a large investment, Rothstein told Barrie Damson that he would pay Szafranksi's fee on the deal.  30(b)(6) Dep. at 209-210.

38.     In the last deal Coquina did, White witnessed a fake plaintiff (Steve Caputi) execute the agreement.  This was purportedly a whistleblower case with the defendant being a juice company.  The settlement was $10 million and the plaintiff agreed to accept $5 million. 30(b)(6) Dep. at 221- 247.  Rothstein needed Coquina to fund the deal and threw in his fee into the deal.  The settlement paperwork incorrectly listed the consideration as $1,300,000.  30(b)(6) Dep. at 229.  Under the settlement agreement, the plaintiff would receive $5 million on October 25 and $5 million on November 25.  Thus, Coquina contemplated a $5 million return in just two months.  30(b)(6) Dep. at 235.  The settlement documents listed the defendant as Supreme Manufacturing instead of a juice company.  30(b)(6) Dep. at 237.  Although Coquina had not agreed to fund at the time, the documents signed by Caputi and witnessed by White and specifically the Sale and Transfer Agreement actually had Caputi selling the purported rights to the settlement to Coquina on September 25.  30(b)(6) Dep. at 237.

... ... ... ...   ... ... ... ... ... ... ...  333 Avenue of the Americas  Suite 4400  Miami, FL 3313-3235  Tel 305.579.0500  Fax 305.579.0717  www.gtlaw.com

9.      There is no evidence that TD Bank had any knowledge that the structured settlements that Rothstein was offered as investments were fictitious.

10.     There is no evidence that TD Bank had any knowledge of Rothstein's fraudulent scheme. TD Bank was not a party to any of the settlement investment agreements.

11.     There is no evidence that TD Bank misappropriated any of Coquina's funds for its own use or benefitted from Rothstein's fraudulent scheme.

12.     Coquina is a Texas general partnership principally used by the family of George S. Hawn and associates as a vehicle for investments. Deposition of Rule 30(b)(6) witness, Kathleen White, Coquina's chief financial officer ("Rule 30(b)(6) Dep.") at 7-8.   White was responsible for due diligence and managing the Hawn investments.   30(b)(6) Dep. at 17-18. Aside from the Hawn family, Coquina investments in Rothstein's structured settlements were made by Mel Klein, a long time friend of Hawn's, and Barry Damson, a long time friend of Klein's and others, including White herself.   30(b)(6) Dep. at 99-100; Deposition of Melyvn Klein ("Klein Dep") at 46.

13.     Coquina was not a customer of TD Bank. 30(b)(6) Dep. at 115.

14.     From April 29, 2009 to September 29, 2009, Coquina purchased fraudulent structured settlements which are identified in the following chart from paragraph 42 of the Complaint.

|  | Settlement Agreement Number | Date of wire transfers from Coquina to Defendants | Amount Coquina wire transferred to TD Bank |
|---|---|---|---|
| A. | S 13 | April 29, 2009 | $600,000 |
| B. | S 25 | June 2, 2009 | $800,000 |
| C. | S 32 | June 22. 2009 | $1,400,000 |

4

40.     No one at Coquina questioned these errors:  Coquina looked forward to quick,

rich return on its investment.

Respectfully submitted this 11 day of May, 2011.

HOLLY R. SKOLNICK
Florida Bar No. 390860
skolnickr@gtlaw.com
Danielle N. Garno
Florida Bar No. 492027
garnod@gtlaw.com
GREENBERG TRAURIG, P.A.
333 Avenue of the Americas
44th Floor
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

GREENBERG TRAURIG, P.A.
333 Avenue of the Americas
44th Floor
Miami, FL  33131
Telephone:  (305) 579-0735
Facsimile:  (305) 579-0717

MARK P. SCHNAPP
Florida Bar No. 501689
schnappm@gtlaw.com

DONNA M. EVANS
Admitted *Pro Hac Vice*
Massachusetts Bar No. 554613
*evansd@gtlaw.com*
GREENBERG TRAURIG, LLP
One International Center
Boston, MA  02110
Telephone:  (617) 310-6000
Facsimile:  (617) 310-6001

*Attorneys for Defendant TD Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May 2011, the foregoing document was served via electronic mail and U.S. Mail (a courtesy copy will be hand delivered on May 12, 2011) to all counsel of record identified on the attached Service List.

MARK P. SCHNAPP

## SERVICE LIST

David Scott Mandel, Esq.
Mandel & Mandel LLP
*Counsel for Coquina Investments*
Alfred I. Dupont Building
169 E. Flagler Street, Suite 1200
Miami, Florida 33131
Telephone: (305) 374-7771
Facsimile: (305) 374-7776
Email: dmandel@mandel-law.com

Greenberg Traurig, P.A. | Attorneys at Law | 333 Avenue of the Americas | Suite 4400 | Miami, FL 33131-3238 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com