UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60786-Civ-COOKE/BANDSTRA

FILED by ___ D.C.
MAY 12 2011
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. – MIAMI

COQUINA INVESTMENTS,

    Plaintiff,

vs.

SCOTT W. ROTHSTEIN and
TD BANK, N.A.

    Defendants.

_____/

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
SUPPORTING MOTION FOR SUMMARY JUDGMENT**

**[FILED UNDER SEAL]**

CONFIDENTIAL
FILED UNDER SEAL

Mandel & Mandel LLP
1200 Alfred I. duPont Building · 169 East Flagler Street · Miami, Florida · Telephone 305.374.7771

**Fraudulent Structured Settlement Scheme**

1.  In March 2009, Plaintiff Coquina Investments ("Coquina") learned of an investment opportunity in Ft. Lauderdale, Florida, in which defendant Scott Rothstein ("Rothstein") offered structured settlements of potential sexual harassment lawsuits that he claimed he settled on behalf of clients of his then law firm, "RRA," for investment/purchase by individuals or entities. [Coquina Investor Melvyn Klein 38:9-13; 42:22-52:4]. Coquina was told that the settlements were for very large sums of money; that the plaintiffs agreed to receive a percentage of the total settlement in exchange for the greater amount in a monthly payout; and the settlements were highly confidential, because the potential lawsuits were against high-profile defendants [Coquina Investor Barrie Damson 28, 35; Complaint ¶ 12-13]. Coquina also was told that the settlement proceeds were held in restricted accounts at Defendant TD Bank, N.A. ("TD Bank"). Complaint ¶ 14.

2.  Account numbers 6861011614 and 6861077193 were set up at TD Bank by Scott Rothstein for the benefit of Coquina's investments in the structured settlements. David S. Mandel Declaration ¶3. (hereinafter referred to as the "Coquina account" or "Coquina's account").

3.  Coquina invested over $37 million dollars. TD Bank's Response to Plaintiff's Request for Admissions Nos. I.24, I.26, I.28, I.30, I.32, I.35, I.37, I.39, I.42, I.44, I.46, I.60.

**Importance of Rothstein related accounts**

4.  Rothstein and his firm's accounts were considered VIP customer [Bankruptcy, Caretsky I 43:17-20, Spinosa 25:3-26:1], top customers of the region [Spinosa 26:3-16] and an important client. Bankruptcy Kerstetter, 25:12-17, Spinosa 19:10-15.

5.  The Weston Store officers and employees, including Manager Rosanne Caretsky and Assistant Manager Jennifer Kerstetter assisted Rothstein and RRA with all RRA related accounts.

- 1 -
Mandel & Mandel LLP
1200 Alfred I. duPont Building · 169 East Flagler Street · Miami, Florida · Telephone 305.374.7771

CONFIDENTIAL
FILED UNDER SEAL

Bankruptcy Kerstetter, 18:8-23:15; Razorback Kerstetter 143:14-24. TD Bank employee Paolo Casabone was assigned as Cash Management representative. Razorback Caretsky, 74:18-75:2.

6. All activities at TD Bank regarding Rothstein and RRA's accounts were supervised by Regional Vice President Frank Spinosa ("Spinosa"). Bankruptcy Kerstetter, 18:8-23:15; Razorback Kerstetter 143:14-24; Razorback Caretsky 67:1-4: 68:1-7.

7. Kerstetter, Caretsky, and other TD Bank employees knew RRA's volume of deposits and withdrawals based on daily reports and weekly significant balance reports from the Weston branch. Bankruptcy Kerstetter 25:18-22, 26:1-2; 27:4-12; Bankruptcy Caretsky I 51:23-53:19. Razorback Caretsky 155:4-156:13.

8. RRA's account activity constituted a large percentage of the Weston store's business. Bankruptcy Kerstetter 26:1-2, 26:12-17; 29:1-8; Razorback Caretsky 43:21-44:5.

9. The large volume of deposits into RRA related accounts at the Weston store helped Caretsky meet her performance goals for that TD Bank branch in 2009. Razorback Caretsky 42:6-43:17. Spinosa received bonuses and compensation from TD Bank based in part on the size of the accounts he originated. Spinosa 27:8-14.

**TD Bank employees were trained to identify fraud and/or unusual account activity.**

10. All TD Bank employees were required to be trained in anti-money laundering ("AML"), Bank Secrecy Act, and related banking laws, on how to identify suspicious activity, and to identify "red flags" or unusual activity. Bankruptcy Caretsky I, 15:7-17:17; Bankruptcy, Caretsky II, 180:12-182:6; 182:10-184:9; 196:17-198:9; 201:17-22; 193:16-194:6; Di Toro 56:9-22, 81:6-84:22, 147:3-23; Auletta 67:4-70:8, 197:11-15.

**TD Bank's fraud detection system alerted to possible fraud in RRA accounts; yet no account was frozen nor further action taken.**

Mandel & Mandel LLP
1200 Alfred I. duPont Building · 169 East Flagler Street · Miami, Florida · Telephone 305.374.7771
CONFIDENTIAL
FILED UNDER SEAL

11. TD Bank's 30(b)(6) Corporate Representative Carlo Di Toro testified during his deposition that one fraud alert was generated relating to an RRA account. Di Toro 198:5-205:19.

12. In an affidavit submitted by Di Toro after his deposition and after the discovery deadline, Di Toro verified that 13 fraud alerts had been issued regarding the RRA related accounts starting on December 18, 2008, through July 20, 2009. Affidavit of Di Toro dated April 14, 2011, at 3-4.

13. Notwithstanding these fraud alerts, no holds were placed on Rothstein related accounts. Affidavit of Di Toro dated April 14, 2011 at 4-5.

14. TD Bank 30(b)(6) Corporate Representative Vincent Auletta noted that upon the change of TD Bank's AML system in September 2009, there were one or two AML alerts, but no more than five alerts, on one or two Rothstein related accounts from September 2009 through October 2009, regarding transactions in the tens of millions. Auletta 56:3-57:12; 263:9-273:7.

15. TD Bank produced approximately 150 of "alerts" to Coquina, during Di Toro's deposition. Declaration of David S. Mandel, ¶4.

16. Further, as a result of these AML alerts, no Rothstein related account was frozen by TD Bank. Auletta 56:3-57:12.

**Other indications of fraud**

17. RRA related accounts appeared on overdraft list different times. Bankruptcy Kerstetter 11: 4-16; 42:12-19.

18. During the last week of October, 2009, Caretsky testified that it was "unusual" that an account had been in overdraft status a second time within a matter of period of days. Bankruptcy, Caretsky II 231:14-17.

**TD Bank knowingly participated in the fraud with Rothstein**

CONFIDENTIAL
FILED UNDER SEAL
Mandel & Mandel LLP
1200 Alfred I. duPont Building · 169 East Flagler Street · Miami, Florida · Telephone 305.374.7771

19. Spinosa held the position of Regional Vice President for Commerce Bank and TD Bank (both referred to as "Bank") from approximately 2006 through his termination on November 1, 2009. Spinosa 14:18-22; 15:17-23.

20. Rothstein laundered stolen investor money at TD Bank. Complaint ¶ 1, 12-13.

21. As Regional Vice President for the Bank, Spinosa had knowledge of the Bank's banking operations, and federal regulations that applies to banking policies. Spinosa 15:21-16:12.

22. As Regional Vice President for the Bank, Spinosa had knowledge of the Bank Secrecy and Patriot Act, knowledge with respect to know your customer requirements. and the regulations requiring the filing of suspicious reports. Spinosa 16:13-25, 17:3-5, 17:7-12.

23. As part of Rothstein and TD Bank's scheme to defraud investors, as early as October 2008, through October 2009, TD Bank participated in "shows" to potential investors of Rothstein's fraudulent scheme with Spinosa's knowledge. Razorback Kerstetter 74:1-93:23; 108:4-109:11; Bankrupcty Kerstetter, 43:5-10, 43:24-16; 50:7-51:5; 52:17-55:25; Bankruptcy Caretsky I, 30:20-33:19; 58:3-60:2; 66:25-69:25; Razorback Caretsky 93:11-98:5; 103:20-114:19; 131:12-132:1.74:1-93:23; 108:4-109:11; Spinosa 37:2-8.

24. TD Bank had knowledge of Rothstein's structured settlement scheme as admitted by TD Bank employees. Bankruptcy Kerstetter 127:19-129:22

**Reasonable reliance on lock letters**

25. At a certain point, Rothstein requested that Spinosa sign letters to investors of Rothstein on TD Bank letterhead that purported to restrict accounts designated for investors or "lock letters." Spinosa 22:1-25:1; 32:11-10.

26. Spinosa signed or prepared such letters because it furthered the Bank's interest and Spinosa's interest. Spinosa 33:2-18.

27. Spinosa signed, in his capacity as the Bank's Regional Vice President, a letter for Coquina Investments on August 17, 2009, referred to by Spinosa and Rothstein as a "lock letter," which stated that "upon receipt of this letter, all funds contained in the above account shall only be distributed upon my instructions and shall only be distributed to Coquina Investments, a Texas general partnership at American Bank, Account Number 410009989, 101 North Shoreline, Suite 600, Corpus Cristi, Texas," and "This letter is not meant to convey any ownership of the account or access to the account to any other party but rather is meant to irrevocably restrict conveyances from this account to Coquina Investments." Spinosa 40:1-7, 41:23-44:5.

28. On or about August 17, 2009, Scott Rothstein and Frank Spinosa exchanged emails regarding a planned telephone call with Coquina investors. Rothstein told Spinosa a list of questions he would ask Spinosa during the call and to "just answer yes to all the questions and we are done. Spinosa replies "no problem." Declaration of David Mandel at ¶3.

29. On or about August 17, 2009, Scott Rothstein, Frank Spinosa, and Coquina investor Barrie Damson, participated in a conference call in which Coquina investor Melyvn Klein listened. During the conference call, Spinosa confirmed Coquina's lock letter and the $22 million in Coquina's locked account. Klein 72-73; Damson 154-157.

30. After specific requests by Rothstein via email, Spinosa signed, in his capacity as the Bank's Regional Vice President, similar lock letters to other various investors on September 8, 9, 16, 18, 24, 30, and October 1, 15, 2009. Spinosa 45:3-59:9; 60:16-65:4.

31. On September 25, 2009, pursuant to a request by Rothstein, Spinosa signed, in his capacity as the Bank's Regional Vice President, another lock letter for Coquina Investments. Spinosa 59:11-60:12.

Mandel & Mandel LLP
1200 Alfred I. duPont Building · 169 East Flagler Street · Miami, Florida · Telephone 305.374.7771
CONFIDENTIAL
FILED UNDER SEAL

32. Wende Litterio, Frank Spinosa's administrative assistant, prepared approximately five "lock letters" for Spinosa on TD Bank letterhead. Litterio 92:10-100:16; 111:7-112:13; 127:1-128:18. She testified that Rothstein would tell Spinosa what to write in an email, Spinosa would forward the email to Litterio and she would type it as directed, and Spinosa would sign it. Litterio 103:9-107:6; 111:7-112:13; 127:1-130:10; 131:6-20. Litterio testified that she asked Spinosa if it was okay to prepare these lock letters, and Spinosa told her "okay." Litterio 113:10-20.

33. Spinosa had knowledge that Rothstein planned to forward the lock letters signed by Spinosa in his capacity as the Bank's Regional Vice President to investors of Rothstein's scheme. Spinosa 65:21-6.

34. Spinosa knew that, in his capacity as Bank's Regional Vice President, investors in Rothstein's scheme, like Coquina, would rely on the statements contained in the lock letters he signed. Spinosa 66:8-24.

35. Coquina investor Kathleen White testified that on September 25, 2009, she and Barrie Damson went with Rothstein to meet Spinosa at TD Bank's corporate office. White, 30(b)(6) 248-250; Damson 221.

36. During Coquina's meeting with Spinosa on September 25, 2009, Spinosa knew that Coquina representatives were meeting with Spinosa in order to discuss the Coquina lock letter. White, 30(b)(6) 257:14-21. Damson 228.

37. During the September 26, 2009, meeting with Coquina, Spinosa explained the lock letter to Coquina, that the lock letter was not unusual at TD Bank, that TD Bank had many accounts with the same restriction, and that TD Bank has systems in place to make sure that the lock letter is complied with. White 30(b)(6) 251-253.

- 6 -
Mandel & Mandel LLP
1200 Alfred I. duPont Building · 169 East Flagler Street · Miami, Florida · Telephone 305.374.7771

CONFIDENTIAL
FILED UNDER SEAL

38. Spinosa also confirmed that there was more than $22 million in Coquina's locked account, that the balance was $22 million previously, and was greater by September 25. White 30(b)(6) 253.

39. Spinosa had knowledge that when he made assurances to investors of Rothstein in the lock letters that these lock letters were false because it was not possible to restrict the accounts at the Bank in the way described in these lock letters. Spinosa 67:2-18.

40. Specifically regarding Coquina, Spinosa knew that representations made by Spinosa, in his capacity as the Bank's Regional Vice President, in the October 18, 2009, lock letter regarding Coquina funds were not possible at the time, and that the representations were false at the time. Spinosa 91:7-94:4.

41. Spinosa also knew that Rothstein planned on forwarding this letter signed by Spinosa on TD Bank letterhead to Coquina and that Coquina would rely on the statements contained in the letter Spinosa prepared. Spinosa 94:6-20.

42. Caretsky testified that she had seen two lock letters, one regarding Coquina and another regarding Emess Capital, another victim-investor. Bankruptcy, Caretsky I, 81:11-89:14; 101:8-15; 86:10-15; 81:11-89:14; Razorback Caretsky 120:16-123:25.

43. Caretsky stated that she had seen the lock letter dated August 17, 2009, directed to Coquina that included irrevocable instructions. Bankruptcy Caretsky I, 80:12-86:15; Bankruptcy Caretsky II, 205:15-20.

44. Caretsky understood the lock letter to represent that distributions from the Coquina Account could only be sent to Coquina Investments. Bankruptcy, Caretsky II 210:17-211:3, 5-7, 13.

**Notes on the system to purportedly implement these lock letters were innocuous**

45. Additionally, Caretsky testified that Rothstein had the ability to do transactions from his desk and notes on a Rothstein related account via TD Bank's internal system subject to a lock letter would

not restrict Rothstein from making various transfers from his office via TD Bank's internet customer banking systems. Bankruptcy, Caretsky II 208: 10-22; 209:17-21; 215:13-15, 20-24; 209:2-10; Razorback Caretsky 84:15-85:10.

**Meeting with Investors**

46. Rothstein requested that Spinosa meet personally and speak directly on the phone with investors of the fraud scheme from time to time, and Spinosa complied by meeting with investors and speaking to them on the phone as part of his job at TD Bank. Spinosa 34:6-35:20.

47. Rothstein also requested that Spinosa vouch for Rothstein to investors and to tell investors that Rothstein was a longtime, highly valued bank customer, and Spinosa did so as part of his duties at the Bank. Spinosa 37:10-38:14.

48. Rothstein asked that Spinosa vouch for the safety of the investor's investments in the fraudulent scheme and Spinosa did so as part of the course and scope of his employment at the Bank. Spinosa 38:16-39:15.

49. In his capacity as Regional Vice President of the Bank, Spinosa met with representatives of Coquina Investments on or about September 25, 2009, at the TD Bank's corporate offices at 5900 North Andrews Avenue Fort Lauderdale in a conference room behind the receptionist. Spinosa 94:22-96:18; Damson 228.

50. At this meeting at TD Bank with Coquina investors, Spinosa, in his capacity as Regional Vice President of the Bank, vouched for Rothstein and the safety of Coquina's investment at the Bank, that Spinosa was familiar with Coquina and the funds in it, that Spinosa was aware that there was in excess of $22 million dollars deposited in the Coqunia account. Spinosa 96:20-97:25; White 30(b)(6) 251-253.

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street   ·   Miami, Florida   ·   Telephone 305.374.7771
CONFIDENTIAL
FILED UNDER SEAL

51. During this September 25, 2009, meeting with Spinosa and Coquina representatives, Spinosa confirmed that there were irrevocable restrictions on the account that allowed for disbursements only to Coquina and Spinosa knew this statement was false. Spinosa 99:19-100:8; White 30(b)(6) 263.

52. During this September 25, 2009, meeting with Spinosa and Coquina representatives, Spinosa also confirmed the terms and restrictions on the Coquina as specified in the previous lock letters and Spinosa knew the statement was false. Spinosa 100:10-25.

53. When Coquina representative White asked Spinosa how the Bank would comply and honor the terms of the restrictions on the Coquina account, Spinosa informed White that the Bank had systems in place to facilitate this type of account and that the Bank had numerous account with such restrictions and was not out of the ordinary, but Spinosa knew these statements to White were false. Spinosa 101:10-103:6.

54. All of statements that Spinosa made to Coquina on September 25, 2009, were intended to deceive them as investors, so that Coquina would rely on Spinosa's representations and continue to invest in the fraud scheme. Spinosa, 103:24-104:14.

55. At the end of the meeting between Spinosa and Coquina representatives, Spinosa provided them with his TD Bank business card. Spinosa 104:16-106:10 Damson 233.

56. After the meeting with Spinosa at TD Bank, Coquina made another commitment of money to fund an additional investment. Spinosa 106:12-22.

57. On October 25, 2009, when a $5 million payment was due to Coquina Investments from Rothstein, and not made, Damson called Spinosa at 11:30 am on October 28, 2009, telling Spinosa that Coquina had not received the funds due to Coquina and asking if there was any problems. Spinosa 106:24-109:4.

CONFIDENTIAL
FILED UNDER SEAL

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street   ·   Miami, Florida   ·   Telephone 305.374.7771

58. At the time of the October 28th call by Damson of Coquina, Spinosa know that $5 million did not exist in the Coquina account to make such a payment to Coquina. Spinosa 112:5-113:5.

59. Spinosa knew that Rothstein had caused $16 million dollars to be wire transferred to Morroco the previous day to Damson's call, on October 27, 2009, because Spinosa had assisted Rothstein in processing the wire transfer. Spinosa 113:7-114:5; 118:11-10.

60. Spinosa knew that the October 27th $16 million wire transfer from TD Bank to Morroco had no relation to Rothstein's legitimate business. Spinosa 117:2-12.

61. By the time Spinosa spoke to Damson on October 28, 2009, Spinosa had knowledge that RRA operating account had a $1.6 million overdraft because he as well his TD Bank team were trying to cover it on the morning of October 27, 2009. Spinosa 119:7-120.

62. Spinosa's failure to inform Damson of Coquina these problems with Rothstein and his account was intentionally misleading by Spinosa. Spinosa 120:6-22.

63. On October 30, 2009, Spinosa invited Rothstein to have dinner with the president and CEO of TD Bank, Bharat Masrani. Spinosa 120:24-121:16.

64. Spinosa also agreed, within the scope of his employment at the Bank, to help Rothstein by using key bank employees and facilities to participate in investor meetings and induce and lend credibility to Rothstein's scheme. Spinosa 135:15-22.

65. Spinosa consented, within the scope of his employment at the Bank, to Rothstein's use of TD Bank offices to show false bank statement to investors and Spinosa knew that the bank statement show to investors at TD Bank offices were false at the time they were being shown. Spinosa 135:24-136:13.

66. Defendant Rothstein pled guilty to RICO conspiracy, money laundering and wire fraud. *US v. Rothstein*, Case No. 09-60331-Cr-Cohn.

Dated: May 11, 2011           Respectfully submitted,

                            MANDEL & MANDEL LLP
                            169 East Flagler Street, Suite 1200
                            Miami, Florida 33131
                            Telephone: 305.374.7771
                            Facsimile: 305.374.7776
                            dmandel@mandel-law.com

By: _____
        DAVID S. MANDEL
          Florida Bar No. 38040
        NINA STILLMAN MANDEL
          Florida Bar No.: 843016
        JASON B. SAVITZ
          Florida Bar No. 36444

        *Attorneys for Coquina Investments*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 11, 2011, a true and correct copy of the foregoing was served by U.S. Mail on Glenn E. Goldstein, Esq., and Donna Evans, Esq., Greenberg Traurig, 401 East Las Olas Boulevard, Suite 2000, Fort Lauderdale, FL 33301.

_____

- 11 -
Mandel & Mandel LLP
1200 Alfred I. duPont Building · 169 East Flagler Street · Miami, Florida · Telephone 305.374.7771

CONFIDENTIAL
FILED UNDER SEAL

COQUINA vs. TD Bank: 10-60786-CIV-COOKE
Statement of Undisputed Material Facts
**EXHIBITS**

| NUMBER | DESCRIPTION |
|---|---|
| 1 | TD Bank's Response to Plaintiff's Request for Admissions Nos. 24, 26, 28, 30, 32, 35, 37, 39, 42, 46, and 60. |
| 2 | Frank Spinosa Deposition Transcript |
| 3 | Bankruptcy, Caretsky: I 15:7-17:17; I 30:20-33:16; I 43: 17-20; I 51:23-53:19; I 58:3-60:2; I 66:25-69:25; I 80:12-86:15; I 81:11-89:14; I 86:10-15; I 101:8-15; II 180:12-182:6; II 182:10-184:9; II 193:16-194:6; II 196:17-198:9; II 201:17-22; II 205:15-20; II 208:10-22; II 209:2-10; II 209:17-21; II 210:17-211:3, 5-7, 13; II 215:13-15, 20-24; II 231:4-17 |
| 4 | Bankruptcy, Kerstetter: 11:4-16; 12; 17; 18:8-23:15; 25: 18-22; 26:1-2; 26:12-17; 27:4-12; 29:1-8; 42:12-19; 43:5-10; 43:24; 50:7-51:5; 52:17-55:25 |
| 5 | Razorback, Kerstetter: 74:1-93:23; 108:4-109:11; 143:14-24 |
| 6 | Razorback, Caretsky: 42:6-43:17; 43:21-44:5; 67:1-4; 68:1-7; 74:1-93:23; 74:18-75:2; 84:15-85:10; 93:11-98:5; 103:20-114:19; 108:4-109:11; 120:16-123:25; 131:12-132:1; 155:4-156:13 |
| 7 | DiToro: 56:9-22, 81:6-84:22, 147:3-23, 198:5-205:19 |
| 8 | Auletta: 56:3-57:12, 67:4-70:8, 197:11-15, 263:9-273:7 |
| 9 | Melvyn Klein: 38:9-13; 42:22-52:4; 72-73 |
| 10 | Barrie Damson: 154-157; 221; 228; 233 |
| 11 | Wende Litterio: 92:10-100:16; 103:9-107:6; 111:7-112:13; 113:10-20; 127:1-128:18; 127:1-130:10; 131:6-20 |
| 12 | Kathleen White 30(B)(6): 248-250; 251-253; 257:14-21 |
| 13 | Declaration of David S. Mandel In Support of Plaintiff's Motion for Partial Summary Judgment |