Sealed



FILED by _____ D.C.

JUN 1 0 2011

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60786-Civ-Cooke/Bandstra

COQUINA INVESTMENTS,

        Plaintiff,

v.

SCOTT W. ROTHSTEIN and
TD BANK, N.A.

        Defendants.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO TD BANK, N.A.'S SUMMARY JUDGMENT MOTION AND INCORPORATED MEMORANDUM OF LAW

## [FILED UNDER SEAL]

**CONFIDENTIAL**
**FILED UNDER SEAL**

Mandel & Mandel LLP
1200 Alfred I. duPont Building · 169 East Flagler Street · Miami, Florida · Telephone 305.374.7771

Pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 7.5, Plaintiff Coquina Investments ("Coquina"), by and through its undersigned counsel, files Plaintiff's response brief in opposition to *Defendant TD Bank, N.A.'s Summary Judgment Motion and Incorporated Memorandum of Law* filed under seal on May 11, 2011. In addition, Plaintiff files its Statement of Disputed Material Facts ("Pl.'s Facts") in support of this response.

## INTRODUCTION

Throughout this case, Defendant has insisted that its involvement as the banker to the largest Ponzi scheme in Florida history was legally insignificant. Now, despite this Court's prior findings and the overwhelming evidence against it, Defendant offers as proof of its innocence the unadopted recommendation of Magistrate Judge Goodman with respect to a motion to dismiss in the related (but not consolidated) *Emess* case as proof of its innocence. Ironically, TD Bank has previously claimed that this action and the *Emess* action are factually distinct and vigorously opposed consolidation of the two. Moreover, Defendant now wants to sell itself as another Rothstein victim, but has not pursued a cross-claim against Rothstein in this case or any other. The Rothstein/TD Bank scheme is the fraudulent collaboration of a high-profile lawyer and his bank, which extended from the employees in TD Bank's Weston Branch all the way up to its corporate office. In carrying out the fraud, TD Bank and its executives looked forward to a continual increase in the volume of funds being held by it and all of the tangible and intangible rewards such an increase in volume ensured, including positive performance reviews, bonuses, additional business, and the establishment of the TD Bank brand in South Florida.

## MEMORANDUM OF LAW

### I.   Standard on Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see also Anderson v. Liberty Lobby, Inc., 477 U.S.

CONFIDENTIAL
FILED UNDER SEAL

242, 247-48 (1986); <u>Jones v. Firestone Tire and Rubber Co.</u>, 977 F.2d 527, 535 (11th Cir. 1992).  It is

the movant's burden to meet this standard.  <u>Spoerr v. Manhattan Nat'l Life Ins. Co.</u>, No. 05-61891, 2007

U.S. Dist. LEXIS 2752, at *4 (S.D. Fla. Jan. 12, 2007) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S.

14, 157 (1970)).  Once the movant established the absence of a genuine issue of material fact, the

burden shifts to the non-moving party who must then "'come forward with specific facts showing that

there is a genuine issue for trial.'"  <u>United States v. Jallali</u>, No. 08-22774, 2011 U.S. Dist. LEXIS 1986,

at *5 (S.D. Fla. Jan. 10, 2011) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S.

574, 587 (1986)).  The law provides that "an issue of fact is 'genuine' if the record, taken as a whole,

could lead a rational trier of fact to find for the on-moving party."  <u>Spoerr</u>, 2007 U.S. Dist. LEXIS 2752,

at *5 (citing <u>Anderson</u>, 477 U.S. at 248).  An issue of fact is "'material' if it might affect the outcome

of the case under the governing law."  <u>Id.</u>

    In deciding a motion for summary judgment, a court must view the record and all factual

inferences in the light most favorable to the non-moving party.  <u>Jallali</u>, 2011 U.S. Dist. LEXIS 1986,

at *5 (citing <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997)).  In opposing the motion,

the non-moving party must show that specific facts exist demonstrating a genuine issue for trial based

on affidavits, depositions, and answers to interrogatories and admissions; it may not rely exclusively

on the pleadings.  <u>Id.</u> at *5-6 (citing Fed. R. Civ. P. 56(c), (e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

324 (1986)).  It is well established that "a mere 'scintilla' of evidence supporting the opposing party's

position will not suffice; instead, there must be a sufficient showing that the just could reasonable find

for that party."  <u>Id.</u> at *6 (citing <u>Anderson</u>, 477 U.S. at 252).

**CONFIDENTIAL**
**FILED UNDER SEAL**

Mandel & Mandel LLP

1200 Alfred I. duPont Building  ·  169 East Flagler Street  ·  Miami, Florida  ·  Telephone 305.374.7771

II.   **Coquina Has Produced Ample Evidence Satisfying the "Conduct or Participate, Directly or Indirectly" Element for Purposes of the <u>Reves</u> Operation and Management Test with Respect to TD Bank.**

### A.  Introduction

Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  In <u>Reves v. Ernst & Young</u>, 507 U.S. 170 (1993), the Court construed this provision such that there could be one or more defendants directing the enterprise (triggering the "conduct" part of this element), and one or more defendants *taking part in the direction of the enterprise* (triggering the "participate" part of the element).  The Court explained:

> Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to apply.

<u>Id.</u> at 179.  Considering other competing standards, the Court rejected the standard that required "*significant control* over or within an enterprise."  <u>Id.</u> at 179 n.4 (emphasis in the original).

The Court then reviewed the legislative history and found that it "confirms what we have already deduced from the language of Section 1962(c) -- that one is not liable under that provision unless one has participated in the operation or management of the enterprise itself."  <u>Id.</u> at 183.  In defining the practical application of this phrase, the Court found that liability "under § 1962(c) is not limited to upper management . . ."  <u>Id.</u> at 184.  The Court noted further:  "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management."  <u>Id.</u>  "An enterprise also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery."  <u>Id.</u>  The Court noted that though "there was some discussion about whether low-level employees could be considered to have participated

CONFIDENTIAL
FILED UNDER SEAL

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street   ·   Miami, Florida   ·   Telephone 305.374.7771

in the conduct of an enterprise's affairs" it was not necessary to decide "how far Section 1962(c) extends down the ladder of operation" in <u>Reves</u>. <u>Id.</u> at 184 n.9.

With regard to "lower rung participants," the First Circuit has relied on <u>Reves</u> "to hold that a defendant may participate in the conduct of an enterprise 'by knowingly implementing decisions, as well as by making them.'" <u>MCM Partners v. Andrews-Bartlett & Assocs.</u>, 62 F.3d 967, 978 (7th Cir. 1995) (quoting <u>United States v. Oreto</u>, 37 F.3d 739, 750 (1st Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 1161 (1995)). In <u>Oreto</u> the First Circuit noted:

> <u>Reves</u> is a case about the liability of *outsiders* who may assist the enterprise's affairs. Special care is required in translating <u>Reves</u>' concern with "horizontal" connections-- focusing on the liability of an outside adviser--into the "vertical" question of how far RICO liability may extend within the enterprise but down the organizational ladder. In our view, the reason the accountants were not liable in <u>Reves</u> is that, while they were undeniably involved in the enterprise's decisions, they neither made those decisions nor carried them out; in other words, the accountants were outside the chain of command through which the enterprise's affairs were conducted.

37 F.3d at 750 (emphasis in original). The Seventh Circuit found that "<u>Oreto</u> correctly reconciles the Supreme Court's holding in <u>Reves</u>--that a defendant must play some part in directing the enterprise's affairs--with its subsequent statement that "lower-rung participants . . . under the direction of upper management" may also "operate" the enterprise." <u>MCM</u>, 62 F.3d at 978 (quoting <u>Reves</u>, 113 S. Ct. at 1170, 1173 & n.9 and citing Daniel R. Fischel & Alan O. Sykes, <u>Civil RICO After Reves: An Economic Commentary</u>, 1993 Sup. Ct. Rev. 157, 192).

Thus, in the years since <u>Reves</u> was decided, courts have categorized RICO defendants into one or more of the three types described in <u>Reves</u>:

      (1)   Upper management;

      (2)   Lower rung participants in the enterprise under the direction of upper management; and

      (3)   others associated with the enterprise who exert control over it (outsiders).

CONFIDENTIAL
FILED UNDER SEAL

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street ·   Miami, Florida   ·   Telephone 305.374.7771

See MCM Partners, 62 F.3d at 977. These three modes of satisfying the Reves test have been recognized by the First, Third, Sixth, Seventh, Ninth, and Eleventh Circuits. See, e.g., Oreto, 37 F.3d at 750; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 371 (3d Cir. 2010); LSJ Inv. Co. v. O.L.D., Inc., 167 F.3d 320, 325 (6th Cir. 1999); MCM, 62 F.3d at 977; Walter v. Drayson, 538 F.3d 1244, 1249 (9th Cir. 2008); United States v. Starrett, 55 F.3d 1525, 1548 (11th Cir. 1995). Contrary to Defendant's assertions then, in order to establish Section 1962(c) liability, Coquina need not prove that "TD Bank controlled" the enterprise or "occupied some position in the chain in command" in the scheme. (Def.'s Mot. Summ. J. at 10.)

**B.  Spinosa and the Involvement of Other TD Bank Employees Made TD Bank, at a Minimum, a Lower-Rung Participant in the Fraud.**

Defendant tries to minimize its involvement by painting itself as Rothstein's victim. Unfortunately, there is copious evidence that Spinosa and other TD Bank employees and executives engineered the fraud. Even if Rothstein's role was to be considered "upper management," that does not exculpate TD Bank or affect its liability under RICO. To the contrary, TD Bank was an important player who was integral to the fraud and provided "special services." Even if TD Bank were to be considered a "lower-rung participant," it is still liable under RICO.

In MCM, the plaintiff equipment rental company sued its competitor for violation of Section 1962(c) alleging that it coerced potential renters of equipment not to rent from the plaintiff. The plaintiff also named the potential renters as defendants. The Ninth Circuit explained the factors important to the lower-rung participant mode used in the MCM case:

> [Where] lower-rung participants [] (1) were alleged to be members of an association-in-fact constituting the enterprise, (2) they were part of the enterprise itself, (3) they knowingly undertook the predicate acts "at the direction" of the enterprise's management, and (4) they were "vital to the achievement of the enterprise's primary goal, as only they had the ability to exclude [plaintiff] from the market by dealing exclusively with [the defendant competitor]."

CONFIDENTIAL
FILED UNDER SEAL

Drayson, 538 F.3d at 1249 (quoting MCM, 62 F.3d at 979) (numbers added).  Reversing the lower court, the Seventh Circuit found that the lower-rung defendants' participation to be adequate.  MCM, 62 F.3d at 979.  "Even if [those defendants] may have been reluctant participants in a scheme devised by 'upper management,' they still knowingly implemented management's decisions, thereby enabling the enterprise to achieve its goals."  Id.  The MCM court continued:  "In our view, Reves would not bar a recovery against these defendants if the complaint's allegations were ultimately established after a trial."  Id.

Coquina has produced facts supporting each of the elements required by the lower-rung participant theory of RICO liability.  "The critical determination in evaluating whether an association of individual entities constitutes a RICO enterprise is whether the association of individual entities, however loose or informal, furnished a vehicle for the commission of two or more predicate crimes." Lockheed Martin Corp. v. Boeing Co., 357 F. Supp. 2d 1350, 1360 (M.D. Fla. 2005) (citation omitted). "The crucial factor is whether each entity alleged to be part of the association-in-fact 'is free to act independently and advance its own interests contrary to those' of the other entities." Id. at 1365 (citation omitted).  Indeed Rothstein and TD Bank were entities free to act independently but chose to associate for the purpose of committing the fraud that occurred in this case and were thus a RICO entity.  (Pl.'s Facts ¶¶ 8-11.)

In addition, TD Bank, through employees Spinosa, Litterio, Caretsky, Kerstetter and others, had knowledge of the fraud and took direction from Rothstein in his role as "upper management," including, but not limited to:

1.     TD Bank opened numerous operating and trust accounts on behalf of Rothstein and RRA and allowed them to stay open despite fraud alerts, overdrafts, uncollected funds, high dollar amount transfers and low monthly balances. (Pl.'s Facts ¶¶ 8-11.)

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street   ·   Miami, Florida   ·   Telephone 305.374.7771

CONFIDENTIAL
FILED UNDER SEAL

2.      As early as October 2008, through October 2009, TD Bank participated in "shows" to potential investors of Rothstein's fraudulent scheme with former TD Bank Regional Vice President Frank Spinosa's ("Spinosa") knowledge. Rothstein requested that Spinosa meet personally and speak directly on the phone with investors of the fraud scheme from time to time, and Spinosa complied by meeting with investors and speaking to them on the phone as part of his job at TD Bank. Rothstein also requested that Spinosa vouch for Rothstein to investors and to tell investors that Rothstein was a longtime, highly valued bank customer, and Spinosa did so as part of his duties at the Bank. Rothstein asked that Spinosa vouch for the safety of the investors' investments in the fraudulent scheme and Spinosa did so as part of the course and scope of his employment at the Bank. (Pl.'s Facts ¶ 15.)

3.      Spinosa also agreed, within the scope of his employment at the Bank, to help Rothstein by using key bank employees and facilities to participate in investor meetings and induce and lend credibility to the scheme.  Spinosa consented, within the scope of his employment at the Bank, to Rothstein's use of TD Bank offices to show false bank statements to investors and Spinosa knew that the bank statements shown to investors at TD Bank offices were false at the time they were being shown.  Between 2008 and Oct. 2009, TD Bank employees printed out true and accurate cover letters and copies of certain balance statements for RRA accounts and provided them to RRA.  (Pl.'s Facts ¶ 15.)

4.      Rothstein requested that Spinosa, in his capacity as the Bank's Regional VP, sign letters to investors on TD Bank letterhead that purported to restrict accounts designated for investors ("Lock Letters").   Spinosa signed or prepared such letters. (Pl.'s Facts ¶¶ 1-2.) Wende Litterio ("Litterio"), Spinosa's administrative assistant at TD Bank, prepared approximately five (5) "Lock Letters" for Spinosa on TD Bank letterhead.  She testified that Rothstein would tell Spinosa what to write in an email, Spinosa would forward the email to Litterio and she would type it as directed, and Spinosa would OK and sign it.  (Pl.'s Facts ¶¶ 3-5.)

-7-

CONFIDENTIAL
FILED UNDER SEAL

5.      For example, Spinosa signed, in his capacity as the Bank's Regional Vice President, a Lock Letter for Coquina on August 17, 2009, purporting to secure Coquina's funds. (Pl.'s Facts ¶¶ 1-2.)

6.      Rothstein also coached Spinosa on what to say on a call to Coquina investors on August 17, 2009 concerning the Lock Letter of that date. (Pl.'s Facts ¶¶ 1-2.)

7.      After specific requests by Rothstein via email, Spinosa signed, in his capacity as the Bank's Regional Vice President, similar Lock Letters to other various investors on September 8, 9, 16, 18, 24, 30, and October 1, 15, 2009.  (Pl.'s Facts ¶¶ 1-2.)

8.      On September 25, 2009, pursuant to a request by Rothstein, Spinosa signed, in his capacity as the Bank's Regional Vice President, another Lock Letter for Coquina.  (Pl.'s Facts ¶¶ 1-2.)

9.      Coquina met Spinosa at TD Bank's corporate office in Fort Lauderdale, and in his capacity as Regional Vice President of TD Bank, he explained the Lock Letter to Coquina, that the Lock Letter was not unusual at TD Bank, that TD Bank had many accounts with the same irrevocable restrictions that allowed for disbursements only to Coquina, and that TD Bank has systems in place to make sure that the Lock Letter is complied with. Spinosa knew that when he made assurances to investors concerning the Lock Letters, those assurances were false because it was not possible to restrict the accounts at TD Bank in the way described in these Lock Letters.  During this September 25, 2009, meeting, Spinosa also confirmed the terms and restrictions on the Coquina account as specified in the Lock Letters and Spinosa knew these statements to Coquina were false.  (Pl.'s Facts ¶ 29.)

10.     Caretsky saw the August 17, 2009, Lock Letter directed to Coquina that included irrevocable instructions.  Caretsky understood the Lock Letter to represent that distributions from the Coquina Account could only be sent to Coquina Investments.  She testified, however, that despite TD

-8-

CONFIDENTIAL
FILED UNDER SEAL

Bank's Lock Letter and notes on TD Bank's internal system, Rothstein was not restricted from making various transfers from his office via TD Bank's internet customer banking systems. (Pl.'s Facts ¶ 29.)

11. On October 25, 2009, when a $5 million payment was due to Coquina Investments from Rothstein, and not made, Damson called Spinosa at 11:30 am on October 28, 2009, telling Spinosa that Coquina had not received the funds due to Coquina and asking if there was any problems. At the time of the October 28th call by Damson, Spinosa knew that $5 million did not exist in the Coquina account to make such a payment to Coquina. Spinosa knew that Rothstein had caused $16 million dollars to be wire transferred to Morocco the previous day to Damson's call, on October 27, 2009, because Spinosa had assisted Rothstein in processing the wire transfer. Spinosa knew that the October 27th $16 million wire transfer from TD Bank to Morocco had no relation to Rothstein's legitimate business. By the time Spinosa spoke to Damson on October 28, 2009, Spinosa had knowledge that RRA operating account had a $1.6 million overdraft because he as well his TD Bank team were trying to cover it on the morning of October 27, 2009. Spinosa's failure to inform Damson of Coquina these problems with Rothstein and his account was intentionally misleading by Spinosa. (Pl.'s Facts ¶¶ 51-54.)

With respect to whether the lower rung participant was "vital to the achievement of the enterprise's primary goal," MCM, 62 F.3d at 979, only TD Bank could offer the fiction of the restricted account, the persuasiveness of contemporaneous account statements and other indicia of the security of the funds, all while cloaked with the illusion of integrity vested upon banks by virtue of their regulation by the federal government. (Pl.'s Facts at ¶ 1-2, 15, 41, 42.) As this Court recognized in its Order of Jan. 20, 2011: "TD Bank 'played an important role in the enterprise and that Rothstein needed TD Bank' to legitimize the enterprise, retain investors, and attract new investors." See also Starrett, 55 F.3d at 1548 (finding that the defendants "knowing implementation of the decision to commit murder qualifies under the Reves operation or management test"); Oreto, 37 F.3d at 750 (finding that the loan

**CONFIDENTIAL**
**FILED UNDER SEAL**

collectors in loansharking business were part of the enterprise, knowingly took on the collection job at

the behest of the loanshark, and were "plainly integral" to the business, despite defendant's "we're only

employees" argument); Sogecable, SA v. NDS Group PLC, No. 04-56990, 2006 U.S. App. LEXIS

30891, at *6 (9th Cir. Dec. 31, 2006) (reversing lower court and finding the conduct and participation

element had been properly alleged where the corporate defendant "at least helped to operate" the

enterprise alleged by the plaintiffs).

**C.    Coquina Has Also Produced Ample Evidence that TD Bank's Actions Were Outside the Commonly Accepted Business of Banking.**

The Reves court also provided that "[a]n enterprise also might be 'operated' or 'managed' by others

'associated with' the enterprise who exert control over it", 507 U.S. at 184, as an alternative basis for

TD Bank's RICO liability (the outsider theory).

Reves and Super Vision International, Inc. v. Mega International Commercial Bank, 534 F. Supp.

2d 1326 (S.D. Fla. 2008), are examples of RICO cases that involved outsiders engaged in their core

business. The Court found in Reves that judgment was properly entered for the auditor defendant

because it followed the procedures applicable to auditors, i.e. Arthur Young engaged in the ordinary

commercial behavior of an auditing company.  Similarly, the court in Super Vision found that the

defendant bank's activities were within the normal business of banking.  TD Bank's actions distinguish

this case from that of Super Vision because TD Bank not only had knowledge of the fraud but

participated in it.  Although TD Bank has strenuously argued that it acted like any other bank would,

discovery in this case has clearly revealed otherwise.

Contrary to TD Bank's assertions, banks can be liable under RICO with the right degree of

participation – which is clearly present in this case.  For example, in In re National Century Financial

Enterprises, 617 F. Supp. 2d 700 (S.D. Ohio 2009), the court found a RICO case proper against banks

despite the argument that it was "absurd . . . that a couple of individuals could have managed to enlist

CONFIDENTIAL
FILED UNDER SEAL

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street   ·   Miami, Florida   ·   Telephone 305.374.7771

the help of three global financial institutions, while also involving two leading accounting firms and two prominent rating agencies, in committing a nearly $3 billion fraud." 617 F. Supp. 2d at 715. "Whether [the defendant] thinks the alleged enterprise is too great to be believed is irrelevant because a massive fraud is exactly what the complaint alleges and what the court must accept as true for purposes of the motion to dismiss." Id.

As the Reves court stated: "[L]iability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." 507 U.S. at 185. As described in Section II.B., Paragraphs 1-11, and in more detail in Plaintiff's Statement of Disputed Material Facts, TD Bank's activities were far *outside* the usual conduct of a bank and the management of its own affairs. Rather, TD Bank actively participated in the enterprise. See also Handeen v. Lemaire, 112 F.3d 1339, 1349 (8th Cir. 1997) (noting that "appreciation for the unremarkable notion that the operation or management test does not reach persons who perform routine services for an enterprise should not, however, be mistaken for an absolute edict that an attorney who associates with an enterprise (for example) can never be liable under RICO"); Bocciolone v. Solowsky, No. 08-20200-CIV, 2009 U.S. Dist. LEXIS 34296, at *13 (S.D. Fla. Apr. 6, 2009) (participation adequately pled where lawyers "went beyond the offering of traditional legal advice and volunteered to take part in Defendants' enterprise").

TD Bank's actions in actually controlling Coquina funds and making representations about the funds had a much greater significance in the Ponzi scheme context than in the ordinary commercial context. This fact alone distinguishes the cases cited by TD Bank. See, e.g., Dahlgren v. First National Bank of Holdrege, 533 F.3d 681 (8th Cir. 2008) (bank acted as a lender only); Rosner v. Bank of China, 528 F. Supp. 2d 419 (S.D.N.Y. 2007) (bank moved funds only).

Further, the facts bear out much more than aiding and abetting. TD Bank employees provided "special services" on behalf of the enterprise (none of which were available in the regular course of the

**CONFIDENTIAL**
**FILED UNDER SEAL**

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street  ·   Miami, Florida   ·   Telephone 305.374.7771

bank's business) which satisfy the <u>Reves</u> test. TD Bank's conduct is sufficient to satisfy the <u>Reves</u> test's

outsider theory as well because Rothstein depended on TD Bank's reputation to support the scheme and

because TD Bank went to unusual lengths to support the scheme, all of which has been supported by

facts produced during discovery.

Coquina has produced ample proof of a dispute of fact on the "conduct and participation" element

of Section 1962(c), especially given that "[t]he [<u>Reves</u> test] typically has proven to be a relatively low

hurdle for plaintiffs to clear." <u>First Capital Asset Mgmt, Inc. v. Satinwood, Inc.</u>, 385 F.3d 159, 176 (2d

Cir. 2004). At minimum the question of whether TD Bank's participation rose to the level required by

the RICO statute is a question for the jury. <u>See, e.g.</u>, <u>United States v. Allen</u>, 155 F.3d 35, 42-43 (2d Cir.

1998) (reserving the question for the jury and noting that "commission of crimes by lower level

employees of a RICO enterprise may be found to indicate participation in the operation or management

of the enterprise but does not compel such a finding").

### III. Coquina Has Produced Abundant Factual Support of a Pattern of Racketeering Activity on the Part of TD Bank.

#### A. Generally

With respect to the "pattern of racketeering activity" element of the Section 1962(c) claim, the

Supreme Court directs us to Congress' definition of "pattern" in 18 U.S.C. § 3575(e): "[Criminal]

conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results,

participants, victims, or methods of commission, or otherwise are interrelated by distinguishing

characteristics and are not isolated events." <u>H. J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 240

(1989). Relatedness is insufficient on its own to address RICO's aim at "the threat of *continuing*

racketeering activity," so the <u>H.J.</u> Court prescribed a "less inflexible approach that seems to us to derive

from a commonsense, everyday understanding of RICO's language and Congress' gloss on it." 492

U.S. at 241.

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street   ·   Miami, Florida   ·   Telephone 305.374.7771

**CONFIDENTIAL**
**FILED UNDER SEAL**

Continuity of pattern can be shown under a closed-ended and/or open-ended analysis.  As to *closed-ended continuity*: "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." 492 U.S. at 242.  And a plaintiff can demonstrate *open-ended continuity* by showing one of three modes: "(1) 'a specific threat of repetition' exists; (2) 'the predicates are a regular way of conducting an ongoing legitimate business,' or (3) 'the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.'" Corley v. Rosewood Care Ctr., Inc., 142 F.3d 1041, 1049 (7th Cir. 1998) (citations omitted).

This case can be characterized under either closed-ended continuity or the third variant on the open-ended continuity analysis, a long-term association that exists for criminal purposes "that [] would have continued for quite some time into the future" "had the alleged scheme not been uncovered." See, e.g., In re Sahlen & Assoc., Sec. Litig., 773 F. Supp. 342, 366 (S.D. Fla. 1991).

This Court must act with the flexibility dictated by the U.S. Supreme Court, and remember that continuity depends ultimately on the "specific facts of each case." H.J., 492 U.S. at 242.  Continuity must be evaluated in the context of the entire fraud involving TD Bank -- an extensive multi-year Ponzi scheme -- including the other earlier investors defrauded by TD Bank.

### B.   Coquina Has Established a Pattern of Racketeering Activity on the Part of TD Bank Under the Closed-Ended Continuity Analysis

"Although closed-ended continuity is primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999).  In cases like Hunt v. Gouverneur Townhouse Partners, in which the court found that "[t]he predicate acts plaintiffs have pleaded are sufficiently related to constitute a RICO pattern" because "[a]ll of the securities frauds had

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street   ·   Miami, Florida   ·   Telephone 305.374.7771

CONFIDENTIAL
FILED UNDER SEAL

the same or similar purposes, participants, and methods of commission." No. 90 Civ. 4900 (MGC), 1991 U.S. Dist. LEXIS 16749, *14-15 (S.D.N.Y. Nov. 18, 1991). The court stated further: "In addition, they are alleged to have been related because they were all part of a Ponzi scheme, with the proceeds from the later fraudulent limited partnerships being used to make payments to the investors in the earlier fraudulent limited partnerships." Id. at 15.

Like the plaintiffs in Hunt, Coquina has alleged in the Complaint and discovery has shown that TD Bank defrauded not only Coquina, but other investors as well. For purposes of Section 1962(c), Coquina has produced factual support that both Rothstein and TD Bank engaged in a pattern of related racketeering activity involving Coquina and other victim-investors lasting for a substantial period of time, a long-term association, from 2005 through Rothstein's arrest in November 2009. TD Bank's involvement began in 2007. (Pl.'s Facts ¶¶ 8-11.) The same general system that Rothstein and TD Bank used to defraud Coquina was used with other victim-investors as well. For example, the Court should take judicial notice of the facts alleged in support of the alleged predicate acts committed by TD Bank in the case of Emess v. Rothstein, Case No. 10-60882 (S.D. Fla.) (J. Lenard). See Wells Fargo Century, Inc. v. Hanakis, No. 04CV1381, 2005 U.S. Dist. LEXIS 17440 *12 (E.D.N.Y. Jun. 28, 2005) ("[C]ourts are to consider the existence of other non-party victims in ruling on whether a scheme exists, provided the other individuals considered were affected in a way qualitatively similar to that of the plaintiff.")

## C.   Coquina Has Also Established a Pattern of Racketeering Activity on the Part of TD Bank Under the Open-Ended Continuity Analysis

When the Court takes the flexible approach required by the Supreme Court, it is clear that Coquina has established closed-ended continuity. Although Coquina has primarily relied upon a closed-ended continuity theory, it can also rely upon the third variant of the open-ended continuity analysis that "'the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.'" Corley, 142 F.3d at 1049 (citations omitted). For example, in Sahlen, a

-14-

CONFIDENTIAL
FILED UNDER SEAL

company used fraudulent means to encourage investment in the company beginning in 1986. 773 F. Supp. at 350. In 1989, the SEC undertook an investigation of the company that uncovered a scheme to manipulate profits and overstate assets and it was found that the company's stock was worthless. Id. Investors filed suit under RICO and on defendant's motion to dismiss, the court found that the plaintiffs met the standards for both closed and open-ended continuity: "These alleged misstatements to public and private investors occurred repeatedly over a several year period, all in furtherance of the Project. In addition, had the alleged scheme not been uncovered, it is reasonable to infer that it would have continued for quite some time into the future." 773 F. Supp. at 366; see also Emcore Corp. v. PricewaterhouseCoopers LLP, 102 F. Supp. 2d 237, 253-54 (D.N.J. 2000). Here, Coquina's banking expert testified that since all of the alerts, overdrafts and uncollected funds activity associated with Rothstein's accounts were ignored, the fraud would have continued indefinitely but for law enforcement's arrest of Rothstein in October of 2009. (Pl.'s Facts ¶¶ 8-11.)

In sum, discovery has established that Rothstein and TD Bank defrauded various investors over a substantial period and would have continued if the fraud had not been uncovered. The scheme and all of the predicate acts are ones for which TD Bank "bears some responsibility," directly or indirectly. It is simply beyond debate that hundreds of millions of dollars were laundered through TD Bank accounts as part of a billion dollar fraud scheme in which hundreds of people were victimized over the course of several years, resulting in the largest Ponzi scheme in Florida history. This is precisely the type of extensive criminal conduct for which Congress designed the civil RICO statute. Coquina has shown active, intentional and substantial involvement in that criminal conduct by TD Bank over the course of several years. There is no effort to bootstrap the actions of Rothstein here. TD Bank's actions with respect to investors in addition to Coquina speak for themselves and add up to a far greater time period of involvement in the fraud than the duration of its relationship with Coquina. (Pl.'s Facts ¶¶ 1-2, 15.)

Mandel & Mandel LLP
1200 Alfred I. duPont Building · 169 East Flagler Street · Miami, Florida · Telephone 305.374.7771

CONFIDENTIAL
FILED UNDER SEAL

**IV.    There is at Minimum a Dispute of Fact as to Whether TD Bank Has Committed Predicate Acts**

Defendant next complains that Coquina cannot offer proof on the highly-fact intensive question of whether it had the proper scienter when it committed wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. §§ 1956-57) and violations of the National Stolen Property Act (18 U.S.C. § 2314). Plaintiff's Statement of Disputed Material Facts is replete with indicia of TD Bank's knowledge and participation in the fraud. (Pl.'s Facts ¶¶ 1-2.)  That the interstate aspect of the wire fraud offense (wiring of funds from Coquina's account in Texas to TD Bank in Florida, use of email, telephone conversations, etc.) has been supported with cites to the record is self-evident.  (Pl.'s Facts ¶ 14.) Certainly the totality of Spinosa's and other TD Bank employees' activities on behalf of the fraud support knowledge of the fraud.  (Pl.'s Facts ¶¶ 1-5, 15, 29, 41-53.)

**V.    Because Coquina Has Produced Sufficient Facts to Support its Section 1962(c) Claim, its Conspiracy Claim Must Be Tried.**

"To prove a conspiracy to violate § 1962(c), a plaintiff must demonstrate that a defendant 'objectively manifested, through words or actions, an agreement to participate in the conduct of the affairs of the enterprise' through a pattern of racketeering activity." Liquidation Comm'n of Banco Intercontinental, S.A. v. Alvarez Renta, 530 F.3d 1339, 1353 (11th Cir, 2008) (citation omitted). Evidence of the pattern having been demonstrated above, see Section III supra, "[a]n agreement to participate in a RICO conspiracy may be shown either by proving 'an agreement on the overall objective of the conspiracy' or by showing that the defendant agreed to commit two predicate acts." Id. at 1353 (quoting United States v. Browne, 505 F.3d 1229, 1264 (11th Cir. 2007)).  "The existence of an agreement, as well as its objective, may be inferred from circumstantial evidence demonstrating 'that each defendant must necessarily have known that the others were also conspiring to participate in the same enterprise through a pattern of racketeering activity.'" Id.  Because Coquina has produced

CONFIDENTIAL
FILED UNDER SEAL

sufficient facts supporting its Section 1962(c) claim, see supra its conspiracy claim should be tried as well.

**VI.     An Adverse Inference Against TD Bank is Permitted Here Due to the Invocation of the Fifth Amendment Privilege Against Self-Incrimination by Spinosa and Others**

Spinosa's invocation of the Fifth Amendment actually adds to the weight of the evidence favoring Plaintiff because the Court is permitted to draw an adverse inference in a civil case from a defendant's refusal to testify on self-incrimination grounds. Cole v. American Capital Partners, Ltd., No. 06-80525-Civ-Marra, 2008 U.S. Dist. LEXIS 59184, *13-14 (S.D. Fla. Aug. 4, 2008).  In SEC v. Lauer, No. 03-80612-Civ-Marra, 2008 U.S. Dist. LEXIS 73026, *88 (S.D. Fla. Sept. 23, 2008), in granting summary judgment against the defendant, the court found adverse inferences were appropriate against the corporate defendant where ten percent owners and other related managers took the Fifth in response to questioning by the SEC. See also RAD Services, Inc. v. Aetna Casualty & Surety Co., 808 F.2d 271 (3d Cir. 1986) (trial court properly admitted the invocation of the privilege by non-party agents of the plaintiff in pre-trial depositions and instructed the jury on adverse inference); Brink's Inc. v. City of New York, 717 F.2d 700 (2d Cir. 1983) (trial court properly allowed adverse inference against Brink's based on current and former employees' invocation and rejected any distinction between former and current employees); Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1304 (11th Cir. 2009) (noting that "the court may draw adverse inferences against a party that invokes the Fifth Amendment"); United States v. Two Parcels of Real Prop. Located in Russell County, Ala., 92 F.3d 1123, 1129 (11th Cir. 1996) (noting that "the trier of fact may take an adverse inference against the parties to a civil action refusing to testify on Fifth Amendment grounds").

Mandel & Mandel LLP
1200 Alfred I. duPont Building  ·  169 East Flagler Street  ·  Miami, Florida  ·  Telephone 305.374.7771

CONFIDENTIAL
FILED UNDER SEAL

**VII.    Coquina's Claims for Fraudulent Misrepresentation and Aiding and Abetting a Fraud Are the Subject of a Pending Motion for Summary Judgment Filed by Coquina.**

Defendant complains that both of Coquina's state law claims fail for lack of TD Bank's actual knowledge of the fraud, false representations, or substantial assistance. These claims are the subject of Plaintiff's Motion for Summary Judgment filed on May 11, 2011. In addition, the Defendant's defense of vicarious liability, referred to at pages 11-12 of Defendant's motion, is also the subject of Plaintiff's Motion for Summary Judgment. (Pl.'s Mot. Summ. J. at 18-19) Coquina asks that the Court rely on the argument and factual support provided in its motion and factual statement as its response to Defendant's arguments.

**VIII.   Magistrate Judge Goodman's Report & Recommendation in the <u>Emess</u> Case Has No Effect Here**

Defendant would like this Court to rely on the unadopted Report & Recommendation ("R&R") of Judge Goodman in a different case, <u>Emess v. Rothstein</u>, No. 10-60882-Civ-Lenard, in order to prevail on summary judgment in the <u>Coquina</u> case. Ironically, TD Bank has previously claimed that the <u>Emess</u> action is factually distinct from this action:

> contrary to Emess' assertion in its Notice, the factual allegations of the complaint in <u>Coquina Investments v. Scott W. Rothstein and TD Bank, N.A.,</u> Case No. 10-60786 ("Coquina"), are separate from Emess' factual allegations and therefore the Motion should not be decided without this Court's independent scrutiny of the alleged individualized facts and law particular to this separately filed case.
>
> <u>See Defendant TD Bank, N.A.'s Response to Plaintiff Emess Capital's Notice of Filing of Order Denying Motion to Dismiss [D.E 49] and Request for Oral Argument Or, In the Alternative, Supplemental Briefing.</u>(D.E. 52, *Emess Action*).

TD Bank also vigorously opposed consolidation of the two cases for purposes of discovery. <u>See Defendant TD Bank, N.A.'s Opposition to Plaintiff Emess Capital LLC's Motion to Consolidate For Purposes of Discovery</u> (D.E. 40 *Emess Action*). Notwithstanding, this Court has already ruled on whether Coquina's complaint set forth adequate allegations and found that it did. <u>See</u> Order of Jan. 20, 2011 (D.E. 87); <u>see also</u> <u>McGinley v. Houston</u>, 361 F.3d 1328, 1331 (11th Cir. 2004) (noting the

**CONFIDENTIAL
FILED UNDER SEAL**

"general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions"). Defendant improperly asks the Court to take a chapter from another court's book on a ship that has sailed. Defendant's suggestion that the R&R is at all relevant here is highly misleading and inappropriate, suggesting that the R&R contains "rulings" that have effect "as a matter of law" which "doomed" the claims of the plaintiff in that case. Def.'s Mot. Summ. J. at 5-6 & n.1. In its efforts to lead the Court down the wrong path, the truth is that counsel has conveniently failed to mention that the R&R has not been adopted, but rather sits on the docket with no effect whatsoever, the parties having briefed their lengthy objections to it. See United States v. Raddatz, 447 U.S. 667, 673 (1980) (noting that magistrate judges have no authority to make a final and binding disposition under relevant portion of 28 U.S.C. § 636). TD Bank's misguided efforts to re-litigate issues that have already been decided by this Court should be denied. So should its motion for summary judgment.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny TD Bank's Summary Judgment Motion in all respects.

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street   ·   Miami, Florida   ·   Telephone 305.374.7771

CONFIDENTIAL
FILED UNDER SEAL

Dated: June 10, 2011

Respectfully submitted,

MANDEL & MANDEL LLP
169 East Flagler Street, Suite 1200
Miami, Florida  33131
Telephone: 305.374.7771
Facsimile: 305.374.7776
dmandel@mandel-law.com

By:

DAVID S. MANDEL
    Florida Bar No. 38040
NINA STILLMAN MANDEL
    Florida Bar No. 843016
JASON B. SAVITZ
    Florida Bar No. 36444

*Attorneys for Coquina Investments*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 10, 2011, a true and correct copy of the foregoing was served by U.S. Mail on Glenn E. Goldstein, Esq., and Donna Evans, Esq., Greenberg Traurig, 401 East Las Olas Boulevard, Suite 2000, Fort Lauderdale, FL 33301.

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street   ·   Miami, Florida   ·   Telephone 305.374.7771

CONFIDENTIAL
FILED UNDER SEAL