UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60786-Civ-Cooke/Bandstra

COQUINA INVESTMENTS,

    Plaintiff,

v.

SCOTT W. ROTHSTEIN and
TD BANK, N.A.

    Defendants.
_____/

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS AND OPPOSING FACTS
IN OPPOSITION TO DEFENDANT'S RULE 7.5(C) STATEMENT OF FACTS**

[FILED UNDER SEAL]

Pursuant to Fed. R. Civ. P. 56(c) and S.D. Fla. L.R. 7.5(c), Plaintiff Coquina Investments ("Coquina"), by and through its undersigned counsel, files *Plaintiff's Statement of Disputed Facts and Opposing Facts in Opposition to Defendant's Rule 7.5(c) Statement of Facts* and states as follows:

1-2. Disputed. While Scott W. Rothstein ("Rothstein") and other Rothstein Rosenfeldt Adler, P.A. ("RRA") employees did take part in the fraud perpetrated on victims, TD Bank had knowledge of the fraud. Bankr. Kerstetter 127:19-129:22; *U.S. v. Caputi,* No. 11-60124-CR-Cr-Zloch/Rosenbaum, Information at ¶¶ 3 (G.A.), 9, 12. TD Bank also participated in the fraud. For example, Rothstein requested that former TD Bank Regional Vice President Frank Spinosa ("Spinosa") sign letters to investors of Rothstein on TD Bank letterhead that purported to restrict accounts designated for investors or "lock letters." Spinosa 22:1-25:1; 32:11-10; 65:21-6. Spinosa signed or prepared such letters because it furthered the Bank's interest and Spinosa's interest. Spinosa 33:2-18.

For example, Spinosa signed in his capacity as the Bank's Regional V.P., a position he held with Commerce Bank and TD Bank (which merged in 2008) from approximately 2006 through his termination on Nov. 1, 2009 [Spinosa 14:18-22; 15:17-23], a letter for Coquina on Aug. 17, 2009, referred to by Spinosa and Rothstein as a "Lock Letter," which stated that "upon receipt of this letter, all funds contained in the above account shall only be distributed upon my instructions and shall only be distributed to Coquina Investments, a Texas general partnership at American Bank, Account Number 410009989, 101 North Shoreline, Suite 600, Corpus Cristi, Texas," and "This letter is not meant to convey any ownership of the account or access to the account to any other party but rather is meant to irrevocably restrict conveyances from this account to Coquina Investments." Spinosa 40:1-7, 41:23-44:5. The Lock Letter signed by Spinosa was false and fraudulent. Yip Expert Report at 13, Ex. 30-32.

On or about August 17, 2009, Scott Rothstein and Frank Spinosa exchanged emails regarding a planned telephone call with Coquina investors. Rothstein told Spinosa a list of questions he would ask Spinosa during the call and to "just answer yes to all the questions and we are done." Spinosa

-1-

**CONFIDENTIAL**
**FILED UNDER SEAL**

replied "no problem." Declaration of David S. Mandel ¶3. Further, on or about August 17, 2009, Rothstein, Spinosa, and Coquina investor Barrie Damson ("Damson"), participated in a conference call in which Coquina investor Melyvn Klein ("Klein") listened. During the conference call, Spinosa confirmed Coquina's lock letter and the $22 million in Coquina's locked account. Klein 72-73; Damson 154-157. After specific requests by Rothstein via email, Spinosa signed, in his capacity as the Bank's Regional Vice President, similar lock letters to other various investors on September 8, 9, 16, 18, 24, 30, and October 1, 15, 2009. Spinosa 45:3-59:9; 60:16-65:4. On September 25, 2009, pursuant to a request by Rothstein, Spinosa signed, in his capacity as the Bank's Regional Vice President, another lock letter for Coquina. Spinosa 59:11-60:12.

3-5. Disputed. Villegas worked at RRA and participated in the fraud along with TD Bank employees who had knowledge of and participated in the fraud. For example, Wende Litterio ("Litterio"), Spinosa's administrative assistant, prepared approximately five (5) "Lock Letters" for Spinosa on TD Bank letterhead. Litterio 92:10-100:16; 111:7-112:13;127:1-128:18. She testified that Rothstein would tell Spinosa what to write in an email, Spinosa would forward the email to Litterio and she would type it as directed, and Spinosa would sign it. Litterio 103:9-107:6; 111:7-112:13; 127:1-130:10; 131:6-20. Litterio testified that she asked Spinosa if it was okay to prepare these Lock Letters, and Spinosa told her "okay". Litterio 113:10-20.

6. Disputed. Renie worked at RRA and participated in the fraud with TD Bank employees who had knowledge of and participated in the fraud. See 1-5 supra.

7. Disputed. In addition to using fake documents, Rothstein collaborated with TD Bank to entice Coquina to invest. See 15 infra.

8-11. Disputed. The purported "facts" are unsupported legal conclusions. Coquina moves to strike each pursuant to L.R. 7.5(c)(2). TD Bank (then Commerce Bank) met with RRA representatives sometime in 2007 and in November 2007, met with Rothstein regarding opening accounts. From Nov.

2007, through Nov. 2009, RRA maintained accounts at TD Bank. Def.'s Admissions at 1-4. RRA was a large depositor at TD Bank's Weston Store and was referenced on at least 3 occasions as being among the Weston Store's top clients. Def.'s Admissions at 7. Rothstein and his firm's accounts were considered VIP customers [Bankr. Caretsky I 43:17-20, Spinosa 25:3-26:1], top customers of the region [Spinosa 26:3-16] and an important client [Bankr Kerstetter, 25:12-17, Spinosa 19:10-15]. RRA's account activity constituted a large percentage of the Weston Store's business. Bankr. Kerstetter 26:1-2, 26:12-17; 29:1-8; Razorback Caretsky 43:21-44:5. The large volume of deposits into RRA related accounts at the Weston Store helped Store Manager Roseanne Caretsky ("Caretsky") meet her performance goals for that branch in 2009. Razorback, Caretsky 42:6-43:17. Spinosa received bonuses and compensation from TD Bank based in part on the size of the accounts he originated. Spinosa 27:8-14. $4 billion dollars flowed into and out of the RRA accounts in the 2 year period from 2007 and ending in 2009. Ghiglieri Expert Report at 9, App. L. On October 30, 2009, Spinosa invited Rothstein to have dinner with the president and CEO of TD Bank, Bharat Masrani. Spinosa 120:24-121:16.

TD Bank did not follow generally accepted banking procedures in opening multiple accounts (as many as 30), including multiple operating accounts (as many as 25) and trust accounts for RRA, that were not properly denominated and did not have adequate controls in place to police its online system for violations of the federal banking laws. Ghiglieri Expert Report at 2-3, 8-9, App. D; Ghiglieri 121:20-122:6; *U.S. v. Caputi* Information at ¶¶ 3 (G.A.), 9, 12. TD Bank's systems for compliance with anti-money laundering laws and the Bank Secrecy Act were not effective in preventing the bank from being used as an instrument of fraud. Ghiglieri 12:25-13:13. Rothstein laundered stolen investor money at TD Bank. Compl. ¶¶ 1, 12-13; *U.S. v. Caputi* Information at ¶¶ 3 (G.A.), 9, 12. As a result of the manner in which TD Bank mishandled the accounts, the fraud would have never ended if law enforcement had not acted. Ghiglieri 80:13-81:14. TD Bank was involved in the fraud from at least 2007 through 2009. *U.S. v. Caputi* Information at 2-4.

12-13.   Disputed.  Purported "facts" are not supported by TD Bank's citations.

14.   Disputed.  Purported "facts" are not supported by TD Bank's citation or citation to the record.  That is not the chart from paragraph 42 of the Complaint.  Moreover, for each structured settlement, Coquina wired funds from its account at American Bank in Texas to TD Bank in Florida.  Def.'s Admissions at 24-33, 35-40, 42-47.

15.   Disputed.  TD Bank had an active part in soliciting Coquina's investments.  As part of the scheme to defraud investors, as early as October 2008, through October 2009, TD Bank participated in "shows" to potential investors of Rothstein's fraudulent scheme with Spinosa's knowledge.  Razorback, Kerstetter 74:1-93:23; 108:4-109:11; Bankr. Kerstetter, 43:5-10, 43:24-16; 50:7-51:5; 52:17-55:25; Bankr. Caretsky I, 30:20-33:19; 58:3-60:2; 66:25-69:25; Razorback, Caretsky 93:11-98:5; 103:20-114:19; 131:12-132:1.74:1-93:23; 108:4-109:11; Spinosa 37:2-8.  Rothstein requested that Spinosa meet personally and speak directly on the phone with investors of the fraud scheme from time to time, and Spinosa complied by meeting with investors and speaking to them on the phone as part of his job at TD Bank.  Spinosa 34:6-35:20.  Rothstein also requested that Spinosa vouch for Rothstein to investors and to tell investors that Rothstein was a longtime, highly valued bank customer, and Spinosa did so as part of his duties at the Bank.  Spinosa 37:10-38:14.  Rothstein asked that Spinosa vouch for the safety of the investments in the fraudulent scheme and Spinosa did so as part of the course and scope of his employment at TD Bank.  Spinosa 38:16-39:15.  Spinosa also agreed, within the scope of employment, to help Rothstein by using key bank employees and bank facilities to participate in investor meetings to induce victims to invest and to lend credibility to the scheme.  Spinosa 135:15-22.  Spinosa consented, within the scope of his employment, to Rothstein's use of TD Bank offices to show false bank statements to investors and Spinosa knew that the bank statements shown to investors at TD Bank offices were false at the time they were being shown.  Spinosa 135:24-136:13; *Caputi* Information at 6.  Between 2008 and Oct. 2009, TD Bank employees printed out true and accurate cover letters and

-4-

copies of certain balance statements for RRA accounts and provided them to RRA. Def.'s Admis. at 8, 17, 18-21, 34.

16-17.   Disputed.  See 15 supra.

18.   Disputed.  The record citation makes no reference to "his online system."

19.   Disputed.  Purported "facts" are not supported by TD Bank's citations for Sentence 1 and Sentence 2 beginning with the word "Szafranski".

20.   Disputed.  TD Bank's citations are not supported for Sentence 1 beginning with the word "lasted".  In addition, Klein conducted due diligence on TD Bank.  Klein 62:6-65:9.

21.   Disputed.  Coquina relied on the fact that TD Bank could be relied on as a highly regulated depository, i.e., all TD Bank employees were required to be trained in anti-money laundering ("AML"), Bank Secrecy Act, and related banking laws, on how to identify suspicious activity, and to identify "red flags" or unusual activity.  White, 30(b)(6), 91:19-20; Bankr. Caretsky I, 15:7-17:17; Bankr. Caretsky II, 180:12-182:6; 182:10-184:9; 196:17-198:9; 201:17-22; 193:16-194:6; Di Toro 56:9-22, 81:6-84:22, 147:3-23; Auletta 67:4-70:8, 197:11-15; Ghiglieri 174:16-19.

22.   Disputed.  TD Bank's characterization of White 30(b)(6) deposition Ex. 13 as a "report" and Damson's absence "during a large part of Rothstein's presentation," is unsupported.

23.   Disputed.  "Gave" is not supported by TD Bank's citation for sentence 1.  Rothstein told White he was signing on to his online TD Bank account.  White 30(b)(6) 136.  Coquina moves to strike the last unsupported sentence for violating S.D. Fla. L.R. 7.5(c)(2).

24.   Disputed.  Improper legal conclusion, not fact, and unsupported.  Coquina moves to strike the unsupported sentence pursuant to S.D. Fla. L.R. 7.5(c)(2).

25.   Disputed.  Purported "facts" are not supported by TD Bank's citation or citation to the record.  TD Bank's chart in paragraph 14 does not demonstrate Coquina invested $13.7 million as purported by TD Bank.  Moreover, for each structured settlement, Coquina wired funds from its account

at the American Bank in Texas to TD Bank in Florida. Def.'s Admis. at 24-33, 35-40, 42-47.

26. Disputed. TD Bank's purported "facts" are not supported by TD Bank's citation or citation to record. In addition, Coquina believes the letters were issued by TD Bank employees but transmitted through Rothstein. White 30(b)(6) 203:18-19. Coquina moves to strike the last sentence pursuant to S.D. Fla. 7.5(c)(2). Skolnick affidavit admits exhibits 10 and 11 are not attached.

27. Disputed. TD Bank's characterization of Klein's testimony is not supported by TD Bank's citation to the record. In addition, the Lock Letter was false and fraudulent. White 30(b)(6) 263-267; Yip Expert Report at 13, Ex. 30-32.

28. Coquina does not dispute TD Bank's narrow characterization. However, the complete record provides that "there was due diligence that we [Coquina] did [on TD Bank] from the beginning. There were bank confirmations that were sent on TD letterhead prior to that date." White 214:21-215:3.

29. Coquina investor Kathleen White ("White") testified that on Sept. 25, 2009, she and Damson went with Rothstein to meet Spinosa at TD Bank's corporate office at 5900 North Andrews Ave. Fort Lauderdale in a conference room behind the receptionist. White, 30(b)(6) 248-250; Damson 221, 228; Spinosa 94:22-96:18. Spinosa knew Coquina representatives were meeting with him in order to discuss the Coquina Lock Letter. White, 30(b)(6) 257:14-21; Damson 228. During the meeting Spinosa explained the terms of the Lock Letter to Coquina, that the Lock Letter was not unusual at TD Bank, that TD Bank had many accounts with the same irrevocable restrictions that allowed for disbursements only to Coquina, and that TD Bank had systems in place to make sure that the Lock Letter was complied with. White, 30(b)(6) 251-253, 263; Spinosa 99:19-100:8. Spinosa had knowledge that when he made assurances to investors with respect to the lock Letters that these Lock Letters were false because it was not possible to restrict the accounts at TD Bank in the way described in these Lock Letters. Spinosa 67:2-18. During this Sept. 25, 2009, meeting, Spinosa also confirmed the terms and restrictions on the Coquina account as specified in the previous Lock Letters and Spinosa

knew the statement was false. Spinosa 100:10-25; Spinosa 101:10-103:6.

Caretsky stated that she had seen the Lock Letter dated Aug. 17, 2009, directed to Coquina that included irrevocable instructions. Bankr. Caretsky I 80:12-89:14, 101:8-15; Bankr. Caretsky II, 205:15-20; Razorback, Caretsky 120:16-123:25. Caretsky understood the Lock Letter to represent that distributions from the Coquina Account could only be sent to Coquina Investments. Bankr. Caretsky II 210:17-211:3, 5-7. Caretsky also testified that TD Bank's notes and Lock Letters placed on the account did not restrict Rothstein from making various transfers from his office via TD Bank's internet customer banking systems. Bankr. Caretsky II 208: 10-22; 209:17-21; 215:13-15, 20-24; 209:2-10; Razorback, Caretsky 84:15-85:10. At the Sept. 25, 2009, meeting at TD Bank with Coquina investors, Spinosa, in his capacity as the Bank's Regional V.P., vouched for Rothstein and the safety of Coquina's investments, stated he was familiar with Coquina and the funds in the account, and stated that there was in excess of $22 million dollars deposited in the Coquina account on that date. Spinosa 96:20-97:25; White, 30(b)(6) 251-253. Spinosa's statements were made intending to deceive Coquina so that Coquina would rely on Spinosa's representations and continue to invest in the fraud scheme. Spinosa, 103:24-104:14. At the meeting, Spinosa provided Coquina with his TD Bank business card. Spinosa 104:16-106:10; Damson 233. After the meeting with Spinosa at TD Bank, Coquina made another commitment of money to fund an additional investment. Spinosa 106:12-22.

30. Disputed as to the characterization of documents and no evidentiary basis laid for signature comparison. Coquina moves to strike the last sentence pursuant to Fed.R.Civ. P. 56(c)(1)-(2).

31. Disputed. The dollar figures cited by TD Bank are not supported by TD Bank's citation to the record. In addition, TD Bank mischaracterizes White's and Klein's testimony. White 30(b)(6) 88-89. Rothstein provided continuing answers to Klein's questions that satisfied Klein. 86:11-13.

32. Disputed. TD Bank's purported "facts" are not supported by the record. White 30(b)(6) 180:16-181:13; Damson 122:7-123:23.

33.   Disputed. TD Bank mischaracterizes record and White and Klein testimony. White 30(b)(6) 88-89. Rothstein's continuing answers to Klein's questions satisfied Klein. Klein 86:11-13.

34-38.   Disputed. In each paragraph TD Bank's purported "facts" are not supported by its citation to the record or it otherwise mischaracterizes the cited testimony.

39.   There is no 39.

40.   Disputed. Not supported by record or citation. Coquina move to strike pursuant to S.D. Fla. 7.5(c)(2).

**Pursuant to Rule 7.5(c) of the Local Rules of the Southern District of Florida, Coquina files its Additional Statement of Material Facts in support of its Response in Opposition to Defendant's Motion for Summary Judgment as follows:**

41.   In March 2009, Coquina learned of an investment opportunity in which Rothstein offered structured settlements of potential sexual harassment lawsuits that he claimed he settled on behalf of RRA clients for investment/purchase by individuals or entities. Klein 38:9-13; 42:22-52:4. Coquina was told the settlements were for very large sums of money, the plaintiffs wanted to receive a one-time early payout constituting a percentage of the total settlement instead of a larger payout in monthly installments, and the settlements were highly confidential because the potential lawsuits were against high-profile defendants. Damson 28, 35; Complaint ¶¶ 12-13. Coquina was told the settlement proceeds were held in restricted accounts at TD Bank (6861011614 and 6861077193) for the benefit of Coquina ("Coquina accounts"). Complaint ¶ 14; White 30(b)(6) 297:2-9.

42.   Coquina invested over $37 million dollars. Def.'s Admissions Nos. I.24, I.26, I.28, I.30, I.32, I.35, I.37, I.39, I.42, I.44, I.46, I.60; Yip Expert Report at 22:¶40.

43.   The Weston Store employees, including Caretsky and Assistant Manager Jennifer Kerstetter ("Kerstetter") assisted Rothstein and RRA with all RRA-related accounts. Bankr. Kerstetter 18:8-23:15; Razorback, Kerstetter 143:14-24. TD Bank employee Paolo Casabone was assigned as Cash Management representative. Razorback, Caretsky 74:18-75:2. All activities at TD Bank

regarding Rothstein and RRA's accounts were supervised by Spinosa. Bankr. Kerstetter, 18:8-23:15; Razorback, Kerstetter 143:14-24; Razorback, Caretsky 67:1-4: 68:1-7.

44. Kerstetter, Caretsky, and other TD Bank employees knew RRA's deposit and withdrawal volumes based on daily reports and weekly significant balance reports from the Weston branch. Bankr. Kerstetter 25:18-22, 26:1-2; 27:4-12; Bankr. Caretsky I 51:23-53:19; Razorback Caretsky 155:4-156:13.

45. TD Bank's 30(b)(6) Corporate Representative Carlo Di Toro ("Di Toro") testified during his deposition that one fraud alert was generated relating to an RRA account. Di Toro 198:5-205:19. In an affidavit submitted by Di Toro after his deposition and after the discovery deadline, Di Toro verified that 13 fraud alerts had been issued regarding the RRA-related accounts starting on Dec. 18, 2008, through July 20, 2009. Di Toro Aff. dated Apr. 14, 2011, at 3-4. TD Bank produced approximately 150 "alerts" to Coquina, during Di Toro's deposition. Mandel Decl. ¶ 4. Notwithstanding these fraud alerts, no holds were placed on Rothstein related accounts. Di Toro Aff. dated Apr. 14, 2011 at 4-5.

46. TD Bank's 30(b)(6) Corporate Representative Vincent Auletta noted that upon the change of TD Bank's AML/BSA system in September 2009, there were one or two AML alerts, but no more than five (5) alerts, on one or two Rothstein related accounts from Sept. 2009 through Oct. 2009, regarding transactions in the tens of millions. Auletta 56:3-57:12, 263:9-273:7. Despite these AML alerts, no Rothstein related account was frozen by TD Bank. Auletta 56:3-57:12.

47. RRA related accounts appeared on an overdraft list at different times. Bankr. Kerstetter 11: 4-16; 42:12-19. Caretsky testified that it was "unusual" that an account had been in overdraft status two times within a matter of days. Bankr. Caretsky II 231:14-17.

48. As Bank Regional V.P., Spinosa had knowledge of TD Bank banking operations, TD Bank policies, and federal regulations (incl. Bank Secrecy Act, PATRIOT Act, "know your customer" requirements, and the filing of Suspicious Activity Reports). Spinosa 15:21-16:25, 17:3-5, 17:7-12.

-9-

CONFIDENTIAL
FILED UNDER SEAL

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street   ·   Miami, Florida   ·   Telephone 305.374.7771

49. On Oct. 25, 2009, a $5 million payment was due to be wired from TD Bank to Coquina. Damson called Spinosa at 11:30 am on Oct. 28, 2009, because the wire was not received. Damson told Spinosa that Coquina had not received the funds due to Coquina and asked if there were any problems or concerns. Spinosa 106:24-109:4; Damson 229:2-230:8. Spinosa said no. Damson 229:2-230:8. However, when Damson called Spinosa, Spinosa knew that $5 million did not exist in the Coquina account to make such a payment to Coquina. Spinosa 112:5-113:5.

50. During Damson's Oct. 28th call to Spinosa, Spinosa also knew that Spinosa had assisted Rothstein in wire transferring $16 million from TD Bank to Morocco the previous day (Oct. 27, 2009). Spinosa 113:7-114:5; 118:11-10. Spinosa knew that the $16 million wire transfer from TD Bank to Morocco on Oct. 27th had no relation to Rothstein's legitimate business. Spinosa 117:2-12. However, when Damson called, Spinosa said there were no concerns with the account. Damson 229:2-230:8.

51. During Damson's October 28th call to Spinosa, Spinosa knew that the RRA operating account had a $1.6 million overdraft because he and his TD Bank team were trying to cover the overdraft on the morning of Oct. 27, 2009. Spinosa 119:7-120. However, when Damson called, Spinosa said there were no problems or concerns with the account. Damson 229:2-230:8.

52. Spinosa's failure to inform Damson of Coquina of these problems or concerns with Rothstein or the account was intentionally misleading by Spinosa. Spinosa 120:6-22.

53. Defendant Rothstein pled guilty to RICO conspiracy, money laundering and wire fraud on January 27, 2010. <u>United States v. Rothstein</u>, Case No. 09-60331-Cr-Cohn.

Dated: June 10, 2011

Respectfully submitted,

MANDEL & MANDEL LLP
169 East Flagler Street, Suite 1200
Miami, Florida 33131
Telephone: 305.374.7771
Facsimile: 305.374.7776
dmandel@mandel-law.com

By: _____
DAVID S. MANDEL
  Florida Bar No. 38040
NINA STILLMAN MANDEL
  Florida Bar No. 843016
JASON B. SAVITZ
  Florida Bar No. 36444

*Attorneys for Coquina Investments*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 10, 2011, a true and correct copy of the foregoing was served by U.S. Mail on Glenn E. Goldstein, Esq., and Donna Evans, Esq., Greenberg Traurig, 401 East Las Olas Boulevard, Suite 2000, Fort Lauderdale, FL 33301.

_____