UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-60786-Civ-Cooke/Bandstra

FILED by _____ D.C.
JUL 19 2011
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

COQUINA INVESTMENTS,
    Plaintiff,
v.

SCOTT W. ROTHSTEIN and
TD BANK, N.A.,
    Defendants.
_____/

Sealed

### DEFENDANT TD BANK, N.A.'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S IDENTIFIED EXPERT MARIA YIP AND INCORPORATED MEMORANDUM OF LAW

Defendant TD Bank, N.A. ("TD Bank") files this motion requesting that the Court exclude testimony of Maria M. Yip, identified as an expert by Plaintiff Coquina Investments ("Coquina"), and in support hereof states as follows.

### I.    INTRODUCTION

Plaintiff has submitted an Expert Witness Report, dated May 13, 2011 (the "Expert Report"), Supplemental Expert Witness Report late-filed, without leave of this Court, on May 19, 2011 (the "Supplemental Report"), and Expert Rebuttal Report dated June 16, 2011 (the "Rebuttal Report") (collectively, the "Reports") of Maria M. Yip ("Yip"). In the Reports -- and most egregiously in her Rebuttal Report -- Yip, whose background is in accounting, gives opinions that go beyond her field of expertise and invades the province of the Court and jury.

Yip states that she was retained to provide an opinion as to the flow of funds from Rothstein Rosenfelt Adler ("RRA) and Scott Rothstein ("Rothstein") related accounts maintained

at TD Bank, disbursements from restricted accounts, evidence of a Ponzi scheme in the TD Bank accounts, review of fraud alert information produced in litigation, and damages, if any, sustained by the Plaintiffs [sic], assuming the Defendants, Rothstein and TD Bank ("TD Bank") are found liable for damages." Yip Initial Report, page 4; Yip Rebuttal Report, page 3.

However, Yip's Reports and proffered testimony do not satisfy the standard for admissibility of expert opinions under the *Daubert* standard and Fed. R. Evid. 702 and 704 for at least the following reasons:[1]

- Yip's qualifications to provide certain of the above opinions are severely lacking and do not qualify her for to render those opinions. Specifically, she is not qualified to render the opinions set forth in her Reports that relate to fraud alerts related to the RRA and Rothstein accounts at TD Bank and the Bank's regulatory obligations with respect to such restricted accounts. Yip is also not an expert on economic theory and does not have the expertise to testify about the expert analysis of Thomas Blake, a TD Bank expert, on his analysis of the relationship between risk and reward in this case as it applies to the "investments" Plaintiff alleges.

- Yip's opinions are also based on mis-readings and misassumptions without record support.

- Usurping the roles of Court and jury, Yip also provides "expert" testimony which is nothing more than a string of improper legal conclusions designed to tell the jury what conclusion they must reach and step into the role of the Court as the source of the applicable legal standards to be applied to this case. Yip, neither trained or otherwise an

---

[1] TD Bank has not yet taken the rebuttal deposition of Ms. Yip. In light of her vacation schedule, she is being provided to TD Bank on July 22, 2011. TD Bank will only then be able to address further deficiencies in her testimony.

2

expert in the legal terms she uses, renders opinions with legal terms of art that have distinct, specialized meaning in the law, separate and apart from their vernacular use, and beyond the permissible bounds of admissibility set forth in Fed. R. Evid. 704.

- Finally, in light of the deadlines this Court set forth for expert reports and this Court's July 8, 2011 Order reiterating expert report deadlines, Yip's Supplemental Report and testimony relating to the opinions in that report should be stricken. With complete disregard for this Court's Orders, Plaintiff late-served a Supplemental Report on May 19, 2011, six days *after* the Court's deadline for service. Plaintiff did not seek an extension from this Court nor receive an extension and violated this Court's Scheduling Order which this Court has insisted the parties adhere to.

In sum, Yip's testimony and the opinions and discussions in her Reports relating to the significance of fraud alerts and the rejection of Blake's opinion as to the speculative nature of the subject investments are inadmissible because they set forth unreliable opinions beyond the scope of Yip's expertise; rely on misstatements of the record, and render opinions related to legal standards to be articulated by this Court and applied by a jury—not by an expert.

Accordingly, none of these opinions is admissible and Yip's testimony on these subject matters should be excluded from the trial of this case.

## II.  LEGAL STANDARD

### A.  FED. R. EVID. 702

This Court must scrutinize the reliability of Yip's expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), in which the Supreme Court established the standards for admissibility of expert testimony, and under Fed. R. Evid. 702, which codified *Daubert*. There, the Court held that the judge has a "gatekeeping responsibility"

3

to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589; *see also U.S. v. Masferrer*, 367 F. Supp. 2d 1365, 1371 (S.D. Fla. 2005) ("The 'gatekeeping' function inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702.") (citing *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2001)). "The district court's role is especially significant since the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it." *Id.*

The focus of *Daubert* is the reliability of the expert's methodology. In *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997), the Court extended the requirement of reliability to the conclusions the expert draws from the application of the methodology:

> . . . conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

In the third of the trilogy of cases regarding expert testimony, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Court held that *Daubert* and *Joiner* apply not just to scientific testimony, but also to expert testimony based on "'technical' or 'other specialized' knowledge." In all such cases, an expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

The holdings of these cases were codified in the 2000 amendments to Fed. R. Evid. 702, which now provides that expert testimony is admissible only if it satisfies the following three requirements: that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and

4

methods reliably to the facts of the case." Fed. R. Evid. 702. The Eleventh Circuit has articulated this standard as follows:

> A trial court, in determining the admissibility of expert testimony under Rule 702, must conduct "a rigorous three-part inquiry," considering whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). Thus, Plaintiff must prove that Yip's proffered testimony is both <u>relevant</u> to the issues in the case and <u>reliable</u>.

The reliability requirement demands that an "expert's conclusions must be based on sound scientific principles." *Rider*, 295 F.3d at 1197; *Masferrer*, 367 F. Supp. 2d at 1372-73 (noting that trial court "must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue"). Factors relevant to the second element—reliability of the expert's methodology—are (1) whether the method "can be (and has been tested);" (2) whether it "has been subjected to peer review and publication;" (3) "the known or potential rate of error;" and (4) the "general acceptance of the methods" within the relevant scientific community. *Daubert*, 509 U.S. at 593-94; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993); *Allison*, 184 F.3d at 1312. Since *Daubert*, the Supreme Court has identified additional factors that may inform a district court's evaluation of proffered expert testimony, including: (5) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; and (6) whether the expert is being as careful as he would be in his regular

Greenberg Traurig, P.A. | Attorneys at Law | 333 Avenue of the Americas | Suite 4400 | Miami, FL 33131-3238 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

professional work outside his paid litigation consulting. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Kumho Tire Co.*, 526 U.S. at 152.

B.     FED. R. EVID. 704

Under Fed. R. Evid. 704, witnesses may not provide opinion testimony that states a conclusion or opinion regarding "the legal implications of conduct" because "the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1991); *see also Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005). "Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury." *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992); *see also Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 512 (2d Cir. 1977) ("But experience is hardly a qualification for construing a document for its legal effect when there is a knowledgeable gentleman in a robe whose exclusive province it is to instruct the jury on the law. The danger is that the jury may think that the "expert" in the particular branch of the law knows more than the judge—surely an inadmissible inference in our system of law.").

Moreover, FRE 704 requires the exclusion of expert opinions expressed in words that "have a separate and distinct and specialized meaning in the law different from that present in the vernacular." *U.S. v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002); *see also Anderson v. Suiters*, 499 F.3d 1228, 1237-38 (10th Cir. 2007) (upholding the trial court's exclusion of expert legal testimony that merely concluded a matter was not "newsworthy" within a First Amendment context).

Yip's proffered opinions about the impact of Bank fraud alerts, Ponzi scheme "factors", and most importantly her misunderstanding and misstatements as to the financial theory

6

underlying a portion of Mr. Blake's Report and testimony demonstrate that she is providing opinions beyond her stated skills. TD Bank requests that the Court exercise its discretion exclude these portions of Yip's testimony under Fed. R. Evid. 702 and 704 because Yip's testimony is unreliable and inadmissible. Specifically, Yip lacks the requisite qualifications and experience to render opinions on financial theory, lacks an understanding as to Ponzi schemes, and has no identifiable experience regarding a bank's duty with respect to fraud alerts. Yip improperly opines on the legal standards to be applied to, and fact findings to be made about TD Bank's expert, Thomas Blake, and TD Bank's alleged conduct.

### III. ARGUMENT

#### A. YIP'S OPINIONS ARE INADMISSIBLE UNDER RULE 702.

##### 1. YIP'S TESTIMONY IS UNRELIABLE

###### a. Yip Is Not Qualified To Provide Expert Testimony Regarding Fraud Alerts, Financial Theory Or Purported "Conflicts" Of Another Expert.

Plaintiff proffers Yip as an expert putatively qualified to testify regarding banking practices, conflicts of interest, and finance theory. However, a review of her experience demonstrates that she simply does not have the qualifications required to reliably opine on those subject matters and that her proffered opinions go far beyond her experience. Yip is a certified public accountant, certified fraud examiner, certified in financial forensics and certified as an insolvency and restructuring advisor. Expert Report, p. 6. She has no experience, however, in banking, much less expertise as to a bank's duties relating to fraud alerts generated by its loss detection system, including the meaning of and clearing fraud alerts. Yip also appears to have no special knowledge or training in the areas of conflicts of interest or finance theory. Moreover, her purported opinions on conflicts of interest and finance theory are not even identified by her as within the scope of her expertise.

7

Indeed, Yip's willingness to opine on issues well beyond her competence is most dramatic in her Rebuttal Report to Thomas Blake's ("Blake") expert opinions. Blake is a Vice-President of Charles River Associates, an international financial and economic consulting firm. Neither of Yip's Reports state that she was retained to opine on financial theory or the application of the facts in this case to fundamental risk/reward analysis, nor that she is an expert on economic theory or otherwise has any relevant expertise to testify about Blake's analysis of the relationship between risk and reward in this case. In fact, her argument, suggesting that the subject investments were not risky investments, demonstrates that she does not understand fundamental finance theory and that she is opining beyond her expertise. As a result, Yip simply argues with Mr. Blake's opinions.

The juxtaposition is telling. Mr. Blake sets forth fundamental financial theory supporting his opinion that the returns on investments marketed by Rothstein to Plaintiff were so high that they were risky and speculative. Yip does nothing to discuss this theory nor apply applicable facts to rebut his testimony. Instead, in the Rebuttal Report, Yip improperly resorts to nothing more than opining that Blake has a potential conflict of interest, and she comments that Blake has demonstrated a lack of objectivity in his opinions. She, in order to further rebut Mr. Blake's analysis, Yip chooses to ignore straightforward mathematics regarding Mr. Blake's damage analysis of $270,536 both ignores the simple mathematics involved in that calculation as well as the very mathematical calculation that Yip herself provided as to the funds that were transferred through that account.

Simply stated, such argument, grounded in no expertise or acknowledged theory and analysis whatsoever, fails the *Daubert* principles. For these reasons, Yip literally lacks the

Greenberg Traurig, P.A. | Attorneys at Law | 333 Avenue of the Americas | Suite 4400 | Miami, FL 33131-3238 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw

requisite experience to testify as to these areas and thus her testimony as to fraud alerts, conflicts of interest or finance theory must be stricken.

### b. Yip's Testimony Is Based Upon Faulty Assumptions And A Misreading Of The Record.

Yip's testimony is based on faulty assumptions and a misreading of the record evidence in this matter. These faulty assumptions and misstatement of the record include, but are not limited to:

- Yip either misunderstands or misstates the well-settled financial theory applied by TD Bank's expert, Thomas Blake, that the Plaintiff's investments were risky and speculative and that "fundamental finance theory holds that high returns are correlated with commensurately high risk." Yip ignores how that same recognized theory addresses the high likelihood that Plaintiff would lose its funds and thus suffered no damages. Yip does no analysis of the alleged investments at the center of this case or the consistent and dramatically high returns that they provided, particularly with respect to the relationship to potential loss. Absent the type of grounded analysis required under *Daubert*, Yip's testimony, intended to rebut this portion of Mr. Blake's testimony, is nothing more than pure argument and wholly fails the reliability requisites which must be met to pass muster under *Daubert* and Fed. R. Evid. 702. Specifically, Yip misstates Mr. Blake's Opinion No. 1 in order to render her opinion that Mr. Blake is incorrect. Yip Rebuttal Report, p. 16. Mr. Blake testified that the returns were so high and so speculative such that they should have caused the investors not to have any real expectation of a return. Mr. Blake compared the returns to various investments in the relevant timeframe. He rejected the argument, which had been made by one of Plaintiff's witnesses, that these investments were like oil wells, that is, that once you have found a well, there is a great possibility of other wells in the vicinity. His point, misstated by Yip, is that Plaintiff's investments in structured settlements, each independent of the other, offered such high returns that the risk and potential for loss was obvious.

- Yip also either misunderstands or misstates Mr. Blake's Opinion No. 2 relating to the maximum potential damage that Plaintiff would have incurred had TD Bank followed the terms of August 17, 2009 and September 18, 2009 letters that Plaintiff alleges restrict disbursements from an RRA Account to Plaintiff. Yip Rebuttal Report, p. 17. Mr. Blake opined and testified that if the purported restriction on the RRA TD Bank account existed in the manner Plaintiffs contends that it did and operated as Plaintiff alleges that it did, then $270,536 of the money that ever was in the account was not paid to the Plaintiff. This is a simple math issue on which they both agree. It is thus a complete misstatement by Yip that Mr. Blake did not consider the so-called "lock letters" and the relationship to return on

Greenberg Traurig, P.A. | Attorneys at Law | 333 Avenue of the Americas | Suite 4400 | Miami, FL 33131-3238 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw

investment. In simple terms, Mr. Blake testified that if the two letters operated, in fact, as Plaintiff alleges they did then the only money that Rothstein did not transfer to them according to Plaintiff's own view of the letter was $270,536.

These misstatements in Yip's Rebuttal Report and proffered testimony thus fail the *Daubert* reliability test and Fed. R. Evid. 702, and should be excluded.

### B. YIP'S OPINIONS ARE INADMISSIBLE UNDER RULE 704.

#### 1. Yip's Testimony Improperly Includes Legal Conclusions And Is Purely Argumentative.

Yip also renders a number of opinions that improperly invade the province of the Court and jury, or are simply argumentative and based upon no recognized principles or theory whatsoever. Specifically, Yip attempts to render the following inadmissible legal opinions:

- Yip's purported expert opinions on the lack of "objectivity" of TD Bank's expert witness are not the proper subject of <u>expert</u> testimony. Those are legal arguments or, at best, credibility arguments upon which an expert may not testify. Yip is not an expert in objectivity nor a fact finder.[2] Yip Rebuttal Report, p. 18.

- Yip's statements regarding her view that Mr. Blake did not engage in much supervision of the Charles River Associates employees who assisted him in the preparation of the report are not proper subjects of expert testimony. Yip Rebuttal Report, p. 13.

- She opines on a separate case, with separate facts in order to criticize Mr. Blake, which is not the proper subject of expert testimony. Yip Rebuttal Report, pp. 8-9.

- Lastly, "opinions" that Mr. Blake has a potential conflict and that his testimony is inconsistent with a court opinion are classic examples of improper, inadmissible expert testimony.

These are conclusions beyond Yip's knowledge and experience, devoid of the requisite foundation for expert opinions, at best purely argumentative, and impermissibly invade the areas strictly reserved for the finder of fact. As a result, Yip's report and testimony are inadmissible pursuant to Fed. R. Evid. 704.

---

[2] Indeed, her own lack of objectivity is demonstrated by her willingness to provide opinions well beyond her basic area of knowledge as a CPA.

10

## IV. CONCLUSION

For the foregoing reasons, TD Bank respectfully requests that this Honorable Court exercise its discretion to exclude the portions of Yip's testimony and opinions identified above under Fed. R. Evid. 702 and 704 and the entirety of her late-served Supplemental Report, the exhibits with, and materials referenced in it, and any opinions Yip proffers in connection with her Supplemental Report.

### CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that counsel for the movant has conferred with Plaintiff's counsel in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Respectfully submitted this 19th day of July, 2011.

>GREENBERG TRAURIG, P.A.
>333 Avenue of the Americas
>Miami, Florida  33131
>Telephone: (305) 579-0500
>Facsimile: (305) 579-0717
>
>_____
>MARK P. SCHNAPP
>Florida Bar No. 501689
>*schnappm@gtlaw.com*
>HOLLY R. SKOLNICK
>Florida Bar No. 390860
>*skolnickh@gtlaw.com*
>
>GREENBERG TRAURIG, P.A.
>GLENN E. GOLDSTEIN
>Florida Bar No. 435260
>401 East Las Olas Boulevard, Suite 2000
>Fort Lauderdale, FL  33301
>Telephone:  (954) 765-0500
>Facsimile:  (954) 765-1477
>
>and

11

GREENBERG TRAURIG, LLP
DONNA M. EVANS
Massachusetts Bar No. 554613
(admitted *pro hac vice*)
One International Center
Boston, MA 02110
Telephone: (617) 310-6000
Facsimile: (617) 310-6001

*Attorneys for TD Bank, N.A.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of July, 2011, that the foregoing document is being served this day on all counsel of record identified on the attached Service List by U.S. Mail.

_____
MARK P. SCHNAPP

### SERVICE LIST

David Scott Mandel, Esq.
Nina Stillman Mandel, Esq.
Jason Brent Savitz, Esq.
Mandel & Mandel LLP
Alfred I. DuPont Building
169 East Flagler Street
Suite 1200
Miami, Florida 33131
Telephone: (305) 374-7771
Facsimile: (305) 374-7776
*dmandel@mandel-law.com*
*nsmandel@mandel-law.com*
*jsavitz@mandel-law.com*

Greenberg Traurig, P.A. | Attorneys at Law | 333 Avenue of the Americas | Suite 4400 | Miami, FL 33131-3238 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com