UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60786-Civ-Cooke/Bandstra

FILED by _____ D.C.

AUG 04 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

COQUINA INVESTMENTS,

        Plaintiff,

vs.

SCOTT W. ROTHSTEIN and
TD BANK, N.A.,

        Defendants.
_____/


**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT TD BANK, N.A.'S
MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT MARIA YIP**


**FILED UNDER SEAL**

## I. INTRODUCTION

Plaintiff, Coquina Investments ("Coquina"), by and through undersigned counsel, hereby opposes Defendant TD Bank N.A.'s ("TD Bank") motion to exclude testimony of Plaintiff's expert witness Maria M. Yip ("Mtn. to Exclude") (filed under seal on July 19, 2011). On May 13, 2011, Plaintiff's expert Maria Yip submitted her expert report. *See* Report (attached as Exhibit A). Ms. Yip was retained to serve as Coquina's damages expert. *See generally, id.* Ms. Yip's damages analysis included the following conclusion:

> [D]uring the period April 2009 through October 2009, Coquina invested $37,700,000 in 19 structured settlement agreements offered by Scott Rothstein and RRA. Coquina received $31,126,666.65 from RRA. The damages to Coquina have been calculated as the funds transferred to RRA less any funds received by Coquina by RRA pertaining to these structured settlements.

Report at 22. Ms. Yip calculated those damages to be $7,496,370 (including pre-judgment interest). Report at 23.

Six days later, on May 19, 2011, Ms. Yip submitted a supplemental expert report based on her review and analysis of *four one-page documents* that were inadvertently not produced to her until May 18, 2011. *See* Supplemental Report ("Supp. Report") (attached as Exhibit B). In her supplement, Ms. Yip revised her damages calculation, concluding that Coquina suffered damages of $7,529,720 (including pre-judgment interest). Supp. Report at 3-4.

On June 27, 2011, Ms. Yip submitted a rebuttal report. *See* Rebuttal Report (attached as Exhibit C). Her rebuttal report serves to rebut the report and testimony of Defendant's damages expert, Thomas M. Blake. *See* Rebuttal Report. In this report, Ms. Yip critiqued both of Blake's opinions on damages. *See id.* Ms. Yip's rebuttal report appears to be the basis of the majority of Defendant's contentions. *See* Mtn. to Exclude at 7-10.

Defendant argues that Ms. Yip's opinions are inadmissible because (1) she is not qualified to provide testimony "regarding fraud alerts, financial theory, or purported 'conflicts' of another

expert" (2) her rebuttal opinion is premised on a "misreading" of the record and on "faulty assumptions", and (3) her rebuttal opinion is "purely argumentative" and "improperly includes legal conclusions." Mtn. to Exclude at 7-10. As shown below, TD Bank's motion should be denied because Ms. Yip's expert opinion is both reliable and admissible. She is more than qualified to render an opinion in this case and Defendant's objections as to her qualifications and opinions are nothing more than challenges to the weight and credibility of the evidence, rather than to its admissibility.

## II. ARGUMENT

### A. Defendant Does Not Meaningfully Challenge Ms. Yip's Initial Expert Report.

In the argument section of its motion, TD Bank references Ms. Yip's initial report two times (providing a citation to her credentials listed in her report and claiming that she is not qualified to testify as to fraud alerts, which were discussed in her initial report). *See* Mtn. to Exclude at 7. Other than that, Defendant does not submit any argument about, or reference to, Ms. Yip's initial report. *See generally*, Mtn. to Exclude. Accordingly, aside from their complaints regarding fraud alerts, Defendant does not appear to challenge Ms. Yip's initial expert report or the opinions contained therein. *See id.* Therefore, aside from the aforementioned issue, it is unnecessary for this Court to engage in a *Daubert* analysis regarding Ms. Yip's initial expert report. *See Royale Green Condominium Assoc., Inc. v. Aspen Specialty Ins. Co.*, 2008 U.S. Dist. LEXIS 48334, *3 (S.D. Fla. June 9, 2008) (Cooke, J.) ("For the purposes of its Motion to Exclude, Plaintiff only challenges the reliability and relevance of Defendant's expert report and does not contest Defendant's expert's qualifications or competency. Thus, it is unnecessary to enter into the first prong of the *Daubert* analysis.").

Instead, Defendant focuses its complaints on the substance of Ms. Yip's rebuttal report and the alleged untimeliness of her supplemental report. *See* Mtn. to Exclude at 7-11. Moreover, aside

from a brief mention of *Daubert*, TD Bank cites no caselaw in support of any of its contentions in the four pages of its argument section. Defendant also generally fails to provide citations to the pleadings it challenges and references in its arguments.

**B.      Ms. Yip Is More Than Qualified To Render An Opinion In This Case.**

Ms. Yip was primarily retained as Plaintiff's damages expert. *See* Report at 4. She was also retained to opine on the following issues: (1) evidence of a Ponzi scheme; (2) disbursements from restricted accounts; (3) review of fraud alert information; and (4) flow of funds from RRA and Rothstein accounts maintained at TD Bank. *Id.* Tellingly, Defendant does not argue that Ms. Yip is not qualified to opine on the issue of damages, nor does Defendant claim that Ms. Yip lacks the requisite qualifications to discuss Ponzi schemes, disbursements from restricted accounts, or the flow of RRA funds. *See generally*, Mtn. to Exclude at 7-10.

Contrary to Defendant's assertions, Ms. Yip is qualified to provide her opinion in this matter. "A trial court has considerable discretion in determining whether an individual may testify as an expert." *Leblanc v. Coastal Mechanical Servs., LLC*, 2005 U.S. Dist. LEXIS 45889, *3-4 (S.D. Fla. Sept. 6, 2005) (citation omitted). Generally speaking, an expert witness is qualified if she has "'sufficient skill or knowledge related to the pertinent field or calling that [her] inference will probably aid the trier in the search for truth.'" *Id.* (citation omitted). Additionally, an expert is properly qualified "by virtue of [her] extensive education, training and experience." *Quiet Tech DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1343 (11th Cir. 2003).

Ms. Yip's credentials speak for themselves. She has over seventeen years of experience and training. Report at 6. She is a Certified Public Accountant, a certified fraud examiner, a certified insolvency and restructuring advisor, and is certified in financial forensics by the AICPA (American Institute of CPAs). Report at 6; Exhibit 1 to Report. Ms. Yip is a co-founder of YIP and Levi, LLC, a forensic accounting and financial investigations firm specializing in forensic accounting, financial

investigations, bankruptcy, business valuations, and tax controversies. Report at 6; Exhibit 1 to Report at 1. She has also worked for Price Waterhouse, Arthur Andersen, and as a partner at Grant Thornton, where she led the forensic accounting practice for Florida. *Id.*

Over the last four years, Ms. Yip has testified as an expert witness on the issue of damages in five different cases, two of which were docketed in this district. *See* Report at 7-8. Her experience in forensic accounting and financial investigation is vast and encompasses both domestic and international work. For example, she was engaged to provide forensic accounting and litigation support to counsel with the State of Florida Attorney General's Office and aided in calculating the damages suffered by the victims of a fraudulent investment scheme. *See* Exhibit 1 to Report at 2. Ms. Yip has extensive experience in forensic accounting having been engaged to:

(1) provide forensic accounting and litigation support services to counsel representing the Central Bank of Ecuador in litigation with the owners of a failed Ecuadorian bank. Her services included reviewing and analyzing transactions and documents which reflected the flow of funds from the bank to hundreds of other entities.

(2) provide forensic accounting services for the Venezuelan equivalent of the FDIC, in an investigation to recover property unlawfully diverted from banks into the agency's portfolio. Her services included analyzing volumes of transactions between financial institutions and numerous companies, including fraudulent transfers.

(3) provide forensic accounting services for the U.S. Bankruptcy Court to review and analyze various business issues associated with the sale of Venezuela's Banco Latino International. Her services included an in-depth review of various insider transactions.

(4) provide forensic accounting and litigation support to counsel who represented a large financial institution in a lender liability counter-claim action to a bank action against a loan guarantor. Her services included analyzing fraudulently diverted monies and collateralized assets by the loan guarantors to their own accounts, which resulted in a multi-million dollar loan default.

(5) provide forensic accounting and investigative services to an international wire transfer service business, which required a reconciliation of its wire transfers.

*See* Exhibit 1 to Report at 3-4.

Additionally, Ms. Yip has extensive experience tracing investor funds and providing an accounting of such funds, having been engaged in eleven different receivership/SEC matters. *See* Exhibit 1 to Report at 4-5. In one of those cases, she served as a pre-litigation consultant to the Securities and Exchange Commission in the investigation of a potential Ponzi scheme. *See id.* She has other experience consulting in Ponzi scheme cases and is currently consulting in a such a matter. *See* Deposition ("Depo.") (attached as Exhibit D) at 12:9-25. Ms. Yip also testified that she has consulted in at least five other cases involving Ponzi schemes. *See* Depo. at 14:12-25; 15:1-25; 16:1-25. Most recently, on July 25, 2011, the United States Trustee appointed Ms. Yip to the prestigious and exclusive group of Chapter 7 Bankruptcy Trustees. *See* Exhibit E (July 25, 2011 letter from Office of the U.S. Trustee).

Accordingly, Ms. Yip is properly qualified to render an opinion on damages, and the related issues for which she was retained, based on her extensive training and experience. *See Corporate Fin., Inc. v. Principal Life Ins. Co.*, 2006 U.S. Dist. LEXIS 84542, *4 (S.D. Fla. Nov. 20, 2006) (Ungaro-Benages, J.) (underwriting and damages expert properly qualified based on professional qualifications, including having testified as expert witness on "variety of business-related issues, including damages."); *Quiet Tech*, 326 F.3d at 1343. Given Ms. Yip's technical skills and knowledge, her opinions will undoubtedly aid the trier of fact. *See Leblanc*, 2005 U.S. Dist. LEXIS 45889 at *3-4.

### 1. Defendant's Vague And Conclusory Arguments About Ms. Yip's Qualifications Are Insufficient And Go To Credibility And Weight, Not Admissibility.

Defendant's motion is a model of vague, conclusory, and self-serving arguments. Defendant claims that Ms. Yip is not qualified to render an opinion as to "banking practices, conflicts of interest, and finance theory." Mtn. to Exclude at 7-9. Defendant complains that Ms. Yip lacks experience in "finance" or "economic" theory. Mtn. to Exclude at 8. At base, Defendant is

essentially arguing that Ms. Yip is not qualified to opine as to *another expert's conclusions* – those of Mr. Blake.

As discussed in Plaintiff's Motion to Exclude the Expert Report and Testimony of Thomas Blake, Blake utterly fails to explain, discuss, define, or support the "finance theory" he proposed as the basis for his opinions. *See* Plt. Mtn. to Exclude Blake at 6-8 (filed under seal on July 19, 2011). Notably, Blake was not hired to opine on any type of finance or economic theory. *See* Blake's Report at 2 (attached as Exhibit F). As such, Ms. Yip is not responsible for filling in the blanks in Blake's opinion.

That being said, at her rebuttal deposition, Ms. Yip testified that although she does not hold herself out as an expert in finance theory, she is qualified to rebut Blake's opinion on the basis of that theory based on her training in "finance that one studies in the area of business and accounting, the general understanding of financial theories." *See* Rebuttal Depo. I at 10:16-17; 10:24-25; 11:1-11 (attached as Exhibit G). She went on to explain her understanding of finance theory and the several criticisms of the assumptions that form the core of the theory. *See* Rebuttal Depo. I at 13:20-25; 14:1-8; 22:12-20. Ms. Yip explained her stance on the many problems underlying Blake's opinion in relation to finance theory, thus further demonstrating that she is more than qualified to opine on the matter. *See, e.g.*, Rebuttal Depo. II at 103:9-17; 103:23-25; 104:1-15; 161:20-25; 162:1-6 (attached as Exhibit H).

Ms. Yip further testified that when she reviewed Blake's report, she "specifically looked for references or authority, so to speak, as to his use of the term 'modern finance theory'" and "there was no reference to authorities on those issues." Rebuttal Depo. I at 21:13-20. Moreover, when TD Bank's counsel falsely claimed that Blake mentioned ten "financial treatises" at his deposition (he did not), Ms. Yip countered that none of the books mentioned by counsel were included "as part of

the documents or information that [Blake] relied upon [in his report]" or in the footnotes to his report.[1] *See* Rebuttal Depo. I at 13:6-9; 15:21-25; 16:1-9.

Next, Defendant's complaints about Ms. Yip's alleged lack of experience as to "conflicts of interests" are never fully explained. *See* Mtn. to Exclude at 7-8. In her report, Ms. Yip observed that Blake may have a potential conflict of interest because Ernst & Young is the current auditor for TD Bank worldwide and Blake was a partner with Ernst & Young for over twenty years (and testified that he continues to receive a pension from the firm). Rebuttal Report at 8. In any event, Ms. Yip is qualified to testify as to Blake's potential conflict, based on her accountancy experience. *See* Rebuttal Report at 8. She stated "[t]here are standards of independence and objectivity that accountants need to adhere to in doing their work and when they serve as expert witnesses. So that's -- conflicts of interests are applied in an accounting setting as well." Rebuttal Depo. I at 53:17-21.

Defendant's claim as to Ms. Yip's purported lack of experience regarding "fraud alerts" is similarly unexplained, unsupported, and unanalyzed. *See* Mtn. to Exclude at 7-8. TD Bank takes issue with Ms. Yip's purported lack of experience in "banking" and "a bank's duties relating to fraud alerts," but does not elaborate any further. *See* Mtn. to Exclude at 7. In her initial report, Ms. Yip included a section regarding "TD Bank's Fraud Alert Failures," based on her review of the conclusions made by Mr. Carlo DiToro, Senior Vice President in charge of the Fraud Management Division of TD Bank, in his declaration regarding fraud alerts related to the accounts at issue, as well as related documents. *See* Report at 15-21. Her analysis included a review of the number of transactions made to and from RRA accounts and the dollar amounts involved. *See* Report at 15-21. She also carefully analyzed the "number of transactions and closing balances on a monthly basis for

---

[1] Indeed, undersigned counsel objected to the introduction of the books during Ms. Yip's rebuttal deposition and moved to strike them as an exhibit based on the fact that Blake neither mentioned the books in his expert report or during his deposition, despite defense counsel's inaccurate and misleading claim to the contrary. *See, e.g.,* Rebuttal Depo. I at 20:13-24.

each of the accounts" and "noted that there were [twelve] accounts that had significant dollar value transactions although the account maintained a balance significantly lower than the volume of transfers." Report at 17. Though she testified that she is not a banking expert or an expert in fraud systems in banks, Ms. Yip is certainly qualified to review and analyze bank account statements and the transactions flowing to and from bank accounts based on her extensive experience in forensic accounting. *See supra* at II.B.; *see also* Depo. at 62:16-21.

Finally, Defendant also vaguely argues that Ms. Yip somehow "ignore[d]" the mathematics of Blake's damages calculation or $270,536, but does not offer more than this conclusory statement. *See* Mtn. to Exclude at 8. Moreover, Defendant makes absolutely no attempt at supporting its arguments with either citations to case law or to the pleadings. *See* Mtn. to Exclude at 7-9. If any document is flawed or lacking here, it is Defendant's motion to exclude.

Regardless, Defendant's minimally explained critiques of Ms. Yip's credentials are, if anything, improper challenges to credibility and weight, not admissibility. "The qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility.'" *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC Pandora Jewelers,* 2011 U.S. Dist. LEXIS 62969, *22 (S.D. Fla. June 7, 2011) (Cooke, J.) (quoting *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty, Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009)). A court should focus on whether "the expert is more competent to draw the inference than the lay jurors and judge," rather than focusing on whether the witness is more qualified than other experts in the field. *Leblanc*, 2005 U.S. Dist. LEXIS 45889 at *7. A party's contention regarding an expert's limited experience in a related area goes to the weight, rather than the admissibility of the evidence and such issues may be addressed during cross-examination. *See Richter v. Home Depot, U.S.A., Inc.*, 2009 U.S. Dist. LEXIS 88233, *7 (M.D. Fla. Feb. 20, 2009).

Additionally, any perceived lack of experience or training does not render Ms. Yip's testimony inadmissible because she is thoroughly qualified, based on experience and training, in the general discipline of forensic accounting. *See Leblanc*, 2005 U.S. Dist. LEXIS 45889 at *7 (denying motion to exclude on basis of expert's qualifications because, although expert was qualified in general discipline, and did not have specialized knowledge and training, his testimony would help the jury and "[any] lack of experience or knowledge" did not "render his testimony altogether inadmissible"). Accordingly, TD Bank's arguments should be rejected and its motion should be denied. *See id.*

## B.   Ms. Yip's Rebuttal Opinions Are Reliable And Admissible.

Ms. Yip's rebuttal report is perfectly sound and admissible. "A rebuttal expert can testify as to the flaws that she believed are inherent in another expert's report that implicitly assumes or ignores certain facts." *Pandora Jewelers*, 2011 U.S. Dist. LEXIS 62969 at *17 (citing *KW Plastics v. U.S. Can Co.*, 199 F.R.D. 687, 692 (M.D. Ala. 2000)). Moreover, "a rebuttal expert may 'testify that, while [the expert's] report implicitly assumes (or erroneously fails to consider) facts X, Y, and Z, [the expert's] analysis is seriously flawed if the jury does not accept X, Y, and Z as true. This is a well-accepted way to criticize damages estimates.'" *Pandora Jewelers,* 2011 U.S. Dist. LEXIS 62969, *17 (quoting *KW Plastics*, 199 F.R.D. at 692) (alterations in original)). Further, a qualified expert's opinion is admissible only if "'the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture and speculation.'" *Pandora Jewelers*, 2011 U.S. Dist. LEXIS 62969 at *22 (quoting *Vision I Homeowners Ass'n*, 674 F.Supp. 2d at 1325).

This is precisely what Ms. Yip did, and achieved, in her rebuttal report. Ms. Yip pointed out the facts that Blake ignored in his first and second opinions and the flaws in those opinions. *See* Rebuttal Report at 10-12, 14-17. In *Pandora Jewelers*, 2011 U.S. Dist. LEXIS 62969 at *19, this Court noted that the rebuttal expert provided factors that the opposing expert should have considered

in his report, based on her expertise and concluded that such "factors that will be helpful for the jury to weigh the evidence presented at trial." Similarly, Ms. Yip's testimony about the inherent flaws in Blake's damages opinions will aid the jury.

Once again, Defendant resorts to submitting conclusory and vague arguments with no citations to case law and few citations to any referenced pleadings. *See* Mtn. to Exclude at 9. TD Bank criticizes Ms. Yip's rebuttal opinion and analyses of Blake's first and second opinions, claiming that she made "faulty assumptions" and "misread" the record evidence, but nothing in Ms. Yip's rebuttal report, or subsequent testimony, supports these arguments. Mtn. to Exclude at 9.

First, Defendant reiterates its self-serving claims regarding Blake's financial theory, stating that Ms. Yip either "misunderstood" or "misstated" the theory.[2] Mtn. to Exclude at 9. As argued above, Blake never explained the theory in his report, to the detriment of his, not Ms. Yip's, opinion. In any event, Ms. Yip explained her understanding of the theory and the many criticisms of the assumptions that form the core of the theory. *See* Rebuttal Depo. I at 13:20-25; 14:1-8; 22:12-20. She further explained her stance on the problems underlying Blake's opinion in relation to finance theory, stating:

> Mr. Blake's opinion is developed -- was developed in a vacuum with disregard for the reality of what was taking place. Very much one of the criticisms of the modern finance theory that he relies on is that all investors react rationally, that all markets are efficient, that people's psychology doesn't play a role. Those are all things that are just, on a daily basis, proven to not be the case.

Rebuttal Depo. II at 103:9-17. When asked to explain her reference to "people's psychology," Ms. Yip added,

---

[2] Additionally, Defendant attempts to explain Blake's testimony and opinion, without providing any citations to the purported evidence. *See* Mtn. to Exclude at 9. Statements and arguments of counsel, however, are not evidence. *See Nicholas v. Nationwide Credit, Inc.*, 2010 U.S. Dist. LEXIS 10442, *12 (Feb. 8, 2010) (Cooke, J.) (defendant made a legal argument, but presented no factual evidence to support it) (citing *U.S. v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990)).

> That people's psychology that someone could decide that something is a great idea, the dot-com business, and people invest monies in those are not always the most rational type of investments, yet they do that. And there are busts and there are booms in markets. And the modern finance theory is really in a vacuum. And Mr. Blake ignores the fact that these -- and I discuss it in my rebuttal with regards to the information and the data that he was relying on, ignores the letters that Coquina received from the bank, it ignores the fact that 45 payments were made on a timely basis, it ignores the reality of the facts in the case. And his approach is to apply -- with what appears to be 20/20 hindsight, to apply a theory that presumes and assumes that all of -- that the investors are going to behave in a certain way. He applies that theory and then refers to this as speculative.

Rebuttal Depo. II at 103:23-25; 104:1-15. Additionally, Ms. Yip elaborated on the problems with Blake's theory:

> **If you apply Mr. Blake's modern finance theory, then Coquina would have put $37.7 million never expecting to get anything back. Coquina, in fact, received $31.1 million back. If that's not an example of the lack of applicability of this modern finance theory, I don't know what is. Because Mr. Blake's theory, and as he describes it in his deposition, is that they put the money in and never expected to get anything. So they're certainly owed $6.7 million, but modern finance theory applied to this would have been Coquina losing $37 million that it put in.**

Rebuttal Depo. II at 161:20-25; 162:1-6 (emphasis added). Ms. Yip's testimony conclusively demonstrates that she not only understood Blake's poorly-explained finance theory, but disagreed with it and explained the reasons why.

Next, Defendant contends that Ms. Yip either "misunderstood" or "misstated" Blake's second opinion.[3] Mtn. to Exclude at 9. Ms. Yip thoroughly rebutted Blake's second opinion, based on her assessment of the evidence and his testimony, noting that he overlooked key evidence in reaching his conclusions, such as Lock Letters dated August 17, 2009 and September 18, 2009. *See* Rebuttal Report at 11-12, 17. She further expounded on her rebuttal opinion during her deposition. For example, Ms. Yip testified that although she "agree[d] with Mr. Blake's note of the $240,000 being improperly distributed," she disagreed with his opinion because:

---

[3] Once again, Defendant relies on statements and arguments of counsel, rather than citing record evidence, in support of its claims. *See Nicholas*, 2010 U.S. Dist. LEXIS 10442 at *12.

> [T]he relevance of this particular -- of this particular document [the Coquina Lock Letter]. I disagree with Mr. Blake completely ignoring the fact that this letter is -- occurs on August 17, telephone conversation occurs on August 17, $15 million are invested by Coquina on August 17. That's where I disagree with Mr. Blake. He ignores the relevance of the timing of this letter and the impact that this letter would have had on Coquina.

Rebuttal Depo. II at 179:2-3; 179:9-17. She further explained the problem with his opinion, stating:

> Mr. Blake ignores in his calculation as to the damages that this letter was relied upon by Coquina in making what was the largest investment, larger than anything up until that point, cumulatively. And I include in my report that that $15 million investment was greater than the prior 15 investments combined, up until that date. And I believe, and this is why I disagree as to the damage number with Mr. Blake, that the damages in this case are $270,536. That's where we disagree.

Rebuttal Depo. II at 180:14-23.

If anything, Defendant's superficial and misleading arguments are nothing more than improper challenges to the weight, not the admissibility, of Ms. Yip's opinion. "Whether a logical basis for admitting the testimony has been established is within the court's discretion, and the weaknesses in the underpinning of the expert's opinion go to its weight rather than admissibility.'" *Pandora Jewelers*, 2011 U.S. Dist. LEXIS 62969 at *23 (quoting *Vision I Homeowners Ass'n*, 674 F.Supp. 2d at 1325); *see also Competitor Liaison Bureau, Inc. v. Cessna Aircraft Co.*, 2011 U.S. Dist. LEXIS 33121, *27-28 (M.D. Fla. Mar. 4, 2011) (same), *adopted by* 2011 U.S. Dist. LEXIS 33071 (M.D. Fla. Mar. 28, 2011). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Pandora Jewelers*, 2011 U.S. Dist. LEXIS 62969 at *23 (quoting *Daubert*, 509 U.S. at 596); *see also City of St. Petersburg v. Total Containment, Inc.*, 2009 U.S. Dist. LEXIS 101367, *13 (S.D. Fla. Mar. 19, 2009) (same); *Atlanta Gas Light Co. v. UGI Utilities, Inc.*, 2004 U.S. Dist. LEXIS 30691, *8 (M.D. Fla., Nov. 24, 2004); *Moecker v. Honeywell Int'l, Inc.*, 2001 U.S. Dist. LEXIS 12075, *10 (M.D. Fla. Mar. 7, 2001), *adopted by* 144 F.Supp.2d 1291 (M.D. Fla. 2001) (same).

Accordingly, Defendant's criticisms about the purported weaknesses in Ms. Yip's opinion should be rejected as improper because "[t]he certainty and correctness of an expert's opinion is tested through cross-examination and presentation of contrary evidence and not by a *Daubert* challenge." *Moecker*, 2001 U.S. Dist. LEXIS 12075 at *11; *see also Royale Green Condominium Assoc.*, 2008 U.S. Dist. LEXIS 48334 at *5 (objections to potential shortcomings in expert's opinion go to the weight of the evidence, rather than its admissibility); *Pandora Jewelers*, 2011 U.S. Dist. LEXIS 62969 at *23 (rejecting defendants' argument that expert's opinion was not reliable because arguments went to weight of evidence, not admissibility); *City of St. Petersburg*, 2009 U.S. Dist. LEXIS 101367 at *20, 29, 33, 37, 41 (denying various motions to exclude, because, among other things, flaws and/or inaccuracies in experts' opinions "not sufficient to exclude the expert's analysis altogether" and are more appropriately "tested through cross-examination and counter-testimony at trial."); *Atlanta Gas Light Co.*, 2004 U.S. Dist. LEXIS 30691 at *11-12 (denying motion to exclude on various bases, including, "any weaknesses in the underpinning of [the expert's] must go to its weight rather than to its admissibility.") (citing *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988)); *Richter*, 2009 U.S. Dist. LEXIS 88233 at *13 (same).

### C. Ms. Yip's Rebuttal Opinions Are Neither "Improper Legal Conclusions" Nor "Purely Argumentative."

In pertinent part, Fed. R. Evid. 704(a) provides: "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, notwithstanding the fact that an expert may testify as to her opinion on an ultimate issue of fact, an expert may not "'tell the jury what result to reach,'" or "'testify as to the legal implications of conduct; the court must be the jury's only source of law.'" *Pandora Jewelers*, 2011 U.S. Dist. LEXIS 62969 at *20 (quoting *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)). "To be admissible under Rule 704, an expert's opinion

on an ultimate issue must be helpful to the jury and also must be based on adequately explored legal criteria." *Hanson v. Waller*, 888 F.2d 806, 812 (11th Cir. 1989) (citing *Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467, 1474 n.7 (11th Cir. 1984)).

Defendant contends, without citing any law whatsoever, that some of Ms. Yip's opinions are either "inadmissible legal opinions" or are "simply argumentative." *See* Mtn. to Exclude at 10. In summary fashion, Defendant argues that Ms. Yip's opinion on Blake's apparent lack of objectivity in his deposition amounts to a "legal argument." Mtn. to Exclude at 10 (citing Rebuttal Report at 18). Yet, Ms. Yip testified that she "did not apply any legal standard" to measure Blake's objectivity. Rebuttal Depo. II at 195:24-25; 196:1.

Defendant also submits that Ms. Yip's statements about Blake's lack of supervision in the preparation of his expert report are "not the proper subjects of expert testimony." Mtn. to Exclude at 10 (citing Rebuttal Report at 13). And yet, Defendant does not elaborate any further or provide any reasoning, or law, to support this conclusion. Ms. Yip explained the basis for her observations:

> What -- and perhaps this will clarify what I was saying, as a member of the Charles River team, which Mr. Blake is, he should have, in my opinion, been aware of another expert in this case relying on the work performed by his team. And his not knowing, not having but for the day before having heard Mr. Garces' name, is an indicator to me that Mr. Blake is not familiar with what is happening on his team.

Rebuttal Depo. II at 145:3-11.

Defendant further contends that Ms. Yip's opinion regarding Blake's potential conflict of interest is a "classic example" of inadmissible expert testimony, yet provides no "classic examples" with which to support its argument. As noted earlier, Ms. Yip's findings and observations regarding Blake's potential conflict of interest is based on the standards in the field of forensic accounting. Rebuttal Depo. I at 53:17-21. She also clarified that she did not apply any legal standard to this portion of her rebuttal report. Rebuttal Depo. I at 53:13-14.

Finally, Defendant states that Ms. Yip improperly "opines on a separate case" involving Blake. *See* Mtn. to Exclude at 10 (citing Rebuttal Report at 8-9). Ms. Yip did not submit a legal opinion regarding Blake's expert testimony in a separate lawsuit. Instead, she merely pointed out the fact that at least one judge had rejected his opinion as unfounded and unreliable. *See* Rebuttal Report at 8-9 (citing *Yankee Gas Servs. Co. v. UGI Utilities, Inc.*, 616 F. Supp. 2d 228, 250-252 (D. Conn. 2009)).

In any event, nothing about these portions of Ms. Yip's rebuttal opinion are intended to "tell the jury what result to reach,'" or "testify as to the legal implications of conduct." *See Pandora Jewelers*, 2011 U.S. Dist. LEXIS 62969 at *20. As such, Ms. Yip's observations as to Blake's objectivity, lack of supervision, and potential conflict are proper. Defendant's motion to exclude should thus be denied.

**D.     Ms. Yip's Supplemental Report Was Timely.**

Fed. R. Civ. P. 26(e) provides that an expert must supplement her report "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." *See also Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.*, 2008 U.S. Dist. LEXIS 47343, *6 (M.D. Fla. June 18, 2008). In turn, Fed. R. Civ. P. 26(a)(3)(B) provides, "[u]nless the court orders otherwise, [pretrial] disclosures must be made at least 30 days before trial." *See also Bray & Gillespie*, 2008 U.S. Dist. LEXIS 47343 at *6-7.

In cursory fashion, Defendant states that Ms. Yip's supplemental report was untimely and requests that it be stricken. Mtn. to Exclude at 3, 11. This Court, however, did not set a specific deadline for submitting supplemental expert reports. *See generally* D.E. 42 (Order Setting Pretrial Deadlines). This Court ordered that expert reports were due by May 13, 2011 and that all expert discovery be completed by July 12, 2011. *See id.* at 2. It stands to reason that the deadline for expert reports did not encompass supplemental expert reports, as supplemental submissions logically

follow initial submissions. As such, Ms. Yip's supplemental report was timely submitted on May 19, 2011, well before the final deadline for all expert discovery and only six days after the deadline for expert reports. Additionally, Ms. Yip's supplemental report was timely under the Fed. R. Civ. P. 26(a)(3)(B) and (e) because it was filed well before the October 2011 trial date.

Should this Court determine, however, that the supplemental report was untimely, its late submission was substantially justified and harmless. Trial courts have the discretion to exclude untimely expert reports, unless the untimely report was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1); *see also Cowley v. Sunset Yacht Charters, Inc.*, 2011 U.S. Dist. LEXIS 78380, *5-6 (S.D. Fla. July 19, 2011) (Cohn, J.). "'Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there is [a] genuine dispute concerning compliance.'" *Competitor Liaison*, 2011 U.S. Dist. LEXIS 33121 at *19 (citation omitted).

Ms. Yip's submission of her supplemental report six days after the deadline for expert reports passed was substantially justified. As stated in her report, her supplement was based on four one-page documents she received from Plaintiff's counsel on May 18, 2011, five days after the deadline stated in the pretrial order. Supp. Report at 3. Ms. Yip revised her damages calculation in upwards of $33,000 (including interest) based on information contained in those four pages. *Compare* Supp. Report at 3 *with* Report at 23. She submitted her supplemental report the very next day, on May 19, 2011. Her submission was substantially justified because the four pages were inadvertently omitted and she was not aware of the additional information until Plaintiff's counsel submitted it to her.

Moreover, Ms. Yip's alleged untimely submission was harmless. "'Failure to timely make the required witness disclosures is harmless when the party entitled to the disclosure suffers no

prejudice.'" *Competitor Liaison*, 2011 U.S. Dist. LEXIS 33121 at *20 (citation omitted). Defendant first deposed Ms. Yip on May 23, 2011, a few days after her supplement was filed. TD Bank was thus able to depose Ms. Yip about both her initial and supplemental reports. Accordingly, Defendant has not been prejudiced in any way whatsoever. *See Cowley*, 2011 U.S. Dist. LEXIS 78380 at *6 (Defendant was not prejudiced by supplemental report filed one month after deadline for initial expert reports because defense counsel was able to depose expert regarding his initial and supplemental opinions). As such, Defendant's incorporated motion to strike Ms. Yip's supplemental report and its exhibits should be denied. *See Competitor Liaison*, 2011 U.S. Dist. LEXIS 33121 at *22 (denying motion to strike untimely amended supplemental report that was not substantially justified, because, among other things, expert was deposed about the opinions contained therein).

### III. CONCLUSION

For the reasons set forth above, Coquina respectfully requests that this Court deny TD Bank's motion to exclude the testimony of Maria Yip and incorporated motion to strike Maria Yip's supplemental expert report, and for such further relief this Court deems just and proper. Additionally, Plaintiff submits that it has no objection to Defendant's request for a hearing on its motion to exclude.

>
> Respectfully submitted,
>
> MANDEL & MANDEL LLP
> 169 East Flagler Street, Suite 1200
> Miami, Florida 33131
> Telephone: 305.374.7771
> Facsimile: 305.374.7776
> dmandel@mandel-law.com
>
> By: _____
> DAVID S. MANDEL
>  Florida Bar No. 38040
> NINA STILLMAN MANDEL
>  Florida Bar No. 843016
> JASON B. SAVITZ
>  Florida Bar. No. 36444
>
> *Attorneys for Coquina Investments*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 4, 2011, a true and correct copy of the foregoing was hand-delivered to Mark Schnapp, Greenberg Traurig LLP, 333 SE 2nd Ave., Suite 4400, Miami, FL 33131.

_____
DAVID S. MANDEL