Sealed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60786-Civ-Cooke/Bandstra

COQUINA INVESTMENTS,

      Plaintiff,

vs.

SCOTT W. ROTHSTEIN and
TD BANK, N.A.,

      Defendants.

_____/

FILED by _____ D.C.

AUG 1 2 2011

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION TO
EXCLUDE THE EXPERT REPORT AND TESTIMONY OF THOMAS M. BLAKE**

**FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60786-Civ-Cooke/Bandstra

COQUINA INVESTMENTS,

    Plaintiff,

vs.

SCOTT W. ROTHSTEIN and
TD BANK, N.A.,

    Defendants.
_____/

## PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF THOMAS M. BLAKE

Plaintiff, Coquina Investments ("Coquina"), by and through undersigned counsel, hereby files its reply in further support of its Motion to Exclude the Expert Report and Testimony of the Bank's Identified Expert, Thomas M. Blake ("Def. Opp.") (filed under seal on August 2, 2011). For the reasons set forth below, Plaintiff's Motion to Exclude Thomas Blake should be granted.

### ARGUMENT

**A.    Blake's First Opinion Is Inadmissible Because It Is Unreliable, Will Not Help The Jury, And Is Not Based On A Proper Measure Of Damages.**

    **1.    Blake's opinion is not a proper measure of damages in this case because Plaintiff seeks out-of-pocket damages.**

Defendant finally sheds some light on the rationale behind Blake's first damages opinion, stating that Blake "does not subscribe to Plaintiff's theory that damages should be measured by Plaintiff's out-of-pocket losses . . ." Def. Opp. at 13. And yet, under Florida law, "the purpose of compensatory damages in a tort case is to restore the injured party to the position it would have been had the wrong not been committed." *Laney v. Am. Equity Inv. Life Ins. Co.*, 243 F.Supp.2d 1347, 1354 (M.D. Fla. 2003) (citation omitted). In order to accomplish this purpose in a fraud case,

Florida law allows one of two measures of damages: the "'out-of-pocket rule'" or the "'benefit-of-the-bargain-rule.'" *Id.* (citations omitted). "Florida follows the 'flexibility theory' in fraud actions, which permits a trial court to instruct the jury under either the out-of-pocket rule or the benefit of the bargain rule, whichever will more fully compensate the defrauded party." *Gregg v. U.S. Industries, Inc.*, 887 F.2d 1462, 1466 (11th Cir. 1989); *see also Laney*, 243 F.Supp.2d at 1354. "The 'out-of-pocket-rule' allows for recovery of amounts that the plaintiff actually lost."[1] *Laney*, 243 F.Supp.2d at 1354 (citations omitted); *see also Allstate Ins. Co. v. Palterovich*, 653 F.Supp.2d 1306, 1326 (S.D. Fla. 2009) (quoting (in parenthetical), *Laney*, 243 F.Supp.2d at 1354)).

This is precisely what Plaintiff seeks to recover -- the out-of-pocket damages it lost as a result of the fraudulent investment scheme. Coquina invested $37.7 million, received $31.1 million, and merely seeks return of the difference. *See* Complaint (D.E. 1) at 12-13, 15; Expert Report of Maria Yip at 22-23, 37 (attached as exhibit to Plaintiff's Opposition to Motion to Exclude Maria Yip filed under seal on August 5, 2011). As such, Plaintiff's request for damages is a simple matter, not a complicated one as Defendant suggests. *See* Def. Opp. at 10 ("this is not a simple fraud case . . ." and "this case deals with *investments* that have inherent risk that correlates to the anticipated return.") (emphasis in original). But instead, Defendant -- and its expert -- seek to obscure this issue by valuing the investments themselves, comparing those investments to other ones, analyzing the economy at the time the investments were made, and overall, steering the analysis away from a very basic matter – the amount that Plaintiff actually lost. *See* Def. Opp. at 5-14; Blake Report at 3-4, 14-20 (attached as exhibit to Motion to Exclude).

Investments in Ponzi schemes are, by nature, bad investments – it does not require expertise or analysis to determine that. Yet, this does not mean that investors in Ponzi schemes do not suffer

---

[1] "The benefit-of-the-bargain-rule" is "utilized when the out-of-pocket-rule does not fully compensate the plaintiff." *Laney*, 243 F.Supp.2d at 1354 (citation omitted).

damages. Defendant, however, would like to convince a jury to come to that unsupportable conclusion. In any event, Blake was hired to calculate damages (*see* Blake Report at 2), not assess the nature of the investments or the risk involved. As argued in Plaintiff's Motion to Exclude, Blake has simply failed to calculate actual damages in a reasonable or reliable way. *See* Motion to Exclude at 5-16.

        2.     **"Finance theory" is irrelevant to the issue of damages.**

Moreover, Blake focused on "finance theory" in an attempt to explain his opinion which, on its face, has nothing to do with measuring damages. His proposed "finance theory" (whether well-explained or not) is relevant to *the expectation of profit or return on the investments*, not on actual damages suffered. *See generally* Def. Opp. at 5-14. On the other hand, Blake understood the meaning of "compensatory damages," noting that they can encompass out-of-pocket damages. *See* Blake Depo. at 204:9-17 (attached as exhibit to Motion to Exclude). He also testified to the correct method of measuring out-of-pocket damages. *See* Blake Depo. at 206:8-16. And, while he acknowledged that the difference between what Plaintiff paid and what it received equaled $6.6 million, he labeled that amount as "unreturned investment." *See* Blake Report at 12; Blake Depo. at 209:4-5 ("$6.6 million on return."). Despite this, Blake testified, "the opinion of my report is based upon the Coquina investments and what should be the expected return on such highly speculative and risky investments." Blake Depo. at 225:2-5. He further testified,

> [i]t's not a question of it being a reasonable expectation or a thoughtful [sic], it's that the numbers are so absurd that no person could **expect to get a return of that size and have it be a safe investment.** That level of return is so speculative that there's no base [sic] to believe that you'll get anything back, principal or any profit.

Blake Depo. at 211:4-10; *see also,* Blake Depo. at 212:12-15 ("What I know is that these expected returns were so far out of whack, that they were totally unreasonable and not credible.").

Blake's opinion is essentially that Coquina "had no expectation of getting any money back," because of the "highly speculative high return investments." Blake Depo. at 209:20-24. But, that

issue is not relevant to damages, nor is it the proper way of measuring damages in a fraud case under Florida law. *See Laney*, 243 F.Supp.2d at 1354; *Allstate Ins.*, 653 F.Supp.2d at 1326. Coquina's expectation of investment returns is not the issue, nor is Coquina seeking damages for what it should have received had the investments been sound. What's more, if Blake cannot articulate what damages Plaintiff suffered in this case because that would be "speculative and unreliable," how can he simultaneously opine that there are *zero* damages? His opinion, therefore, simply does not make sense. Nothing in Defendant's opposition explains this gap in logic.

Defendant merely reiterates Blake's opinion that because the investments were so "risky," "there was a high likelihood that it would lose all of its money." Def. Opp. at 10. But, because Coquina is not seeking "benefit of the bargain" damages, but is simply seeking its "out of pocket" losses, Blake's opinion is irrelevant to the jury's determination. His opinion would only confuse the jury, as it deviates far from the true measure of damages in a fraud case. *See U.S. v. Frazier*, 387 F.3d 1244, 1266 (11th Cir. 2004) (trial courts may exclude an "imprecise and unspecific" opinions because it may confuse the jury and "might well mislead it."); *Southern Grouts & Mortars, Inc., v. 3M Co.*, 2008 U.S. Dist. LEXIS 70222, *57 (S.D. Fla. Sept. 16, 2008) (Cooke, J.) (finding that expert testimony inadmissible because expert's conclusions in report were "utterly unexplained and unsupported" and there was "'simply too great an analytical gap between the data and the opinion proffered.'") (citation omitted).

### 3. Submitting photocopies of book covers hardly equates to properly supporting an opinion with authority.

Next, while Defendant insists that Blake "cited" a "near compendium" of authority in support of his "finance theory," the record is clear that he did nothing of the sort. *See* Def. Opp. at 7. At his deposition, Blake submitted a composite exhibit consisting of *photocopies of ten book covers*, which he testified were "plans and valuation text [sic], dealing with the issue of the cost of the risk versus return and the finance underpinnings for the statements in my report about risk and

return." *See* Blake Depo. at 13:9-12. In its opposition to Plaintiff's motion, Defendant exaggerates the referenced testimony by quoting it and arguing that in making the statement, Blake "walked Plaintiff's counsel through all of [the] documents that he relied on . . ." Def. Opp. at 8 (quoting Blake Depo. at 13:9-12). Blake never cited these texts or referenced them in any way in his report, nor did he mention these texts again during his deposition. Blake never submitted photocopies of any pages in the books that supported his theory, nor did he identify specific pages in these books. In sum, nothing at all about the contents of these books was ever discussed and remains unknown.

The only other reference to any possible authority to support Blake's "finance theory," is his passing mention of "the late Harry Markowitz in 1952" and "many Nobel prizes." *See* Blake Depo. at 211:17-22. In essence, Defendant claims that Blake's book cover photocopies and his fleeting and vague references are enough effort on his part, thereby sending this Court and Plaintiff on a wild goose chase regarding his alleged authorities. Submitting photocopied book covers at his deposition[2] and stating generally that the books were the "underpinnings" for a theory in an expert's report is hardly "citing" a "near compendium" of authorities, nor should it be enough to satisfy the federal court's admissibility requirements for expert opinions. *See In re BankAtlantic Bancorp, Inc.*, 2010 U.S. Dist. LEXIS 142547, *13-15, 18 (S.D. Fla. Sept. 8, 2010) (Ungaro, J.) (excluding banking expert's opinion where (1) expert failed to cite authority for certain conclusion in his opinion and provided no discernible basis for separate conclusion and (2) expert submitted opinion, which was based on his knowledge and experience of "'general trends in banking industry'" but failed to, *inter alia*, explain those "'general trends'"). Experts are required to do much more than simply asking the court to take his word for it. *See, e.g., Frazier*, 387 F.3d at 1261 ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'") (quoting Fed. R. Evid. 702

---

[2] Blake's untimely submission of the material, well after his report was due, is alone a reason to exclude. The prejudice to Coquina is blatant.

advisory committee's note (2000 amends.)); *In re BankAtlantic Bancorp, Inc.*, 2010 U.S. Dist. LEXIS 143162, *17-18, n.8 (S.D. Fla. Aug. 31, 2010) (Ungaro, J.) ("To say that the opinion is based on no reliable methodology is really to say that the Court was unable to extract or construct from the [r]eport (and other materials) any arguable reliable methodology."); *Unleashed Magazine, Inc. v. Orange County*, 2008 U.S. Dist. LEXIS 113383, *28-29 (M.D. Fla. Aug. 25, 2008) (granting motion to strike expert report and testimony in a "classic case" of "'tak[ing] the expert's word for it'" where expert's "ultimate opinion [was] based on his experience alone [and] the evaluation of the various factors and the inferences drawn from them leading to the ultimate opinion are themselves based solely on [the expert's] opinion and experience without any reviewable supporting data or methods.").

    **4.**    **Blake is required to explain how and why his experience led to his opinion.**

Defendant claims that Blake "is not required to explain further how his experience led him to his conclusions beyond the explanations and information he has provided" because his first opinion is not based "'solely'" or "'primarily'" on his experience, but rather is based on "finance theory." Def. Opp. at 11-13. As the Supreme Court has explained (and as the Eleventh Circuit has recognized):

> In certain cases, it will be appropriate for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community. Likewise, it will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable.

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999); *see also Frazier*, 387 F.3d at 1262 (quoting *Kumho*, 526 U.S. at 151). Defendant argues that, although he is not required to tie his experience to his opinion, Blake has "extensive experience in financial valuation." Def. Opp. at 13.

Blake's report, which is admittedly based primarily on "finance theory" (a theory that is not his own) neither demonstrates how he has reliably applied this theory or his financial valuation experience in reaching the opinions and conclusions he presents. *See In re BankAtlantic,* 2010 U.S. Dist. LEXIS 143162 at *19 (excluding plaintiffs' banking industry expert based on fact that he did not "demonstrate how he has reliably applied such [banking industry practices] expertise in reaching the opinions and conclusions he presents"); *In re BankAtlantic,* 2010 U.S. Dist. LEXIS 142547 at *18 (excluding defendant's banking expert for same reasons). "[A] basic foundation for admissibility [is] that 'proposed [expert] testimony must be supported by appropriate validation – i.e., good grounds, based on what is known.'" *Frazier*, 387 F.3d at 1261 (quoting *Daubert*, 509 U.S. at 590). Blake has failed to support his opinion with any well-explained or well-reasoned validation; his opinion should thus be excluded.

     5.     **Blake's biased opinion will unfairly prejudice Coquina.**

Finally, Defendant does not meaningfully challenge Plaintiff's argument that Blake's subjective opinions about Coquina as "allegedly sophisticated wealthy people" who basically should never have "invest[ed] in this in the first place" because "they knew it was absurd" is entirely prejudicial and improper. *See* Def. Opp. at 13-14; Motion to Exclude at 13-14. Instead, Defendant claims that Plaintiff "misconstru[ed]" Blake's testimony, adding "[t]his *is* a quintessential get-rich-quick scheme." Def. Opp. at 13-14 (emphasis in original). It is impossible to misconstrue Blake's blunt and biased testimony:

(1)    "[w]hether a court would find that an absurd investment by allegedly sophisticated wealthy people, when they knew it was absurd, is subject to any damages at all, I don't know. My opinion, no." Blake Depo. at 233:4-8.

(2)  "[t]he only control that Coquina had was never to invest in this in the first place, given the return and its associated risk. Beyond that, there is no basis to believe that these weren't speculative, get-rich-quick programs for very wealthy people." Blake Depo. at 234:5-10.

Blake should not be allowed to prejudice Plaintiff by introducing his subjective and biased beliefs to the jury. *See* Fed. R. Evid. 702 (2000 amends.) ("[t]he more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable."). Accordingly, because Defendant has failed to satisfy its burden of demonstrating that Blake's testimony satisfies the reliability and helpfulness prongs of the Eleventh Circuit's three-part test, his testimony should be excluded. *See Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (the burden is on the proponent of the expert testimony to show, by a preponderance of the evidence, that the testimony satisfies each prong) (citing *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care*, 582 F.3d 1227, 1232 (11th Cir. 2009)).

**B.   Blake's Second Opinion Is Inadmissible Because It Is Unreliable And Will Not Help The Jury.**

Nothing in Defendant's opposition explains the basis for Blake's second opinion on damages. Defendant's argument that Blake's second opinion is "exactly" what Maria Yip opined in her report misconstrues both Ms. Yip's opinion and Plaintiff's challenges to Blake's testimony. *See* Def. Opp. at 14-15. As Plaintiff argued, Blake does not explain *why* the single $240,000 transfer from one account should be the *only amount of damages* that Coquina should recover. *See* Motion to Exclude at 15; Blake Report at 4, 20. That issue remains unexplained. Moreover, though Defendant argues that Blake understood the "alleged purpose of the [L]ock [L]etters," his referenced testimony demonstrates nothing of the sort. *See* Def. Opp. at 15-16 (quoting Blake Depo. at 108:4-20; 229:21-230:12). If anything, Blake merely reiterated his thoughts on "finance theory" and his opinion on risk versus return. *Id.* His testimony demonstrates that he believed the Lock Letters had no effect whatsoever ("I don't give any credibility to the representations of the people who say that

made it a safe investment."). *See* Blake Depo. at 108:9-20. As Plaintiff argued, it is clear that Blake took an exceedingly and unreasonably narrow view of the fraud that caused Coquina's damages, as well as the role the Lock Letters played. *See* Motion to Exclude at 14-16.

**C.      Defendant Misconstrues Coquina's Arguments.**

Defendant submits that Coquina "summarily conclud[ed], without explanation or support" that Blake's summarization of "general economic trends" should be excluded. *See* Def. Opp. at 16-17; Motion to Exclude at 17. To the contrary, Coquina supported its argument with relevant case law and analysis. *See* Motion to Exclude at 17. In any event, Blake's opinion and summary about these trends, such as the recession, the unemployment rate, the Consumer Confidence Index, the statements in the Federal Open Market Committee report, and rates on alternative investments are not relevant to the issue of damages and should be excluded. *See* Blake Report at 14; Motion to Exclude at 17.

Likewise, contrary to Defendant's argument, Blake's summary of the background of this litigation and testimony of other witnesses is not relevant to his purported opinion on damages. *See* Blake Report at 5-6, 7-9. As Coquina argued, an expert is not needed to summarize testimony or provide a history of the litigation and he should not be allowed to testify to this information. *See, e.g., In re BankAtlantic*, 2010 U.S. Dist. LEXIS 142547 at *11, 18 ("To the extent that [expert] merely recites various practices in which BankAtlantic did not engage, an expert is not required for such a summation, and his testimony on this point does not assist the trier of fact."; and to extent expert merely "rehashed" and "repeat[ed]" case evidence, including emails, testimony does not assist jury).

## CONCLUSION

For the reasons set forth above, Coquina respectfully requests that this Court grant Plaintiff's Motion to Exclude the Expert Report and Testimony of Thomas M. Blake and for such further relief this Court deems just and proper.

Respectfully submitted,

MANDEL & MANDEL LLP
169 East Flagler Street, Suite 1200
Miami, Florida 33131
Telephone: 305.374.7771
Facsimile: 305.374.7776
dmandel@mandel-law.com

By: _____
DAVID S. MANDEL
 Florida Bar No. 38040
NINA STILLMAN MANDEL
 Florida Bar No. 843016
JASON B. SAVITZ
 Florida Bar. No. 36444

*Attorneys for Coquina Investments*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 12, 2011, a true and correct copy of the foregoing was sent via U.S. Mail to Mark Schnapp, Greenberg Traurig LLP, 333 SE 2nd Ave., Suite 4400, Miami, FL 33131.

_____
DAVID S. MANDEL