UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-60786-Civ-COOKE/BANDSTRA

COQUINA INVESTMENTS,

    Plaintiff,

vs.

SCOTT W. ROTHSTEIN and TD BANK, N.A.,

    Defendants.

_____/

**OMNIBUS ORDER ON MOTIONS TO EXCLUDE EXPERTS**

THIS MATTER is before me on Defendant TD Bank's Motion to Exclude Testimony of Plaintiff's Identified Expert Maria Yip (ECF No. 379), and Motion to Exclude Testimony of Plaintiff's Identified Expert Catherine Ghiglieri (ECF No. 382), and Plaintiff Coquina Investments' Motion to Exclude the Expert Report and Testimony of Samuel S. Rubin (ECF No. 385), Motion to Exclude the Expert Report and Testimony of Thomas M. Blake (ECF No. 388), Motion to Exclude the Expert Report and Testimony of Ivan A. Garces (ECF No. 390), and Motion to Exclude the Expert Report and Testimony of Craig Lessner (ECF No. 392). I have reviewed the arguments, the record, and the relevant legal authorities. I will review each Motion to Exclude Experts in turn.[1]

### I. LEGAL STANDARDS

Trial courts are the gatekeepers to the admission of all expert testimony and must ensure that any and all expert testimony or evidence admitted is not only relevant, but reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). In order to determine the admissibility

---

[1] The facts of this case are set forth in my January 20, 2011 Order denying Defendant's Motion to

of expert testimony, a district court must consider whether:  (1) the expert is qualified to testify competently as to the subject matter he intends to address; (2) the method employed by the expert is sufficiently reliable; and (3) the testimony assists the trier of fact to comprehend the evidence through the application of the witness's expertise.  *Quiet Tech. DC-8, Inc. v. Hurel-Dubois U.K. Ltd.*, 326 F. 3d 1333, 1340-41 (11th Cir. 2003).  "While there is inevitably some overlap among the basic requirements-qualification, reliability, and helpfulness-they remain distinct concepts and the courts must take care not to conflate them."  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence."  *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

"While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status."  *Frazier*, 387 F.3d at 1260-61.  Indeed, Rule 702 of the Federal Rules of Evidence makes clear that expert status may be based on "knowledge, skill, experience, training or education."

A qualified expert, however, must still offer reliable testimony.  *See Quiet Tech.*, 326 F.3d at 1341-42.  "When evaluating the reliability of scientific expert opinion, the trial judge must assess 'whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue.'"  *Frazier*, 387 F.3d at1261-62 (quoting *Daubert*, 509 U.S. at 592-93).  In assessing the reliability of scientific opinion or non-scientific, experience-based testimony, a court must consider:  "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific

---

Dismiss.  (ECF No. 87).

technique; and (4) whether the technique is generally accepted in the scientific community." *Id*. at 1262. "[I]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id*. at 1261 (quoting Fed. R. Evid. 702 advisory committee note (2000)) (internal quotations omitted)).

A court must also determine whether the expert testimony will assist the jury. Expert testimony is admissible under this requirement "if it concerns matters that are beyond the understanding of the average lay person." *Id*. at 1262. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id*. at 1262-63.

Finally, a court may exclude expert testimony if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. *Id.* at 1263 *see*; Fed. R. Evid. 403. Because "expert testimony may be assigned talismanic significance in the eyes of lay jurors," a court "must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id*.

## II. ANALYSIS

### A.  Defendant's Motion to Exclude Expert Testimony of Maria Yip

TD Bank moves to exclude Maria M. Yip's expected testimony regarding the impact of bank fraud alerts, Ponzi scheme "factors," and her rebuttal opinions relating to conflicts of interest and finance theory.[2] TD Bank challenges Ms. Yip's testimony based on her qualifications, reliability, and helpfulness.

---

[2] Ms. Yip analyzes Ponzi activity in TD Bank accounts on page 14 of her May 13, 2011 Report. Ms. Yip analyzes TD Bank's purported fraud alert failures on pages 15-21 of her May 13, 2011 Report. Ms. Yip

3

Ms. Yip is a certified public accountant, a certified fraud examiner, and a certified insolvency and restructuring advisor. She is also certified in financial forensics. She is a co-founder of Yip and Levi, LLC, a forensic accounting and financial investigations firm specializing in forensic accounting, financial investigations, bankruptcy, business valuations, and tax controversies. She has a total of sixteen years of experience in these fields. In her deposition, Ms. Yip testified that she has been a consultant in at least five other cases involving Ponzi schemes. Ms. Yip explained at her deposition, that as a fraud examiner, she has "a significant amount of experience in working on fraud examinations." (Yip Dep. 17:17-25). However, she admitted that she had only a "general sense" of anti-money laundering ("AML") or Banking Secrecy Act ("BSA") requirements. (*Id*. at 18:17-19:2).

Coquina has not met its burden of showing that Ms. Yip is qualified to testify about TD Bank's fraud alert failures. Ms. Yip admitted in her deposition that she is neither a banking expert nor an expert in fraud systems in banks. (Yip Dep. 18:17-19:2; 67:17-70:16). Indeed, Ms. Yip does not appear to have any specialized knowledge, skill, experience, training, or education in banking regulations or bank fraud alert systems. (*See* Yip Dep. 18:17-19:2; 59:5-63:6; 67:17-70:16). Ms. Yip therefore cannot testify regarding bank regulations, including a bank's duties relating to fraud alerts or a purported failure in TD Bank's fraud alert system.

Moreover, even if Ms. Yip were qualified to present her opinions on TS Bank's fraud alert system, her opinions are unreliable. Ms. Yip clarified in her deposition that her opinion is that TD Bank's fraud alert system failed in its execution because it should have "picked up more transactions." (Yip Dep. 69:13-70:3). However, Ms. Yip admitted she does not know what are TD Bank's fraud alert system criteria or parameters. (Id.) Ms. Yip further admitted that, "if evidence was presented that demonstrated that the system picked up—the fraud alert system

---

analyzes Mr. Blake's potential conflict of interest on page 8 of her June 27, 2011 Rebuttal Report.

4

picked up all of the items or transactions it was designed to pick up . . . then I would say it's not an execution problem or execution failure. (Yip Dep. 70:5-16). Ms. Yip's conclusions regarding TD Bank's fraud alert system failures are based on speculation and unsupported by reasonable evidence. *Cf. In re BankAtlantic Bancorp, Inc. Secs Litig.*, No. 07-61542, 2010 WL 6352662, at *3 n.3 (S.D. Fla. Aug. 30, 2010).

Based on her analysis of certain TD Bank accounts and her knowledge of how Ponzi schemes function, Ms. Yip concluded that the activity in the RRA/Rothstein accounts indicated "Ponzi activity." Ms. Yip is qualified to provide this opinion based on her expertise as a fraud examiner and her knowledge and experience as a consultant in other Ponzi scheme cases. TD Bank does not challenge this opinion on its reliability or helpfulness. In any case, I find that Ms. Yip's analysis is sound and would help the trier of fact. Ms. Yip can testify regarding purported Ponzi activity in the RRA/Rothstein accounts.

Ms. Yip indicates that Plaintiff's expert, Mr. Blake, has a potential conflict of interest because he is a former partner at Ernst & Young, TD Bank's current auditor. Mr. Blake also receives a pension from that firm. In making this determination, Ms. Yip applied the conflict of interest standards that exist in the "accounting setting." (Yip Dep. 53:16-21 ("There are standards of independence and objectivity that accountants need to adhere to in doing their work and when they serve as expert witnesses. So that's—conflicts of interest are applied in an accounting setting as well.")). I find that this opinion will not assist the trier of fact because it does not concern matters that are beyond the understanding of the average layperson. *See Frazier*, 387 F.3d at 1262. These opinions "offer[] nothing more than what lawyers for the parties can argue in closing arguments" or cross-examine the witness about. *See Frazier,* 387 F.3d at 1262-63). Ms. Yip cannot testify as to Mr. Blake's potential conflict of interest. This

5

does not prevent Coquina, however, from attacking Mr. Blake's credibility by cross-examining him about any potential conflict.

TD Bank challenges Ms. Yip's opinions in rebuttal to Mr. Blake's first opinion. Because I am granting Coquina's motion to exclude Mr. Blake's first opinion, I need not address this opinion as no rebuttal will be necessary. *See Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-61490, 2011 WL 2295269, at *5 n.5 (S.D. Fla. Jun. 8, 2011).

TD Bank also challenges Ms. Yip's opinions in rebuttal to Mr. Blake's second opinion. Ms. Yip rebuts Mr. Blake's second opinion by stating that he did not adequately consider certain facts and evidence. "A rebuttal expert can testify as to the flaws that she believe[s] are inherent in another expert's report that implicitly assumes or ignores certain facts." *Pandora Jewelers 1995, Inc.*, 2011 WL 2295269, at *5 (quoting *KW Plastics v. U.S. Can Co.*, 199 F.R.D. 687, 692 (M.D. Ala. 2000)). "Thus, a rebuttal expert may testify that, while the expert's report implicitly assumes (or erroneously fails to consider) facts X, Y, and Z, the expert's analysis is seriously flawed if the jury does not accept X, Y, and Z as true. This is a well-accepted way to criticize damages estimates." *Id.* (quoting *KW Plastics v. U.S. Can Co.*, 199 F.R.D. 687, 692 (M.D. Ala. 2000) (internal quotations omitted)). I find that Ms. Yip's rebuttal to Mr. Blake's second opinion is reliable and helpful to the trier of fact.

Finally, TD Bank challenges certain of Ms. Yip's statements on the grounds that they consist of legal conclusions or are purely argumentative. I find that Ms. Yip's opinions that (i) Mr. Blake lacks objectivity, (ii) it appears from his deposition that he did not engage in much supervision with his team, and (iii) Mr. Blake's opinions have been rejected previously in other cases by other judges, will not assist the trier of fact because they do not concern matters that are beyond the understanding of the average layperson. *See Frazier*, 387 F.3d at 1262. These

opinions "offer[] nothing more than what lawyers for the parties can argue in closing arguments" or cross-examine the witness about. *See id.* at 1262-63. Ms. Yip therefore cannot offer opinions on these subjects.

**B.     Defendant's Motion to Exclude Expert Testimony of Catherine Ghiglieri**

TD Bank moves to exclude Catherine Ghiglieri's expected testimony regarding BSA/AML compliance regulations and practice, as well as certain conclusions she draws with respect to TD Bank's actions.[3] TD Bank challenges Ms. Ghiglieri's expected testimony on the grounds that she is not qualified, and her opinions are unreliable and unhelpful for the jury.

Ms. Ghiglieri has over twenty-five years of experience in banking. She served as the Texas Banking Commissioner for over seven years. She then worked for the Office of the Comptroller of the Currency in various positions for eighteen years, where she supervised national banks and conducted fraud investigations. Since leaving government service, she has acted as a consultant to banks in the areas of risk assessment, identification of operational deficiencies, and regulatory compliance. She also provides training to bank directors at the Bank Directors' College. Based on her extensive experience in bank regulatory compliance and practices, I find that Ms. Ghiglieri is sufficiently qualified to provide the opinions she has set forth in her reports.

I also find that Ms. Ghiglieri's opinions are relevant to Coquina's claims. Whether TD Bank ignored "red flags" indicating fraud can be admissible circumstantial evidence relevant to whether TD Bank had knowledge of the fraud or was reckless in its actions. *See United States v.*

---

[3] TD Bank also seeks to exclude Appendix H-3 to Ms. Ghiglieri's Report because Coquina served it by e-mail two days after it served her report on TD Bank. Coquina notes the failure to timely serve this exhibit was an inadvertent error. TD Bank fails to show that Coquina's mistake prejudiced TD Bank in any way. Having determined that the omission was inadvertent and no prejudice resulted from it, I will not exclude this portion of Ms. Ghiglieri's report.

*Williams*, 390 F.3d 1319, 1325 (11th Cir. 2004); *Smith v. First Union Nat'l Bank*, No. 00-4485, 2002 WL 34355951, at *1 (S.D. Fla. Aug. 27, 2002).

TD Bank challenges several of Ms. Ghiglieri's opinions on reliability. TD Bank notes that Ms. Ghiglieri relied upon an outdated regulatory manual in performing her analysis of TD Bank's regulatory compliance. Ms. Ghiglieri's opinion B contains extensive discussion of the regulatory guidance set forth in the OCC's Comptroller's Handbook on Bank Secrecy Act/Anti-Money Laundering (2000). *See* Ghiglieri Rep. at 12-15. Ms. Ghiglieri's opinion G also relies on the OCC Handbook. *See* Ghiglieri Rep. at 63. The Federal Financial Institutions Examination Council's ("FFIEC") 2005 BSA/AML Examination Manual superseded and replaced all other previously issued BSA/AML handbooks. Although Ms. Ghiglieri used the FFIEC Manual in her rebuttal report, she relied on the OCC Handbook in her initial report.

Coquina argues that the two manuals provide essentially the same guidance. Indeed, a comparison of the relevant language in the two manuals reveals that they are substantially similar, although the FFIEC Manual contains greater specificity and detail. Importantly, the FFIEC Manual states that it does not set any new standards. TD Bank can only point to one material difference between the manuals, which relates to Ms. Ghiglieri's opinion G. Both manuals provide substantially similar guidance and principles relating to opinion B so that it appears that using the outdated manual did not compromise Ms. Ghiglieri's methodology as to that opinion. Having reviewed the guidance materials, I find that Ms. Ghiglieri's opinion B is reliable, but her opinion G is not.[4]

TD Bank points to a list of additional perceived errors or shortcomings in Ms. Ghiglieri's opinions regarding the assumptions she makes and the facts she relies upon. I do not find these

---

[4] In Opinion G, Ms. Ghiglieri concludes that TD Bank "participated in the Rothstein fraud by not closing the RRA accounts when attributes of fraud were evident." The OCC Handbook section upon which she

8

opinions unreliable.  TD Bank may attack these weaknesses through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert,* 509 U.S. at 596.

Finally, TD Bank challenges some of Ms. Ghiglieri's opinions on the ground that they consist of legal opinions.  An expert "cannot testify to the legal implications of conduct [because] the court must be the jury's only source of law."  *Montgomery v. Aetna Cas. & Sur. Co.,* 898 F.2d 1537 (11th Cir. 1990).

Opinion B concludes that "TD Bank aided the Rothstein fraud" when it violated banking laws and failed to comply with industry standards.  Opinion C concludes that "TD Bank facilitated the fraud" by failing to have sufficient fraud detection systems.  Opinion E concludes that the failures in TD Bank's systems "facilitated the fraud."  Opinions F through L conclude that TD Bank "participated in the Rothstein fraud" for a variety of reasons.

Opinions B, C, E, F, and L provide factual conclusions based on Ms. Ghiglieri's review and analysis of the evidence and relevant regulatory guidance.  *See Georgian v. Zodiac Grp., Inc.*, No. 10-60037, 2011 WL 2530967, at *3 (S.D. Fla. Jun. 23, 2011); *Kearney v. Auto-Owners Ins. Co.*, No. 06-595, 2009 WL 3712343, at *5 (M.D. Fla. Nov. 5, 2009) ("While [the expert's] opinion overlaps the language of the statute, [he] is providing a factual conclusion-that [defendant] acted fairly and honestly, and that it acted after giving due regard to [the plaintiff's] interests-not a legal conclusion.").  Ms. Ghiglieri's opinions on these issues would assist the trier of fact.

Opinions G through K present a different problem.  These opinions consist almost entirely of a summary of evidence such as e-mails, deposition testimony, and plea agreements, and provide a general conclusion that the evidence indicates TD Bank participated in fraud.

---

relies does not appear in the FFIEC Manual, which does not recommend immediate account closure.

Jurors are able to read and understand witness testimony, e-mails, or other documentary evidence without assistance of an expert.  Thus, Ms. Ghiglieri's opinions G through K are unhelpful to the trier of fact.  *See In re BankAtlantic Bancorp, Inc. Secs. Litig.*, No. 07-61542, 2010 WL 6363027, at *6 (S.D. Fla. Sept. 9, 2010) (excluding testimony that merely "rehashe[d] information" contained in e-mails and public filings because it would not "assist the trier of fact to understand matters beyond the understanding of the average lay person").

I will not allow Ms. Ghiglieri to testify as to opinions G through K because those opinions merely rehash evidence that a jury can easily understand without the assistance of an expert.  Ms. Ghiglieri can testify as to opinions C, E, F, and L.

**C.     Plaintiff's Motion to Exclude Expert Testimony of Samuel S. Rubin**

Coquina challenges Sam Rubin's opinion that e-mails that purport to be scanned copies of TD bank correspondence were, in fact, e-forgeries.  Coquina moves to exclude Mr. Rubin's expected testimony on reliability, failure to produce supporting data, the opinions are incomplete, and TD Bank's failure to produce documents it received pursuant to a third-party subpoena.

TD Bank served Mr. Rubin's interim report on Coquina on June 20, 2011.  TD Bank served a supplemental report on July 1, 2011, which this Court struck as untimely.  However, this Court ruled that Mr. Rubin could testify regarding the opinions set forth in the June 20, 2011 report, and he could testify as to any documents or data attached to the July 1, 2011 report that "directly related" to the June 20, 2011 opinions.  (*See* ECF No. 355).

I find that Mr. Rubin's expected testimony is reliable.  Mr. Rubin is a digital forensics expert, qualified to provide opinions as to metadata analysis.  Mr. Rubin's employed a sound metadata analysis, which he explains in his report.  That Mr. Rubin reviewed only a sample of

10

data goes to the weight of his testimony, rather than its admissibility.  The fact that there may be other e-mails in the data set, which Mr. Rubin did not review, does not alter the reliability of his conclusion that he identified ten e-mails that were purportedly forged.

Finally, I note that TD Bank represents that it sent to Coquina the sample data set Mr. Rubin relied upon to reach his conclusions.  The e-mails are attached to his report, and TD Bank also sent the electronic files to Coquina.  Coquina therefore has the sample data set Mr. Rubin relied upon to reach his conclusions.  That TD Bank failed to provide other data, unrelated to Mr. Rubin's interim report, is not grounds to exclude his report.[5]

**D.      Plaintiff's Motion to Exclude Expert Testimony of Thomas M. Blake**

Coquina moves to exclude Thomas M. Blake's expected testimony that (i) Coquina's investments with Rothstein were "risky and speculative," it was highly likely that Coquina would lose its invested funds, and, as a result, Coquina did not suffer damages with respect to its investment; and (ii) assuming TD Bank's liability for any funds in RRA account 1614, Coquina's damages are $270,536.

Coquina argues that Mr. Blake's first opinion is unreliable because it is unexplained and unsupported.  Coquina also argues that his first opinion will mislead the jury.  Mr. Blake, relying on modern finance theory, determined that the Rothstein settlement investment opportunity was risky and speculative, and therefore it was highly likely that Coquina would lose its money.  Mr. Blake concludes that Coquina did not suffer any damages because "the risk of loss implied by these returns is so high that any calculation of damages is speculative and unreliable."  Mr. Blake then calculates Coquina's damages at zero.

Contrary to Coquina's arguments, Mr. Blake explains the finance theory on which he

---

[5] Mr. Rubin may not testify as to any *additional* data or documents that directly relate to Mr. Rubin's June 20, 2011 report unless TD Bank properly provided these to Coquina in a timely manner.

11

bases his analysis.  Blake Rep. 4, 16-17.  Mr. Blake's analysis supports his findings regarding a reasonable investor's profit expectations.  Finance theory—and logic—support a conclusion that a "safe" investment generally yields lower returns, while riskier investments generally yield higher rates of return.  However, TD Bank retained Mr. Blake to provide an opinion on damages, not on what Coquina should have reasonably expected its returns to be.

Mr. Blake does not explain why Coquina's measure of damages should be zero, i.e., he does not provide any support for calculating Coquina's damages as its likely return on the Rothstein investment.  *See In re BankAtlantic Bancorp, Inc. Secs. Litig.*, No. 07-61542, 2010 WL 6397501, at *4 (S.D. Fla. Aug. 23, 2010).  Indeed, Mr. Blake's first opinion does not reflect a proper measure of damages under RICO or common law fraud in Florida.  "The measure of civil RICO damages (before trebling) is the harm flowing from the predicate acts, meaning any direct financial injury suffered by the plaintiffs as a result of those acts." *Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 2d 1306, 1326 (S.D. Fla. 2009) (quoting *City of Chicago Heights, Ill. V. Lobue*, 914 F. Supp. 279, 282 (N.D. Ill. 1996) (internal quotations omitted)).  "[U]nder Florida law, the first measure of damages for a successful fraud claim is known as the 'out-of-pocket rule,' which allows for recovery of amounts that the plaintiff actually lost." *Id*. (quoting *Laney v. Am. Equity Inv. Life Ins. Co*., 243 F.Supp.2d 1347, 1354 (M.D. Fla. 2003) (internal quotations omitted)).  Because Mr. Blake's first opinion contains unsupported conclusion and does not comport with a recognized measure of damages, I find that it is not reliable.

Coquina challenges Mr. Blake's second opinion because it is conclusory, unclear, and unhelpful for the jury.  Mr. Blake states that, based on his review of bank statements for RRA Account 1614 (the account identified in TD Bank's "lock letter" to Coquina), all of the funds deposited in this account were paid to Coquina except for one transfer in the amount of

$240,000.00. He adds to this amount $30,536.00 in interest. Assuming that TD Bank may pay to Coquina all of the funds contained in RRA Account 1614, Mr. Blake concludes that Coquina's damages are $270,536.00.

An expert's opinion on damages "must be predicated on assumptions which have a reasonable basis in the evidence." *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 999 (5th Cir. 1976). To reach his conclusions, Mr. Blake assumed the lock letters correctly indicated the account that held Coquina funds. The lock letters stated that all funds contained in the account would be distributed only to Coquina. However, Maria Yip, Coquina's expert, identified a transfer in the amount of $240,000.00 from Account 1614 to another Rothstein account. Mr. Blake's assumptions have a reasonable basis in the evidence.

Coquina argues that Mr. Blake takes an "unreasonably narrow view of the fraud." "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 955-56 (8th Cir. 2007). Coquina may attack any perceived witnesses in Mr. Blake's assumption through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof vigorous cross-examination." *Daubert*, 509 U.S. at 596; *see also Quiet Tech.*, 326 F.3d at 1345 (arguments regarding deficiencies in making calculations, i.e., using wrong numbers, should be addressed through cross-examination because they "impugn the accuracy of [the] results, not the general scientific validity of [the] methods"). I find that Mr. Blake's second opinion is reliable and helpful to the trier of fact. Mr. Blake may testify as to his second opinion.

Finally, Coquina moves to exclude as irrelevant Mr. Blake's summary of evidence and his opinion on the "general economic trends" at the time of Coquina's first investment. TD Bank

13

retained Mr. Blake as a damages expert. Mr. Blake provides a summary of the evidence as background information that he relied upon to reach his opinion on damages. To the extent he relied upon this information to form his opinion, it is relevant to that opinion. Mr. Blake, however, may not provide opinions as to the history of this litigation or provide a summary of the evidence to the jury independent and unrelated to his second opinion on damages. Further, Mr. Blake's opinion on "general economic trends" is irrelevant to damages. Thus, he may not testify as to this topic.

**E.  Plaintiff's Motion to Exclude Expert Testimony of Ivan A. Garces**

Coquina moves to exclude Ivan A. Garces' expected testimony regarding BSA/AML compliance regulations and practice. Coquina challenges Ms. Garces' expected testimony on the grounds that his opinions are unreliable, irrelevant, and unhelpful for the jury.

Coquina essentially argues that Mr. Garces ignores certain facts and fails to use or identify a reliable methodology for his analysis. "[A] trial court may exclude expert testimony that is imprecise and unspecific, or whose factual basis is not adequately explained." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (internal quotations omitted)). However, "the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988).

Mr. Garces has fifteen years of experience conducting BSA/AML compliance reviews and investigations for financial institutions. He is also a certified anti-money laundering specialist and a certified fraud examiner. For each of his opinions, Mr. Garces explains the facts and evidence he relied upon, and the statutes and regulatory framework he applied. Mr. Garces also relies upon the regulatory guidance set forth in the FFIEC Manual. I find that Mr. Garces

14

has adequately supported his conclusions and his assumptions have a reasonable basis in the evidence. Coquina may attack any perceived weaknesses in the underpinnings of Mr. Garces' opinions through cross-examination or through another expert's conflicting opinion. *See, e.g., Daubert,* 509 U.S. at 596; *Jones*, 861 F.2d at 663 ("On cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.").

F.   **Plaintiff's Motion to Exclude Expert Testimony of Craig Lessner**

Coquina moves to exclude Craig Lessner's expected testimony that (i) Coquina conducted inadequate due diligence to determine whether Rothstein's purported settlements were genuine; (ii) several aspects of the transaction structure and documentation were red flags that the settlements were fraudulent; (iii) the high discount rate applied to each settlement indicates the significant risk associated with the settlements; and (iv) the confluence of so many settlement sellers needing to sell settlements at deep discounts is not believable. Coquina challenges Mr. Lessner's opinions on reliability, helpfulness, and relevance.

The basis for Mr. Lessner's expertise is his experience in the field of settlement funding transactions. The parties do not dispute that Mr. Lessner is qualified to provide the opinions set forth in his report. Since 1998, Mr. Lessner has been the Senior Vice President and General Counsel of Peachtree Settlement Funding ("Peachtree"). In this position, Mr. Lessner has transaction-level involvement in Peachtree's settlement funding transactions. He reviews and approves high-dollar transactions at the company. He is also responsible for the overview of the legal aspects of Peachtree's capital markets activities. He has knowledge of the discount rates for settlement purchasers through information circulated in the marketplace and made public through court filings. Mr. Lessner is also a member of the National Association of Settlement

Purchasers Legal Committee.

The parties' arguments focus mostly on Mr. Lessner's first opinion. Mr. Lessner opines that Coquina did not properly or adequately design or execute its due diligence. Mr. Lessner admitted in his deposition that there is no due diligence industry standard. According to Mr. Lessner, Peachtree developed for its private use the due diligence items that he lists in his report. Mr. Lessner stated in his deposition that this list was "something you get from experience." Coquina focuses on the listed *Daubert* factors, and argues that Mr. Lessner's opinion regarding due diligence is unreliable because it cannot be tested, has not been subject to peer review or publication, its success rate is unquantified, and it is unknown whether this methodology is accepted in the field.

This Court, however, is not limited to reviewing only *Daubert* factors. "Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful. As a result, the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Frazier*, 387 F.3d at 1262. When a witness "is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* at 1261.

Mr. Lessner explains in his report and in his deposition that he created the listed items in his first opinion based on his experience in the field. For each item, he explains why that item is relevant or important. Mr. Lessner also explains why his experience is a sufficient basis for his opinion. First, there are no due diligence industry standards, so experience in the field appears to be the only way to devise an adequate due diligence plan. Second, Mr. Lessner explains that

16

Peachtree regularly considers the items he lists in his report when conducting due diligence. He notes, "we have developed our own due diligence items, in the company, [that] we follow and feel are important relating to the particular asset that we're purchasing." (Lessner Dep. 72:3-6). Mr. Lessner explains why each item is relevant and important to due diligence. Applying this list of due diligence items to the due diligence Coquina undertook, Mr. Lessner concludes that Coquina did not properly design or execute its diligence. I find that Mr. Lessner has adequately demonstrated how his experience led him to his conclusions, why his experience is sufficient, and how that experience is reliably applied to the facts. Accordingly, Mr. Lessner's first opinion is reliable. Coquina may attack any weaknesses in Mr. Lessner's testimony through cross-examination.

Coquina's arguments focus only on Mr. Lessner's first opinion. Coquina does not independently challenge the reliability of his second, third, and fourth opinions. Coquina appears to argue that Mr. Lessner's second, third and fourth opinions flow from the first opinion. I agree that the second, third, and fourth opinions are related to the first opinion. I find that Mr. Lessner has adequately explained how his experience led him to his conclusions, why his experience is sufficient, and how that experience is reliably applied to the facts. I therefore find that Mr. Lessner's additional opinions are reliable.

I also find that Mr. Lessner's opinions regarding due diligence would be helpful to the jury. Whether Coquina adequately performed its due diligence and failed to identify or recognize certain "red flags" are matters beyond the understanding of the average lay person. *See Frazier*, 387 F.3d at 1262.

Finally, I find that Mr. Lessner's opinions are relevant, at minimum, to Coquina's fraudulent misrepresentation claim. Under Florida law, if the recipient of a misrepresentation

"'knows that it [the statement] is false or its falsity is obvious to him,' his reliance is improper, and there can be no cause of action for fraudulent misrepresentation." *M/I Schottenstein Homes, Inc. v. Azam*, 813 So. 2d 91, 94-95 (Fla. 2002) (quoting *Bessett v. Basnett*, 389 So. 2d 995, 997 (Fla. 1980)). Mr. Lessner's testimony is relevant to demonstrate that the falsity of TD Bank's employees' misrepresentations was obvious. Mr. Lessner may testify at trial as to the four opinions set forth in his report.

### III. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that:

1. Defendant TD Bank's Motion to Exclude Testimony of Plaintiff's Identified Expert Maria Yip (ECF No. 379) is **GRANTED in part and DENIED in part**. Ms. Yip may not testify at trial as to (i) TD Bank's fraud alert failures; (ii) Mr. Blake's potential conflict of interest, (iii) Mr. Blake lack of objectivity, (iv) Mr. Black's lack of supervision of his team, and (v) Mr. Blake's opinions rejected previously in other cases by other judges.

2. Defendant TD Bank's Motion to Exclude Testimony of Plaintiff's Identified Expert Catherine Ghiglieri (ECF No. 382) is **GRANTED in part and DENIED in part**. Ms. Ghiglieri may not testify at trial as to opinions G through K in her report.

3. Plaintiff Coquina Investments' Motion to Exclude the Expert Report and Testimony of Samuel S. Rubin (ECF No. 385) is **DENIED**.

4. Plaintiff Coquina Investments' Motion to Exclude the Expert Report and Testimony of Thomas M. Blake (ECF No. 388) is **GRANTED in part and DENIED in part**. Mr. Blake may not testify as to opinion 1 in his report or as to "general economic trends" at the time of Coquina's first investment.

5. Plaintiff Coquina Investments' Motion to Exclude the Expert Report and Testimony of Ivan A. Garces (ECF No. 390) is **DENIED**.

6. Plaintiff Coquina Investments' Motion to Exclude the Expert Report and Testimony of Craig Lessner (ECF No. 392) is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 18th day of October 2011.

*[signature: Marcia G. Cooke]*

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of record*