**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 10-60786-Civ-Cooke/Bandstra**

COQUINA INVESTMENTS,

      Plaintiff,

v.

SCOTT W. ROTHSTEIN and
TD BANK, N.A.,

      Defendants.

**DEFENDANT TD BANK, N.A.'S RENEWED MOTION FOR**
**JUDGMENT AS A MATTER OF LAW AND**
**INCORPORATED MEMORANDUM OF LAW**

Defendant TD Bank, N.A. (hereinafter, TD Bank or the Bank), pursuant to Federal Rule of Civil Procedure 50(b) and in further support of TD Bank's Motion for Judgment as a Matter of Law and Incorporated Memorandum of Law and *ore tenus* motion, Fed. R. Civ. P. 50(a), at the close of Plaintiff's case-in-chief, respectfully requests this Court to enter judgment as a matter of law in its favor on the claims for fraudulent misrepresentation (Count III) and aiding and abetting fraud (Count IV) asserted by Plaintiff Coquina Investments (hereinafter, Coquina).

**INTRODUCTION**

Judgment as a matter of law on Counts III and IV is required for three independent legal reasons.

First, Coquina itself incurred no damages as a result of the conduct alleged in Counts III and IV. Damages were incurred – if at all – only by the individuals (31 according to the evidence at trial) who invested through Coquina, not by the purported Coquina "partnership"

itself.  None of these individual investors, however, appeared in this action as plaintiffs to plead claims for relief.

Although Coquina attempted to "cure" its defective claim shortly before trial, that attempt served only to confirm, rather than cure, its lack of standing.  Coquina's counsel delivered to TD Bank's counsel, letters dated October 21 and 22, 2011, in which individual investors purported to "assign" their "collection rights" to Coquina and to confer power of attorney on Coquina.  Defendant's Exhibit No. (D. Ex.)-946 (the Coquina Letters).  But the Coquina Letters serve only to confirm that any losses were incurred by individual investors.  D. Ex.-946 (each investor "incurred losses when he/she invested in" the Rothstein Ponzi scheme).  And the trial testimony establishes that each individual investor made his or her own investment decisions, using Coquina solely as a bookkeeping entity.  D.E. 695:4, 8-13.

Finally, the letters were ineffective as "assignments" and did not allow Coquina to step into the individual investors' shoes and pursue their claims in a representative capacity, even if the claims had been pleaded in that fashion – which they most certainly were not.  Florida law is clear that an assignment of "collection rights" does not assign the actual claim, or "chose in action."  *E.g. Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 496 (Fla. App. 1994); *Fla. Citrus Nursery, Inc. v. Fla. Dep't of Agric. & Consumer Affairs*, 570 So. 2d 1355, 1356 (Fla. App. 1990).

Second, even if the individual investors' claims had been validly assigned and Coquina could have pursued those claims, Coquina failed to do so.  The evidence is undisputed that each investor made his or her own investment decision and suffered his or her own individual losses.  If Coquina could have sued as the investors' assignee, it would have had to prove each individual investor's claim.  A valid assignment of each of the investors' claims would not allow Coquina

to proceed in this action as a "partnership," as it did, but rather would require Coquina to prove *each of the investors' claims*. *E.g, City Nat'l Bank of Coral Gables v. H. & B. Constr. Corp.*, 183 So. 2d 704, 704 (Fla. App. 1966) ("assignee occupies the same position as the assignor"). Coquina's fraud and aiding and abetting fraud claims are individual claims that require individualized showings of reliance and causation by each investor. *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984) (individualized proof of reliance is required in fraud claims because "each of the parties has [its] own separate and distinct contract and must make a determination as to which terms are important"); *Foreline Sec. Corp. v. Scott*, 871 So. 2d 906, 910 (Fla. App. 2004) ("[r]eliance means that [plaintiff] must show that [defendant] made a misrepresentation that [plaintiff] personally relied upon"). Because only three Coquina investors – two of whom were not even partners in Coquina – testified at trial, Coquina failed to present sufficient evidence for a reasonable jury to award damages on the other 28 investors' claims.[1]

Moreover, TD Bank is entitled to judgment as a matter of law on this basis on both Coquina's fraud claim and its aiding and abetting claim, as Coquina cannot prove as a matter of law that TD Bank caused any damages to its investors in respect of investments made in Rothstein settlements before August 17, 2009. As a matter of law, Coquina cannot recover any damages that it suffered before August 17, 2009, because Coquina did not present any evidence showing that it had any contact with anyone at TD Bank before that date.

Third, Coquina failed to present sufficient evidence for a reasonable jury to find that it was entitled to recover "as damages" from TD Bank the amounts it paid the Bankruptcy Trustee for the Rothstein Rosenfeldt Adler, P.A. (hereinafter, RRA) bankruptcy estate in settlement of

---

[1] Likewise, the three investors who testified did not provide any evidentiary basis to recover on their claims, even if their claims were validly assigned.

claims threatened against it.  It was Coquina's burden to establish the reasonableness of its settlement payments and the attorney's fees that it incurred to secure the settlement.  *GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 761 (11th Cir. 1987) (party seeking to recover settlement payments "could only recover so much of the settlement as it proved was reasonable in amount") (footnote and citations omitted); *In re Mirabilis Ventures, Inc.*, No. 6:09-cv-271-Orl-31DAB, 2011 WL 3236027, at *9 (M.D. Fla. July 28, 2011) (to prove settlement damages party "would have to show that the amount was reasonable in light of its potential liability") (footnote omitted).  The testimony of Coquina's expert that the RRA Bankruptcy Trustee had demanded millions of dollars to settle unknown threatened claims that the expert could not even identify is legally insufficient to establish that the payments made in settlement of those claims were reasonable.  *Mirabilis*, 2011 WL 3236027, at *6 ("[t]he Plaintiff cannot simply volunteer to pay a [settlement] … and then recover that sum as damages for the Defendant's alleged torts").  Because Coquina failed to present sufficient evidence for a reasonable jury to find that the amount it paid was reasonable in light of its potential liability to RRA's Bankruptcy Trustee or that TD Bank caused Coquina to incur the underlying potential liability for which that settlement was paid, it failed to establish the requisite evidentiary basis for an award of its settlement payments as damages.

Moreover, even if that were not so, as stated above, Coquina should not recover for payments made to the RRA Bankruptcy Trustee in settlement of claims relating to payments made by RRA to Coquina in respect of investments made before August 17, 2009, the date of Coquina's first contact with TD Bank.  The Court's stated concern regarding Coquina's right to recover damages incurred before August 17, 2009, bears directly on Coquina's claim that it is entitled to recover its settlement damages.  The individual investors made their first investments

CASE NO. 10-60786-Civ-Cooke/Bandstra

with Rothstein in April 2009 – months *before* any contact between Coquina and TD Bank. Coquina's expert admitted that she made no attempt to link the claims that Coquina settled with the RRA Bankruptcy Trustee to any particular investment in the Rothstein scheme. Coquina thus established no evidentiary basis for the jury to find that the amounts Coquina paid to settle the RRA Bankruptcy Trustee's threatened claims were based on payments Coquina received in respect of investments made *after* August 17, 2009. TD Bank is accordingly entitled to judgment as a matter of law on the purported settlement damages.

## INCORPORATED MEMORANDUM OF LAW

### STATEMENT OF FACTS

Coquina filed this action as an "investment partnership located in the state of Texas." D.E. 1:3. The Coquina partnership agreement identifies 18 "initial partners," and contemplates that additional persons or entities may become partners only by "execution of a Joinder agreeing to be a Partner herein, which must also be signed and approved by a Managing Partner." D. Ex.-104. Although Coquina elicited no evidence that any Joinders were actually executed, at least 31 individuals invested "by and through" Coquina. D.E. 695:1:4. Many of these individual investors were not, however, partners in Coquina and, the evidence shows that all individual investors made their own investment decisions and used Coquina only as a bookkeeping entity. D.E. 695:8-9 (Coquina existed "as a matter of convenience" for investors to "invest through it"). In the parties' Joint Pretrial Stipulation, TD Bank stated its intention to challenge Coquina's standing to recover those damages at trial. D.E. 461:27, 38 (including, as issues of law and fact to be determined at trial: "[w]hether Coquina has standing to assert its claims," "[w]hether Coquina is a valid legal entity," "[w]hether Coquina is a valid partnership," "[w]hose money was

invested through Coquina," and "[w]hat amount of damages Coquina is entitled to recover, if any").

Just before trial was scheduled to begin, Coquina attempted to "cure" its lack of standing with letters, dated October 21-22, 2011, signed by the 31 individual investors, in which the investors purported to assign their "collection rights" to Coquina, and to vest in Coquina a power of attorney.  D. Ex.-946.  The Coquina Letters, which were first produced by Coquina's counsel on October 26-27, 2011, actually confirmed that the individual investors – not the Coquina "partnership" – made all investment decisions, and suffered the alleged investment losses.

To summarize, Coquina claimed initially that it had suffered direct financial losses of at least $6,773,333, but later acknowledged, by producing the Coquina Letters, that its only "damages" consisted of losses allegedly sustained by its individual investors based on their own individual investment decisions.  D.E. 16:24-25.  In essence, Coquina abandoned its claim that it had suffered any "direct" partnership damages, and adopted a new argument that it had been assigned the claims of the individual investors.

At the same time, again only weeks before trial was scheduled to begin, Coquina also attempted to revise its damages allegations in its "Motion for Leave to Serve Defendant TD Bank with Plaintiff's Final Damages Calculation Based on Newly Liquidated Damages."  D.E. 495.  Coquina claimed that it had incurred $21 million in damages as a result of its recent settlement with the RRA Bankruptcy Trustee, and sought leave to provide a supplemental expert report on those damages.  *Id.*  Coquina did not seek leave to amend its pleadings, but instead simply asserted that a supplemental expert report would show that its "damages" had multiplied five-fold.  *Id*.  TD Bank opposed Coquina's motion, explaining that Coquina could not be allowed to amend its damages theory just before trial and that, if Coquina was permitted to do so,

TD Bank would at least be entitled to additional discovery based on the new damages claim. D.E. 507.  Over TD Bank's repeated objections (D.E. 507, 544, 557, 558, 574, 594), the Court allowed Coquina to go forward on its new purported damages claim at trial.  D.E. 564.

The case was tried over 21 days between November 8, 2011, through January 17, 2012. On December 13, 2011, pursuant to Federal Rule of Civil Procedure 50(a) and in furtherance of its *ore tenus* motion at the close of Coquina's case-in-chief, TD Bank moved for judgment as a matter of law on Coquina's remaining claims.  On December 16, 2011, the Court reserved its judgment on two of TD Bank's arguments – that TD Bank was entitled to judgment as a matter of law on any damages allegedly incurred with respect to investments made before August 17, 2009, and that TD Bank was entitled to judgment as a matter of law because Coquina had failed to provide any basis for its recovery of alleged "damages" from its settlement with the RRA Bankruptcy Trustee – but otherwise denied TD Bank's motion.

On January 18, 2012, the jury returned its verdict finding TD Bank liable on Coquina's claims for fraudulent misrepresentation and aiding and abetting fraud.  D.E. 748.  On January 26, 2012, the Court entered its final judgment, based on the jury verdict, awarding $16 million in compensatory damages and $17.5 million in punitive damages on Coquina's fraud claim, and $16 million in compensatory damages and $17.5 million in punitive damages as to Coquina's aiding and abetting fraud claim, for a total award of $67 million to Coquina.  D.E. 754.

## STANDARD OF REVIEW

Under Rule 50(b), a party may renew its motion for judgment as a matter of law after the jury has returned its verdict, if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party.  *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001).  "[The] district court's proper analysis is squarely and narrowly focused on the sufficiency of evidence."  *Chaney v. City of Orlando,* 483 F.3d 1221,

CASE NO. 10-60786-Civ-Cooke/Bandstra

1227 (11th Cir. 2007).  That is, "[t]he question … remains whether the evidence is 'legally sufficient to find for the party on that issue,' regardless of whether the district court's analysis is undertaken before or after submitting the case to the jury." *Id.* (citing Fed. R. Civ. P. 50(a)(1)). "If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict," this Court is obligated to grant a judgment as a matter of law.  *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1160 (11th Cir. 2008) (citation omitted).

## ARGUMENT

**I.     TD Bank Should Be Granted Judgment As A Matter of Law Because Coquina Has Not Demonstrated Any Damages to the Partnership, And It Does Not Have Standing to Assert the Claims For Damages Allegedly Suffered by Its Investors.**

Because the Coquina Letters do not assign the investors' actual claims, Coquina does not have legal standing to assert the investors' claims for damages.  Each of the Coquina Letters is signed by an investor, none of whom are plaintiffs in this action, and most of whom are not even partners in the Coquina entity.  The Coquina Letters assert that investors made investments "by and through" Coquina and that each "incurred losses when he/she invested in" the Rothstein Ponzi scheme.  D. Ex.-946.  The Coquina Letters purport to assign to Coquina "all rights to collect any and all losses or damages the Investor incurred in connection with his/her Investments." *Id.*

### A.     Under Florida law, a valid assignment of a claim must clearly assign that claim.

To create legal standing in an assignee under Florida law, the assignor must assign its actual claim, or its "chose in action," to the assignee.  *Spears v. West Coast Builders' Supply Co.,*

CASE NO. 10-60786-Civ-Cooke/Bandstra

133 So. 97, 98 (Fla. 1931); *Ginsberg*, 645 So. 2d at 496.[2]   The Supreme Court of Florida has held that a "chose in action" is "a right to personal things of which the owner has not the possession, but merely a right of action for their possession." *Spears*, 133 So. at 98 (citation and internal quotation omitted); accord *Fla. Citrus Nursery*, 570 So. 2d at 1356.   Florida courts generally allow the assignment of a chose in action, but the assignor must *specifically assign* the chose in action to the assignee. *Ginsberg*, 645 So. 2d at 496 (for a claim arising "out of an injury to property," "a party who subsequently takes title to the property, without receiving an assignment of that cause of action, may not pursue that cause of action").

A valid assignment of a claim, then, is one that includes language that "manifests [the assignor's] intention to transfer at least title or ownership, *i.e.*, to accomplish a completed transfer of the entire interest of the assignor in the particular subject of assignment." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997) (citations and quotations omitted).   Florida courts have uniformly held that assignments which do not clearly reference a cause of action do not assign that cause of action. *Ginsberg*, 645 So. 2d at 496 ("an assignment of all of the RTC's rights and interests in the mortgage and related collateral" made no "mention of, or attempt to, assign to Lennar any cause of action held by the RTC," and was not a valid assignment of the claims held by the RTC); *Fla. Citrus Nursery*, 570 So. 2d at 1356 (order of sale for property did not pass chose in action for inverse condemnation).   Only where the assignment specifically assigns the *claim* have Florida courts held that the assignee is the real party in interest, with legal standing to assert that claim. *Escandar v. So. Mgmt. & Inv. Corp.*,

---

[2] Florida law applies in determining whether the Coquina Letters validly assigned the claims of the investors. *ECI Mgmt. Corp. v. Scottsdale Ins. Co.*, 23 F.3d 354, 356 (11th Cir. 1994) (courts "refer to state law to identify the true owner of the legal interest at issue"); Wright and Miller, *Federal Practice and Procedure* § 1544 (to determine the owner of the legal interest, "the court must look to the substantive law creating the right being sued upon").

9

CASE NO. 10-60786-Civ-Cooke/Bandstra

534 So. 2d 1203, 1205 (Fla. App. 1988) (valid assignment of "all of Assignor's right, title and interest in and to that certain management agreement").[3]

### B.   The Coquina Letters assign only "collection rights" and not the individual investors' claims.

The Coquina Letters are signed by each of the investors who purportedly invested "by and through" Coquina, and purport to assign only "all *rights to collect* any and all losses or damages the Investor incurred." D. Ex.-946. The Coquina Letters do not assign the legal interests in the investors' *claims*, but only assign only the investors' rights "to collect" *the investors' proceeds*. The Coquina Letters accordingly do not assign the investors' claims against TD Bank under Florida law. *Ginsberg*, 645 So. 2d at 496 (assignment that made "no mention of, or attempt to, assign to Lennar any cause of action held by the RTC" did not assign claims held by the RTC). Indeed, the "right to collect" proceeds assigned in the Coquina Letters, and the power of attorney created in those letters, are distinguishable from an assignment of a chose in action:

> A provision by which one person grants another the power to *sue on and collect on a claim* confers on the grantee a power of attorney with respect to that claim. The grant of a power of attorney, however, *is not the equivalent of an assignment*

---

[3] The United States Supreme Court recently held that assignments of claims "for collection purposes" to billing and collection "aggregators" are sufficient to confer Article III standing under federal law. *Sprint Comm'ns. Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 271 (2008). The assignments in *Sprint* related to a federal statute requiring long-distance carriers to compensate payphone operators for customer calls, where approximately 1,400 payphone operators assigned "for purposes of collection all rights, title and interest of the [payphone operator] in the [payphone operator's] claims, demands or causes of actions." *Id.* at 272. The Supreme Court held that, under federal law, although the claims assigned "for collection purposes" were assigned so that the amounts recovered by the "aggregators" would be remitted to the assignor payphone operators, the assignment nonetheless manifested an intent to assign the claim itself, and thus was a valid assignment of a claim. *Id.* at 285-86. The assignments in *Sprint*, a case concerning Article III standing to bring a claim under a federal statute, did not involve Florida law and are very different from the assignments here: the assignments in *Sprint* assigned the *actual claims* (for "collection purposes") and not merely collection *rights*.

*of ownership*; and, standing alone, a power of attorney does not enable the grantee
to bring suit in his own name.

*Bayfront Partners, Inc.*, 106 F.3d at 17-18 (emphasis added) (citations and internal quotations

omitted); *see Titus v. Wallick*, 306 U.S. 282, 289 (1939) ("power of attorney to sue, standing

alone," does not "operate as an assignment to vest the attorney with such title or interest as will

enable him to maintain the suit in his own name").

Coquina's failure to obtain valid assignment of its investors' claims is not simply a

"procedural" matter, but rather a matter of standing.  *Celanese Corp. of Am. v. John Clark

Indus.*, 214 F.2d 551, 556 (5th Cir. 1954) (purpose of requirement that plaintiff has legal interest

in its claims "is to enable the defendant to avail himself of evidence and defenses that the

defendant has against the real party in interest, and to assure him finality of the judgment, and

that he will be protected against another suit brought by the real party at interest on the same

matter"); *Kumar Corp. v. Nopal Lines, Ltd.*, 462 So. 2d 1178, 1183 (Fla. App. 1985) (same).

Coquina purported to sue TD Bank only as a Texas-based "investment partnership," not as legal

representative of the investors, and because the claims of the individual investors were not

validly assigned to Coquina, it cannot assert those claims in this action.

**C.    Coquina does not have standing to assert the individual investors' claims and
has not demonstrated that the partnership as an entity relied on any
misrepresentations or incurred any damages.**

The Coquina Letters admit that *only the individual investors* − not the Coquina

partnership entity − suffered any alleged damages.  The individual investors' testimony similarly

makes clear that *only the individual investors* − not the Coquina partnership entity − could have

relied on any of the alleged misrepresentations in this case.  Each individual investor made his or

her own individual investment decision as to each of the individual opportunities to invest in a

Rothstein deal.  When Melvyn Klein was asked whether he "participate[d] in the management of

the investments on behalf of the group Coquina," he replied:  "No.  Everyone made their own individual decisions."  Trial Transcript, November 28, 2011 at 48.

In fact, by the investors' own admissions, the Coquina "partnership" did not act as a partnership at all.  The "partnership" existed only as a "matter of convenience" for investors. Klein testified:  "The first time that a number of people decided to invest in these investments, George Hawn indicated that a partnership existed already called Coquina.  And as a matter of convenience, he said that we could invest through it."  Trial Transcript, November 28, 2011 at 38.

Investors were allowed to invest "through" Coquina without being partners, and, indeed, many were not.  Trial Transcript, December 2, 2011 at 17 (family member investors were not partners); D. Ex.-104 (partnership agreement listing partners and providing that any new partners must sign a joinder agreement approved by a managing partner).  The Coquina "partnership" simply served as a pass-through, providing a bookkeeping function for the individual investors. Kathleen White, Coquina's corporate representative, testified that Coquina "was a partnership that was set up in order to accumulate a lot of small investments into one big investment," and "to accumulate funds from everybody who wanted to participate in that investment."  Trial Transcript, December 1, 2011 at 181.  Her job was "to take all of the funds that were received into the Coquina account from the RRA law firm and disburse them according to the ownership of that investment."  Trial Transcript, December 2, 2011 at 20.

The Coquina Letters are a failed attempt to cure Coquina's standing problem.  The Coquina letters do not validly assign the individual investors' claims, and  Coquina, as a partnership, does not have standing to assert those claims.  *Avila S. Condo. Ass'n v. Kappa Corp.*, 347 So. 2d 599, 607-08 (Fla. 1977) (association did not have standing to bring claims of

CASE NO. 10-60786-Civ-Cooke/Bandstra

the individual purchasers); *Schupak v. Florescue*, No. 92 Civ. 1189 (JFK), 1993 WL 256572, at *6 (S.D.N.Y. July 8, 1993) (where "[t]he fraudulently induced investment injured the plaintiff personally … the claim properly belongs to him, not the partnership"); *Glusband v. Fittin Cunningham Lauzon, Inc.*, 582 F. Supp. 145, 149 (S.D.N.Y. 1984) ("it is equally clear that plaintiff [receiver for a partnership] has no standing to assert claims which belong solely to the limited partners [in the partnership]").

The Coquina Letters also admit that each individual investor suffered their own losses. Klein and White testified repeatedly that the individual investors made investment decisions on each individual investment deal that was presented to them, not on behalf of the partnership, but on their own behalf. Accordingly, the only potential claims against TD Bank would be claims by individual investors, because only the individual investors could have possibly relied on any alleged misrepresentation by TD Bank. *Lance*, 457 So. 2d at 1011 ("In a situation such as this, involving multiple contractual sales, each of the parties has his own separate and distinct contract and must make a determination as to which terms are important to him. What one purchaser may rely upon in entering into a contract may not be material to another purchaser"). Because Coquina did not provide any evidentiary basis for the jury to find that Coquina relied on any alleged misrepresentation or that Coquina incurred any damage to the partnership itself, TD Bank is entitled to judgment as a matter of law.

II.     **If This Court Allows Coquina to Assert Individual Investors' Claims, The Court Should Enter Judgment As a Matter of Law Against Each Individual Investor.**

A.     **Coquina's burden of proof as the purported "assignee."**

As the purported assignee of the individual investors' claims, Coquina, stands in the shoes of those individuals, and must prove each element of each investor's claims. *Einstein's Sons v. Shouse*, 5 So. 380, 384 (Fla. 1888) (assignee "stands in the shoes of the" assignor); *H. &*

13

*B. Constr. Corp.*, 183 So. 2d at 704 (affirming summary judgment against assignee because "[t]he assignee occupies the same position as the assignor," and the assignor could not have recovered damages);  "The assignee steps into the shoes of the assignors and is subject to all equities and defenses that could have been asserted against the assignor had the assignment not bee made."  *Univ. Creek Assocs., II, Ltd. v. Boston Am. Fin. Group, Inc.*, 100 F. Supp. 2d 1337, 1341 (S.D. Fla. 1998) (quoting *State v. Family Bank of Hallandale*, 667 So. 2d 257, 259 (Fla. App. 1995)); *accord* 6 Am. Jur. 2d Assignments § 108 ("[t]he assignee cannot recover more than the assignor could recover").

        **B.**    **Coquina failed to present sufficient evidence for a reasonable jury to find that any individual investor relied on any statement made by TD Bank before August 17, 2009, and therefore cannot recover any alleged damages incurred before that date.**

Coquina has never alleged, much less proved, that any of its individual investors had any contact with any TD Bank representative with respect to investments made before August 17, 2009.   In its Civil RICO Case Statement, Coquina admitted that the first purported communication between an investor and TD Bank occurred in an August 17, 2009 telephone call.  D.E. 16.  Coquina also conceded that, notwithstanding its lack of communication with TD Bank, individuals began investing in Rothstein's structured settlements five months earlier, in April 2009, and made numerous investments with Rothstein before August 17, 2009.  Trial Transcript, November 14, 2011 at 227.  At trial, Klein admitted that investors completed approximately 15 deals, or "in that range," with Rothstein before they had any contact with anyone at TD Bank.  *Id.*[4]   Accordingly, Coquina cannot recover any alleged damages incurred

---

[4] In fact, White admitted during her testimony that the investors had already made verbal assurances to Rothstein that they would fund the new settlement *before* they received any communications from TD Bank on August 17, 2009.  Trial Transcript, December 2, 2011 at 87.

(continued . . .)

by individual investors before August 17, 2009.  *First Interstate Bank of Texas, N.A. v. S.B.F.I., Inc.*, 830 S.W.2d 239, 248-49 (Tex. Ct. App. 1992) (plaintiff could not recover damages for losses incurred prior to date when first misrepresentations were made).

> **C.**     **Coquina failed to present sufficient evidence for a reasonable jury to find that the individual investors relied on alleged representations by TD Bank.**

Reliance is an essential element of any fraud claim.  *Besett v. Basnett*, 389 So. 2d 995, 997 (Fla.  1980).  Individualized proof of reliance is required in fraud claims because "each of the parties has [its] own separate and distinct contract and must make a determination as to which terms are important."  *Lance*, 457 So. 2d at 1011; *Foreline Sec. Corp.*, 871 So. 2d at 910 ("[r]eliance means that [plaintiff] must show that [defendant] made a misrepresentation that [plaintiff] personally relied upon"); *Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 321 (M.D. Fla. 1997) (same).

The Coquina Letters make it clear that each investor suffered his or her own alleged individual losses as a result of his or her own individual participation in specific investments in specific settlements offered by Rothstein.  D. Ex.-946 (each investor "made the Investment by and through Coquina Investments" and "incurred losses when he/she invested in what turned out to be a Ponzi scheme").  The investors who testified admitted that Coquina was little more than a pass-through entity.  Klein, when asked to describe his relationship with Coquina, testified, "I invested through Coquina in the Rothstein TD Bank investments."  Trial Transcript, November 28, 2011 at 37.  Klein testified that he is "responsible for [his] own decision," and that "I take responsibility for myself, I made my own decisions."  Trial Transcript, November 14, 2011 at

---

(… continued)
Accordingly, Coquina also cannot demonstrate reliance or causation as to its August 17, 2009 investment.

CASE NO. 10-60786-Civ-Cooke/Bandstra

188.  Klein was asked whether he and other investors made their own decisions, and responded as follows:

> Q:    Is it fair to say, sir, that you made your own investment decisions?
>
> A:    Yes.
>
> Q:    In other words, Coquina didn't act as a group.  Each person made his or her own decision as to whether or not to invest in a particular deal, correct?
>
> A:    Yes.

*Id.* at 188; *see also id.* at 235 (Klein testified that White also made her own investment decisions); *see* Trial Transcript, December 2, 2011 at 18 (same testimony by White).   White also testified that each investor made his or her own decision *based on their own diligence and information*.  Trial Transcript, December 5, 2011 at 43-44 (investors listened to Klein, White, and Barrie Damson, and did "their own" diligence as well).  As a matter of law, each of these investors made his or her own decision and was required to prove his or her own reliance. However, 28 of the investors failed to testify or provide any evidence showing that he or she relied on an alleged misrepresentation, and the only three investors who testified at trial – two of whom were not even Coquina partners – could not have relied because the falsity of the alleged misrepresentations was obvious.

A person may not rely on a misstatement where the falsity of that misstatement is obvious to him.  *Besett*, 389 So. 2d at 998.  Here, Klein, White, and Damson claimed that they relied on Spinosa's August 17, 2009 "lock" letter, but the evidence showed that the falsity – even if it was false, which TD Bank contends it was not – of that "lock" letter should have been obvious to them.[5]   Although Coquina suggests that they relied on the representation that the

---

[5] Klein, by his own admission, did not read any of the Rothstein settlement documents for any of the deals after August 17, 2009, the first time that any of the individual investors allege that they

(continued . . .)

proceeds of their investments would be irrevocably locked, only a day later they received documents for a new Rothstein investment deal showing that their investment "proceeds" would be added to Rothstein's trust account, not to their "locked" account, D. Ex.-852, and nonetheless approved the deal and went ahead with the investment.  D. Ex.-505.

Because each of the investors made their own investment decisions, Coquina could not have made a decision on behalf of any of the investors, let alone all of them, in making investment decisions.  Moreover, Coquina failed to link each investment decision – even by the three investors whose testimony was presented to the jury – to a specific alleged misrepresentation by TD Bank.  As noted, none of the other investors testified at trial and Coquina presented no evidence of their reliance in making any of their investments.[6]  Indeed, Coquina presented no testimony that any other investors were even aware any of the alleged misrepresentations.  As a matter of law, there is no evidentiary basis for a reasonable jury to find that the non-testifying individual investors relied on any alleged misrepresentations.  *BDO Seidman, LLP v. Banco Espirito Santo Int'l*, 38 So. 3d 874, 882 (Fla. App. 2010) (it cannot "be inferred that every nontestifying noteholder had the same reliance as the testifying noteholder").

_____

(… continued)
had contact with anyone from TD Bank.  Trial Transcript, November 14, 2011 at 108-09, 231-32, 234.

[6] In fact, Klein and White admitted that *they*, not TD Bank, gave the other individual investors the information upon which those individuals decided whether to invest.  Trial Transcript, November 14, 2011 at 214 (Klein testified that White or Damson "would describe the key elements of the deal" to him and the other investors before each made their own individual decision); *see id.* (Klein further testifies, "Coquina was an entity that functioned well, you know, internally together and as either one or two people primarily, occasionally a third person, was really involved in looking at these, I certainly relied and had confidence in them").

> **D.**   **Coquina failed to present sufficient evidence for a reasonable jury to find that any alleged misrepresentation made by TD Bank was intended to defraud any of the individual investors other than White or Damson.**

Intent to defraud is also an essential element of Coquina's purported fraud claim on behalf of the investors. *Simon v. Celebration Co.*, 883 So. 2d 826, 833 (Fla. App. 2004). As the Restatement of Torts (Second) § 531 makes clear, liability for fraud only extends to "the persons or class of persons whom [the individual who makes the misrepresentation] intends or has reason to act … in reliance upon the misrepresentation." *See id.* at cmt. b (this rule does not extend to persons who the maker of the misrepresentation "neither intends nor has reason to expect that the misrepresentation will reach"); *accord Brown v. Chamax, LLC*, 51 So. 3d 552, 555 (Fla. App. 2010) (plaintiff could not show that maker of misrepresentation intended to misrepresent trust simply because he made misrepresentation to eventual trustee).

Here, Coquina failed to provide any evidentiary basis that anyone at TD Bank, even if they did make an alleged misrepresentation to one of the individual investors – Coquina failed to present sufficient evidence for a reasonable jury to find that misrepresentations were made – intended to defraud anyone other than White and Damson, the only investors to whom an alleged misrepresentation was purportedly made. Because there is no testimony or evidence that anyone at TD Bank intended for any alleged misrepresentation to reach anyone other than White or Damson,[7] only White and Damson have provided sufficient evidence to go to the jury on the "intent" element of their individual claims (assuming Coquina could bring those claims).

---

[7] Klein testified that he also heard Frank Spinosa say that there was a specific amount of money in the Coquina account, but that representation, even if it was made, was not made to Klein: Klein admitted on cross-examination that he was told by Rothstein to kept quiet on the call and that Spinosa was not told he was on the call. Trial Transcript, November 14, 2011 at 61, 245. Because Spinosa did not know that Klein was on the call, he could not have intended to defraud Klein; thus, Coquina cannot establish that Spinosa's statement gives rise to a fraud claim.

(continued . . .)

    **E.**    **Coquina failed to present sufficient evidence for a reasonable jury to find that TD Bank caused any damage to any of the individual investors other than Klein and White, or that any individual investor other than Klein and White was damaged.**

Both of Coquina's fraud-based claims also require that each individual investor establish causation. *Simon*, 883 So. 2d at 832-33 ("fraud cannot form the basis for recovery of damages unless the damages arise from the fraud and are causally connected to the fraud"); *In re Maxxim Med. Group, Inc.*, 434 B.R. 660, 683, 686 (Bankr. M.D. Fla. 2010) (judgment for defendant on aiding and abetting claim where plaintiff failed to show causation). Because none of the investors testified or provided evidence showing their alleged *individual* damages were caused by their alleged reliance on TD Bank's representations, Coquina cannot recover damages on behalf of those investors. *Fed. Deposit Ins. Corp. v. Ernst & Young*, No. 3-90-0490-H, 1991 WL 197111, at *2 (N.D. Tex. Sept. 30, 1991) ("[i]t is well settled that … an assignee may recover only those damages potentially available to his assignor") (citations and internal quotations omitted).

The testimony shows that *none* of the individual investors – not even the three who testified – suffered damages caused by TD Bank's alleged misrepresentations. Coquina has alleged, and Klein, White, and Damson testified, that Coquina suffered damages based on the purported "lock" letters, the first of which was allegedly received by Coquina on August 17, 2009. Trial Transcript, December 1, 2011 at 207-09. According to Coquina, that letter falsely promised an "irrevocable restriction," whereby disbursements from the account could only be made to Coquina. *Id.* Coquina claims that this letter, and the second "lock" letter it allegedly received in September, were false because the Coquina restricted account (the "1614 Account")

---

(… continued)
*Eastern Cement v. Halliburton Co.*, 600 So. 2d 469, 470-71 (Fla. App. 1992) (fraud requests "an intention by the *seller* that the *buyer* rely on the misrepresentation") (emphasis added).

CASE NO. 10-60786-Civ-Cooke/Bandstra

was not actually locked.  Trial Transcript, December 2, 2011 at 8 (the letter "says they can do things that they couldn't do").

There are two reasons why these alleged misrepresentations did not, as a matter of law and based on the evidence at trial, cause the investors' purported losses.  First, Coquina's own documents show that, during the time period the investors testified that they relied on purported misrepresentations from Spinosa, Coquina *knew* that *none* of its "proceeds" from Rothstein's investments were being placed in the 1614 account.  One day after receiving the first "lock" letter, on August 18, 2009, Coquina received new settlement documents from Rothstein showing that the investment "proceeds" would be deposited in Rothstein's trust account (the "0923 Account), not in the 1614 account.  D. Ex.-852.  Damson approved these documents, *see* D. Ex.-505, and Coquina went ahead with the investment, although it *knew* that those investment proceeds were not going to be placed in the "locked" account.  And, when Coquina received a wire transfer reflecting the investment proceeds from this settlement deal, the wire transfer *showed* that Rothstein was *not* sending the proceeds from the "locked" 1614 account.  Trial Transcript, December 2, 2011 at 93-95 (discussing P-529 and the incoming wire transfer).  TD Bank's alleged representations regarding the "lock" letter could not have caused the investors' purported losses because Coquina knew that its proceeds were not being placed in the "locked" account.

Second, the evidence presented in Coquina's case makes clear that, in fact, none of the investment "proceeds" were placed in the 1614 account during August or September 2009, and that Coquina knew as much.  Coquina's deals with Rothstein were conducted through Rothstein's trust accounts, not Coquina's 1614 account, and the evidence shows that no funds were transferred in or out of the 1614 account during August or September.  D. Ex.-769.

Coquina's "locked" 1614 account was not used in Rothstein's scheme during the period the investors claim that they relied on Spinosa's alleged misrepresentations. Rather, that account was simply created by Rothstein to help him – not anyone at TD Bank – convince the investors that their proceeds were restricted.

Thus, whether or not the 1614 account was "locked," White and Klein's alleged losses would have been the same, because Rothstein's scheme was conducted through a separate trust account. Trial Transcript, December 5, 2011 at 52-53 (White knew investment proceeds were being wired from Rothstein's trust account, not the 1614 account); Trial Transcript, December 2, 2011 at 93-95 (same). Because the alleged losses would have occurred even if Spinosa's alleged misrepresentations were true, those alleged misrepresentations cannot be the cause of those losses. *Adler v. William Blair & Co.*, 648 N.E.2d 226, 234 (Ill. App. Ct. 1994) (if losses would "have occurred even if defendant's misrepresentations had been true, then there was no causation) (internal quotation omitted); *see also Morgan Stanley & Co. Inc. v. Coleman (Parent) Holdings Inc.*, 955 So. 2d 1124, 1129 (Fla. App. 2007).

**III.  TD Bank Is Entitled to Judgment as Matter of Law on the Individual Investors' Purported "Damages" From Their Settlement with the RRA Bankruptcy Trustee Because Coquina Failed to Establish an Evidentiary Basis for Those Purported "Damages."**

Over TD Bank's repeated objections, D.E. 507, 544, 557, 558, 574, 594, this Court allowed Coquina to revise its damages theory just weeks before trial. The revised damages theory included a $12.5 million payment from Coquina to the RRA Bankruptcy Trustee to settle threatened claims against Coquina and the individual investors. D.E. 545-1; D.E. 570.[8] Because Coquina failed to demonstrate either the reasonableness of its settlement or its motivation for

---

[8] This payment purportedly settled claims the RRA Bankruptcy Trustee intended to bring against Coquina and its "partners, managing partners, investors, [and] representatives." D.E. 545-1.

CASE NO. 10-60786-Civ-Cooke/Bandstra

settling those claims and moreover, did not provide any evidentiary basis for the jury to find with reasonable certainty that some portion of the settlement "damages" was caused by TD Bank, the Court should enter judgment for TD Bank on those purported damages.

> **A.    Coquina failed to present sufficient evidence for a reasonable jury to find either its settlement was reasonable or its reasons for settling.**

An individual investor could only recover such portion of the settlement payments allegedly paid to the RRA Bankruptcy Trustee that they showed was reasonable to settle the claims, and which was caused by TD Bank.  *Syndicate 627*, 809 F.2d at 761 (party seeking to recover settlement payments "could only recover so much of the settlement as it proved was reasonable in amount and a consequence of GAB's breach of duty") (citations removed); *Mirabilis*, 2011 WL 3236027, at *9 (to prove settlement damages party "would have to show that the amount was reasonable in light of its potential liability").[9]  Coquina presented neither testimony nor other evidence demonstrating the reasonableness of the settlement payments made to the RRA Bankruptcy Trustee.[10]  *Syndicate 627*, 809 F. 2d at 762 (finding that the party

---

[9] Coquina's claim that TD Bank's conduct proximately caused Coquina's settlement "damages," although it arises out of Coquina's tort claims, can be likened to an indemnification claims. *Mirabilis*, 2011 WL 3236027, at *6 ("[a]lthough Mirabilis is proceeding under tort theories rather than an indemnification theory, the situation is analogous to an indemnification scenario, in which Party A settles a claim brought by Party B and then attempts to recover the amount of the settlement from its indemnitor").  To recover its purported settlement damages, then, Coquina was required to prove that its settlement was reasonable and motivated by its potential liability to the RRA Bankruptcy Trustee. *Syndicate 627*, 809 F.2d at 761 n.10 (reasonableness of settlement depends upon "what a reasonably prudent person in the position of the defendant would have settled for on the merits of the plaintiff's claims") (quoting *Home Ins. Co. v. Advance Mach. Co.*, 443 So. 2d 165, 168 (Fla. App. 1983)).

[10] For the reasons stated in TD Bank's Response in Opposition to Plaintiff's Second Motion for Leave to Amend its Exhibit List, D.E. 668, TD Bank respectfully submits that the bankruptcy court order approving the settlement is irrelevant and inadmissible hearsay, and should not be considered by this Court.  *See* D.E. 668 (citing cases, including *U. S. Steel, LLC v. TIECO, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001) (admitting another judge's opinion and factual findings is an abuse of discretion:  "the jury, not [the other judge], [i]s charged with making factual findings
(continued . . .)

seeking to recover amounts paid as settlement "introduced no evidence whatsoever to establish why it settled and whether the settlement was reasonable"); *Gulf Group Holdings, Inc. v. Coast Asset Mgmt. Corp.*, 516 F. Supp. 2d 1253, 1263 (S.D. Fla. 2007) (to recover settlement damages party "must prove actual liability and the reasonableness of the settlement"); *Mirabilis*, 2011 WL 3236027, at *9 (without providing evidence of reasonableness of settlement payments, "no reasonable factfinder could determine Mirabilis's potential liability").[11]

Coquina's damages expert, Maria M. Yip, did not testify that she had considered or opined on the reasonableness of Coquina's settlement or Coquina's motivation for settling.[12] Yip admitted that she never saw or reviewed the "demand package" detailing the RRA Bankruptcy Trustee's preference and usury claims against Coquina and its investors, and that she did not even know what claims the RRA Bankruptcy Trustee threatened to bring against Coquina and its investors. Trial Transcript, December 9, 2011 at 29-30. Yip testified that she had no idea why the individual investors received individual releases, or what they had been charged with or released from. *Id.* at 34-35. Moreover, Yip admitted that she made no inquiry into the

---

(… continued)

on [the] allegations in this case) and *United States v. $125,938.62*, 537 F.3d 1287, 1292 (11th Cir. 2008) ("none of the relevant facts found in the judgment of conviction were admissible in the district court").

[11] Coquina also did not introduce any expert testimony or testimony by anyone participating in the settlement to demonstrate its reasonableness. *Syndicate 627*, 809 F. 2d at 762 ("expert testimony and other evidence relating to the strength of the [complaining party's] claim was not only relevant, but absolutely essential"). TD Bank has consistently maintained that this evidence is required. TD Bank requested, Coquina opposed, and this Court denied leave to discover this very evidence by taking pretrial depositions of attorneys from the four law firms that allegedly represented Coquina in connection with the RRA bankruptcy case and the settlement (and whose fees Coquina now seeks to recover). D.E. 557.

[12] Yip's report on the settlement damages "revised [her] damages computation to incorporate the settlement between the Trustee and Coquina," but did not make any determination as to Coquina's potential liability or to the reasonableness of the settlement. D.E. 526-1.

CASE NO. 10-60786-Civ-Cooke/Bandstra

reasonableness of the legal fees purportedly incurred by Coquina in paying *four* different law firms to defend the investors against the RRA Bankruptcy Trustee's claims; she did not know what the lawyers did, could not tell what services they had provided based on the heavily redetected form of those bills as presented to her, and simply assumed that, because Coquina paid the bills, no duplicative services had been provided. *Id.* at 46-48. Yip essentially conceded that she had not been retained to opine on whether the settlement with the RRA was reasonable (*see id.* at 29-35 (admitting that she never saw or inquired about any of the documents threatening to bring claims against Coquina or the investors)).

"[T]his is a tort case, not an indemnification case. Nonetheless, the same underlying considerations of fairness and due process apply. The Plaintiff cannot simply volunteer to pay a sum … and then recover that sum as damages for the Defendants' alleged torts." *Mirabilis*, 2011 WL 3236027, at *6. Because Coquina failed to provide any evidence showing that its purported settlement payments were reasonable in light of the potential liability posed by the threatened claims, it should not have been able to recover those "damages."

Moreover, Coquina failed to present any evidence showing that TD Bank was the cause of the potential liability to the RRA Trustee that justified the settlement payments. Indeed, Coquina failed to explain or provide any evidence showing that the settled claims related to TD Bank's purported conduct. *Mirabilis*, 2011 WL 3236027, at *5 (under Florida law plaintiff is required to show that settlement payments claimed as damages were "a natural, proximate, probable or direct consequent of the [defendant's] act") (quoting *Taylor Import. Motors, Inc. v. Smiley*, 143 So. 2d 66, 68-69 (Fla. App. 1962)). TD Bank is entitled to a directed verdict on those damages.

**B.** **Coquina failed to demonstrate that its purported settlement payments relate to payments received from RRA in respect of investments made after August 17, 2009.**

The settlement payment to the RRA Bankruptcy Trustee was the third of three transfers that existed between Coquina and RRA:

- First, Coquina (or actually, as described above, individual investors investing through Coquina) made payments to RRA in the form of investments in the phony RRA settlements; these investments began in April of 1009 and continued after Coquina's first contact with TD Bank on August 17, 2009;

- Second, RRA made transfers to Coquina purportedly representing returns on these investments; again, these transfers were made both before and after August 17, 2009;

- Third, in settlement of "avoidable transfers and other claims" that the RRA Bankruptcy Trustee threatened to bring (but never actually brought) against Coquina and its investors in respect of those transfer, Coquina made a $12.5 million payment to the RRA Bankruptcy Trustee.  D.E. 545-1.  *See* III.A, *supra*.

Coquina's $12.5 million settlement payment does not define, and Coquina did not set forth any evidence explaining, what portion of that settlement payment was made to resolve "avoidable transfers and other claims" arising from payments received from RRA from investments made *before* August 17, 2009.  Yip admitted that the $12.5 million payment is not attributable to any particular Rothstein settlement deals or RRA payments.  Trial Transcript, December 9, 2011 at 44.  However, as a matter of law, Coquina is not entitled to recover damages from TD Bank for settlement payments it made to resolve the RRA Bankruptcy Trustee's claims for transfers made to Coquina in respect of investments made *before* August 17, 2009.

Coquina failed to provide any evidence showing that all or any definable portion of the settlement payments to the RRA Bankruptcy Trustee relate to transfers received from RRA with respect to investments made *after* August 17, 2009, and therefore it cannot demonstrate its damages with reasonable certainty.  There is no evidentiary basis on which the jury could have determined what portion of the $12.5 million settlement payment – if any at all – was attributable to returns received from RRA on investments that were made after Coquina's first contact with TD Bank on August 17, 2009.  This is a straightforward issue of causation:  if TD Bank could not have been the cause of any investments made by Coquina or its individual investors prior to August 17, 2009, then similarly TD Bank cannot be the cause of any portion of the settlement payment that Coquina made to resolve claims arising from returns on those pre-August 17, 2009 investments.

### C.   The settlement payments are contingent and cannot be demonstrated with reasonable certainty.

Coquina was required to demonstrate that the amount of damages can be estimated with a "reasonable degree of certainty," which it did not.  *Ctr. Chem. Co. v. Avril, Inc.*, 392 F.2d 289, 290 (5th Cir. 1968) ("There can be no recovery under Florida law where the evidence is not sufficient to enable the jury to assess damages with a reasonable degree of certainty without leaving the amount awarded to speculation and conjecture."); *Aldon Indus., Inc. v. Don Myers & Assocs.*, 517 F.2d 188, 191 (5th Cir. 1975) ("[p]roof must show with reasonable certainty that the plaintiff suffered damages").  But even if this Court finds that Coquina and its investors did provide evidence regarding the reasonableness of their settlement with the RRA, and that Coquina established that some ascertainable part of the settlement payments relate to payments received from RRA in respect of investments made after August 17, 2009, the settlement payments are contingent and were not demonstrated with reasonable certainty.

There are two components to Coquina's obligations under its Settlement Agreement with the RRA Bankruptcy Trustee.  First, the $12.5 million payment, which was made by the individual investors through Coquina, is contingent because the Settlement Agreement expressly contemplates that amount or some portion of it may be repaid to Coquina from the RRA bankruptcy estate in respect of its "allowed general unsecured claim."  D.E. 545-1.[13]  An unknown portion of the $12.5 million payment Coquina made to the RRA Bankruptcy Trustee in settlement, and now seeks to recover from TD Bank, can be recovered by Coquina from the RRA bankruptcy estate as a payment on that "allowed general unsecured claims."  Because the payment is contingent on the outcome of the RRA bankruptcy case – which, as Yip admitted, could be pending for years – Coquina did not demonstrate with reasonable certainty that it has suffered damages by making the payment.  Trial Transcript, December 9, 2011 at 37.

The second component of settlement payments also is contingent, if not completely speculative, as that component cannot be determined with reasonable certainty before being presented to the jury, because it was based on *the jury's own verdict*.  The payments are based on a percentage of Coquina's "net recovery" *in this case*:  the amount owed to the RRA Bankruptcy Trustee can be zero (if Coquina is not awarded any damages) or some unknown sum that Coquina cannot possibly determine until *after* the jury verdict.  D.E. 545-1.  Yip admitted that the jury would have to use a formula or calculate what it should award based on what it expected Coquina to have to then turn over to the RRA Bankruptcy Trustee, saying that doing so is "the only way that any of these damages make any sense."  Trial Transcript, December 9, 2011 at 33.  Accordingly, Coquina improperly presented a purely speculative theory to the jury.  *Brough v.*

---

[13]  Consistent with this provision, Coquina has wasted little time in filing its Proof of Claim in the RRA bankruptcy matter.  *See* D.E. 640-1.

CASE NO. 10-60786-Civ-Cooke/Bandstra

*Imperial Sterling Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002) (reversing jury award and holding that the district court erred in denying defendant's judgment as a matter of law where "[t]he jury could only award [plaintiff] damages by speculating").

**IV.    TD Bank Is Entitled To Judgment As A Matter Of Law On Coquina's Claim For Attorney Fees.**

Coquina claimed in its Complaint and in the parties' Joint Pretrial Stipulation that, if it was successful in prosecuting its RICO claims under 18 U.S.C. § 1964, it would be entitled to attorney fees in this litigation. D.E. 1, 461. This Court has dismissed both of Coquina's RICO claims. D.E. 547:13-23. Because Coquina has not and cannot identify any other basis for its recovery of fees in this case, TD Bank is entitled to judgment as a matter of law on Coquina's claim for attorney fees.

<u>**CONCLUSION**</u>

WHEREFORE, TD Bank respectfully requests that this Court enter judgment as a matter of law in TD Bank's favor as to the fraudulent misrepresentation (Count III) and aiding and abetting fraud (Count IV) claims asserted by Coquina in its Complaint.

CASE NO. 10-60786-Civ-Cooke/Bandstra

Respectfully submitted this 8th day of February 2012.

GREENBERG TRAURIG, P.A.
333 Avenue of the Americas
Miami, Florida  33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717


 _/s/  Mark P. Schnapp_
MARK P. SCHNAPP
Florida Bar No. 501689
*schnappm@gtlaw.com*
HOLLY R. SKOLNICK
Florida Bar No. 390860
*skolnickh@gtlaw.com*



GREENBERG TRAURIG, P.A.
GLENN E. GOLDSTEIN
Florida Bar No. 435260
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL  33301
Telephone:  (954) 765-0500
Facsimile:   (954) 765-1477

and

GREENBERG TRAURIG, LLP
DONNA M. EVANS
Massachusetts Bar No. 554613
(admitted *pro hac vice*)
One International Center
Boston, MA  02110
Telephone:  (617) 310-6000
Facsimile:   (617) 310-6001

*Attorneys for TD Bank, N.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of February, 2012, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   */s/  Mark P. Schnapp*
MARK P. SCHNAPP

## SERVICE LIST

David Scott Mandel, Esq.
Nina Stillman Mandel, Esq.
Jason Brent Savitz, Esq.
Mandel & Mandel LLP
Alfred I. DuPont Building
169 East Flagler Street
Suite 1200
Miami, Florida  33131
Telephone:  (305) 374-7771
Facsimile:  (305) 374-7776
*dmandel@mandel-law.com*
*nsmandel@mandel-law.com*
*jsavitz@mandel-law.com*

*Counsel for Plaintiff Coquina Investments*

*BOS 46,888,631v4 2-6-12*