# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 10-60786-Civ-COOKE/BANDSTRA

COQUINA INVESTMENTS,

     Plaintiff,

vs.

SCOTT W. ROTHSTEIN and TD BANK, N.A.,

     Defendants.

_____/

## OMNIBUS ORDER ON POST-TRIAL MOTIONS

THIS MATTER is before me on Defendant TD Bank, N.A.'s Renewed Motion for Judgment as a Matter of Law (ECF No. 760) and Defendant TD Bank, N.A.'s Motion for New Trial, to Alter and Amend Judgment, and for Remittitur (ECF No. 759). On September 25, 2012, I held a hearing on these motions. I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons provided, the Motions are denied.

### I. BACKGROUND

Coquina Investments ("Coquina"), a Texas partnership, brought this action against TD Bank, N.A. ("TD Bank" or the "Bank") and Ponzi schemer and former attorney Scott Rothstein.[1] Coquina alleged that TD Bank aided and abetted Rothstein's fraud against Coquina and made

---

[1] The nature of Rothstein's Ponzi scheme is set out in detail in this Court's Omnibus Order on Cross Motions for Summary Judgment. (ECF No. 547). In brief, Rothstein orchestrated a Ponzi scheme from 2005 to November 2009, as chairman and CEO of the now-defunct Florida law firm of Rothstein Rosenfeldt Adler, P.A. ("RRA"). As part of the scheme, Rothstein offered to investors the opportunity to purchase structured settlements from the settlement of lawsuits with high-profile defendants for large sums of money. Rothstein told investors that certain plaintiffs, who were RRA clients, wished to sell their interest in their structured settlements for an immediate lump sum payment. The structured settlements, however, turned out to be fictitious. Rothstein and RRA had several bank accounts at TD Bank, which purportedly held settlement payments and investor funds.

fraudulent misrepresentations to Coquina.[2]

The jury trial in this matter began on November 8, 2011, and concluded on January 18, 2012.  Coquina's first witness was TD Bank's former Regional Vice President Frank Spinosa, who asserted his Fifth Amendment privilege to all substantive questions regarding his involvement with the Rothstein Ponzi scheme and with Coquina.  Coquina called as witnesses Coquina partners Melvin Klein, Kathleen White, and Barrie Damson, who testified that the partnership made a number of investments from April to September 2009 with Rothstein after meeting with him and conducting their own due diligence.  Coquina's partners confirmed that they received "lock letters" on TD Bank letterhead and signed by Spinosa, which indicated that TD Bank had restricted a specified account so that all funds in the account could only be distributed to Coquina.  On August 17, 2009, the Coquina witnesses testified that they met with Spinosa, who confirmed that Coquina's account was segregated and contained $22 million.  The Coquina witnesses testified that they decided to make more investments after receiving Spinosa's assurances.

Coquina also called as witnesses several current and former TD Bank employees to discuss TD Bank's anti-money laundering monitoring systems, its policies, high-level employees' commission system, and the employees' handling of RRA's accounts.  Former TD Bank Regional Vice President Michael Woody testified that he did not obtain financial statements, tax returns, or other documents before deciding to grant Rothstein a line of credit.  Wendy Litterio, Spinosa's former administrative assistant, testified that she set up meetings between TD Bank employees and Rothstein and other members of the RRA law firm, she described the numerous overdraft reports she saw on the RRA trust accounts, sometimes reflecting millions of dollars overdraft, and she discussed numerous e-mails regarding holds on

---

[2] This Court dismissed Coquina's RICO claims at the summary-judgment phase.  (ECF No. 547).

RRA accounts and questionable deposits.  Ms. Litterio testified she received copies of e-mails from Rothstein to Spinosa to draft certain "lock letters," she typed up the "lock letters" on TD Bank letterhead, and Spinosa sent them to Rothstein.  Through the testimony of Rosanne Caretsky, a TD Bank Manager, Coquina established that the instructions contained in the "lock letters" were not the same instructions Spinosa gave to Caretsky about placing a note on Rothstein's account—the "lock letters" stated that all funds in the specified account would only be distributed to Coquina, but the note placed on the account said no one could debit the account without Rothstein's permission.

Coquina called two experts to prove its case.  Its banking expert, Catherine Ghiglieri, testified about anti-money laundering ("AML") and Bank Secrecy Act ("BSA") requirements and compliance issues, and provided conclusions that TD Bank ignored "red flags" with respect to the RRA accounts.  Its damages expert, Maria Yip, went through the wire transfers Coquina made to Rothstein, the money it received back from Rothstein as "returns" on its investment, and the payments Coquina made and would have to make pursuant to its settlement with the RRA Bankruptcy Trustee.[3]

Finally, Coquina called certain of Rothstein's co-conspirators to testify about the mechanics of Rothstein's fraud, including creating fake TD Bank websites and posing as a plaintiff who settled a case during a meeting with Coquina.

TD Bank called several Bank employees, who testified that the Bank properly generated fraud and AML alerts on the RRA accounts, that Bank investigators reviewed any alerts relating to the RRA accounts, conducted an investigation according to Bank policy and regulatory requirements, and concluded there was no suspicious activity with respect to those accounts.  TD

---

[3] Herbert Stettin is the appointed trustee (the "RRA Trustee" or the "RRA Bankruptcy Trustee") overseeing the RRA bankruptcy proceedings.  *See In re Rothstein Rosenfeldt Adler, P.A.*, Case No. 09-34791-RBR (Bankr. S. D. Fla.).

Bank questioned Damson and White to show that they did not conduct sufficient due diligence and the Rothstein deals were simply too good to be true, suggesting they should have known that the investments were fraudulent.

TD Bank also called two experts to testify—Ivan A. Garces and Samuel Rubin.  Garces testified about TD Bank's compliance with AML/BSA requirements, concluding that TD Bank's monitoring systems were reasonable.  Rubin, a forensic expert, testified that several e-mails and documents purporting to be from TD Bank, were in fact forged on RRA computers.

On January 18, 2011, the jury returned a verdict in favor of Coquina and against TD Bank on the fraudulent misrepresentation and aiding and abetting claims.  The jury awarded Coquina $16 million in compensatory damages for each claim and $17.5 million in punitive damages for each claim.

On February 8, 2012, TD Bank filed a motion for judgment as a matter of law on both claims pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, and a motion for a new trial and remittitur pursuant to Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure.  I will consider each motion below.

## II. LEGAL STANDARDS

### A.  Fed. R. Civ. P. Rule 50(b)

Judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure is appropriate "when there is insufficient evidence to prove an element of the claim, which means that no jury reasonably could have reached a verdict for the plaintiff on that claim."  *Collado v. United Parcel Serv., Co*., 419 F.3d 1143, 1149 (11th Cir. 2005).  The court must draw all inferences in favor of the non-moving party when reviewing the evidence.  *Id*.  The non-moving party, however, "must put forth more than a mere scintilla of evidence suggesting that reasonable

minds could reach differing verdicts." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1312 (11th Cir. 2006).

### B.  Rule 59(a)(1)(A)

A district court may grant a new trial "for any reason for which a new trial has heretofore been granted in actions at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A).  "A judge should grant a motion for a new trial when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc.,* 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotation marks omitted).

A new trial is warranted for an evidentiary error "only where the error has caused substantial prejudice to the affected party." *Peat, Inc. v. Vanguard Research, Inc.,* 378 F.3d 1154, 1162 (11th Cir. 2004) (citations omitted).  To determine whether improperly admitted evidence affected the verdict, a court should consider the number of errors, the closeness of the factual dispute, the prejudicial effect of the evidence, whether counsel intentionally elicited the evidence or focused on the evidence during the trial, and whether the court gave any cautionary or limiting instructions.  *See id.*  "Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence." *Lipphardt,* 267 F.3d at 1186 (internal quotation marks omitted).

### III.  ANALYSIS

### A.  TD Bank's Rule 50(b) Motion

### 1.  *Evidence of Coquina's Losses Incurred as a Partnership*

The parties agree that Coquina is a proper real party in interest, entitled to prove

partnership damages as a result of its investments with Rothstein.  (*See* TD Bank Reply at 3).
TD Bank contends, however, that Coquina failed to prove partnership damages at trial, and
therefore the Bank is entitled to judgment as a matter of law.  TD Bank also contends that the
evidence shows only the individual investors suffered damages, and Coquina does not have
standing to assert the individual investors' claims.  I must therefore determine whether Coquina
failed to prove partnership damages at trial.  If it did, I must determine whether Coquina has
standing to assert the individual investors' claims.

The evidence at trial demonstrated that Coquina was a Texas partnership headed by three
families—Hawn, Damson, and Klein.  White testified that the partners set up Coquina to
accumulate funds into a large "pot" to allow them to make larger investments as a group.  The
evidence shows that Coquina partners Damson and White collected information about
Rothstein's investments and TD Bank's accounts from Rothstein, Mike Szafranski, Frank
Spinosa, and other sources, and conducted due diligence into the structured settlement
investment opportunity.  Damson, Klein, and Hawn decided to make the initial investment with
Rothstein in April 2009, and met with Spinosa on August 17, 2009 to obtain further assurances
about the RRA trust account at TD Bank.  Coquina presented sufficient evidence to show that
Spinosa (and Rothstein) understood that Coquina was the investor, not the individual partners.

After Hawn, Damson, and Klein made the decision to invest on behalf of the partnership,
they presented the investment opportunity to all of Coquina's investors.  Each individual partner
made his or her own decision about whether to participate in the Rothstein structured
settlements.  Some of the partners' family members (who were not members of the partnership)
also made investments.  Each of the individual investors could not select personal investments to
make through Coquina; rather, certain partners would decide to make a particular investment,

and the individual partners could agree or decline to transfer funds to Coquina to join in that particular investment. The investors who decided to invest in the deal deposited their money into Coquina's bank account. Coquina then took all the deposited money in its account and made the investment in the partnership's name. Any profits Coquina received on the investment were distributed to the investors in proportion to their initial investment percentage.

The evidence at trial showed that Coquina deposited a total of $37.7 million in RRA's TD Bank account and Rothstein paid out about $31 million to Coquina in investment "returns." At base, Coquina suffered an initial $6.7 million in losses, as well as around $750,000 in interest loss. On May 5, 2010, the RRA Trustee made a demand upon Coquina, not the individual investors, to "claw back" any payments Coquina received from Rothstein in connection with its investments with him in order to redistribute those funds through the bankruptcy process. Coquina, not the individual investors, eventually entered into a settlement agreement with the RRA Trustee.

The evidence presented at trial was sufficient to show that the partnership, rather than the individual investors, made the investments in Rothstein's structured settlements, and suffered a loss as a result. The partnership's purpose is to accumulate funds to make large investments. The evidence showed that certain partners conducted the due diligence on behalf of the partnership, not themselves individually. They met with Rothstein and Spinosa on behalf of the partnerhsip, and ultimately decided to make this particular investment. That decision was presented to the individual partners, who then chose whether to contribute to the partnership "pot." The evidence proffered at trial established that Coquina purchased each investment with Rothstein in the partnership's name. Coquina paid for the investment with funds from its partnership account. Rothstein transferred funds from RRA's TD Bank bank accounts to

Coquina's bank account.  The investment-related documents listed Coquina as the investor. None of Coquina's individual partners made any investments with Rothstein in their own names. The partnership made distributions to the investing partners in proportion to their investment.

The fact that the individual partners ultimately lost funds because they were the ones who took the money out of their pockets to deposit into the partnership bank account does not undermine a finding that Coquina, the partnership, made the investment using partnership funds and suffered the subsequent losses.  The evidence was sufficient for a reasonable jury to find that the partnership made a series of investments and deposited money into RRA's TD Bank account, which resulted in monetary losses to the partnership.  Judgment as a matter of law is denied on this ground.

### 2.  *Evidentiary Basis for Jury's Finding on Each Claim*

TD Bank makes a series of related arguments that, if this Court finds that Coquina may raise claims on behalf of individual investors, judgment as a matter of law is appropriate because Coquina failed to provide sufficient evidence of each element of either claim as to each individual investor.  TD Bank also argues that Coquina cannot recover any alleged damages made before August 17, 2009, because it failed to present sufficient evidence for a reasonable jury to find that any investor relied on TD Bank's statements before that date.  TD Bank makes this argument as to Coquina's aiding and abetting claim and its fraudulent misrepresentation claim.

To state a cause of action for aiding and abetting fraud, a plaintiff must allege (1) that there existed an underlying fraud, (2) the defendant had knowledge of the fraud, and (3) the defendant provided substantial assistance to advance the commission of the fraud.  *ZP No. 54 Ltd. P'ship v. Fidelity & Deposit Co. of Md.*, 917 So. 2d 368, 372 (Fla. Dist. Ct. App. 2005).  As

discussed above, the evidence at trial sufficiently showed that Coquina acted as a partnership. Coquina presented sufficient evidence of the existence of an underlying fraud—Rothstein's Ponzi scheme in which Coquina invested.   Coquina presented sufficient evidence for a reasonable jury to find that TD Bank, through Spinosa, Caretsky and other TD Bank employees, knew about the fraud and ignored numerous "red flags" with respect to the RRA accounts. Coquina also presented sufficient evidence for a jury to find that TD Bank provided substantial assistance to advance the commission of the fraud by making misrepresentations to Coquina about purported account restrictions and the amount of money in its accounts, ignoring red flags and placing notes on the RRA accounts to prevent other TD Bank employees from taking phone calls about the accounts.[4]

Finally, the evidence showed that Rothstein operated this Ponzi scheme using TD Bank accounts from at least April 2009 to November 2009, the period in which Coquina made its investments.   The evidence sufficiently showed Coquina suffered damages as a result of TD Bank's aiding and abetting Rothstein's fraud against Coquina during that time period.   For these reasons, judgment as a matter of law on this claim due to lack of evidence is inappropriate.

To state a cause of action for fraudulent misrepresentation, a plaintiff must prove:  "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985).  Having determined that Coquina acted as a partnership, I find that there was sufficient evidence for a jury to find that TD Bank (through Spinosa and other TD Bank employees) knowingly made fraudulent misrepresentations to Coquina (through its agents

---

[4] Moreover, I ruled that, as a sanction for TD Bank's role in discovery violations, that the facts that TD Bank's monitoring and alert systems were unreasonable and that TD Bank had actual knowledge of Rothstein's fraud be taken as established for purposes of this action.  (*See* Omnibus Order, ECF No. 911).

White, Damson, and Klein), with the intention that Coquina rely on such statements, and Coquina (through its agents) did so rely, to its detriment.

White testified that Coquina decided that it would not make additional investments without assurances from TD Bank that the trust account would be restricted and the proper amount of money was in the trust account. On August 17, 2009, Coquina representatives Damson and Klein met with Spinosa to obtain assurances about the RRA account and the amount of money deposited in Coquina's trust account. There is sufficient evidence for a jury to find that, relying on Spinosa's assurances, Coquina decided to make further investments totaling $24 million with Rothstein. Coquina put forth sufficient evidence for a reasonable jury to find that Spinosa's statements were in fact false, i.e., it was not possible for TD Bank to restrict the accounts in the manner described in the "lock letters" and the amount of money Spinosa said TD Bank was holding for Coquina in RRA trust accounts (i.e., $22 million) was inaccurate. Coquina also put forth sufficient evidence (through, at a minimum, Spinosa's, Klein's, and White's testimonies) for a jury to find that Spinosa made these statements to induce Coquina's reliance.[5]

For the reasons stated above, there was sufficient evidence for the jury to make each of the findings reflected in the verdict form. There was also sufficient evidence for a reasonable jury to grant $16 million in compensatory damages, which is less than the total amount of investments Coquina established that it made after August 17, 2009. Judgment as a matter of

---

[5] I agree with TD Bank that the evidence shows that the first time anyone at Coquina had any contact with anyone at TD Bank was on August 17, 2009. It follows that there is insufficient evidence for a reasonable jury to find TD Bank liable, on the fraudulent misrepresentation claim, for any losses Coquina suffered before that date. The record, however, does not indicate that the jury did so. The verdict form reflects that the jury specifically found, by a preponderance of the evidence presented, each element of a fraudulent misrepresentation claim. The verdict form makes no reference to any dates or any time frame. The evidence presented at trial indicated that Coquina invested a total of $24 million after August 17, 2009. The jury awarded $16 million in compensatory damages on the fraudulent misrepresentation claim. The damages amount does not exceed the amount invested after Coquina met with Spinosa, indicating the jury properly considered the evidence and did not award damages based on losses Coquina suffered prior to meeting with TD Bank.

law on the fraudulent misrepresentation claim on this ground is therefore inappropriate.

### 3.   *Bankruptcy Settlement as Damages*

TD Bank contends that it is entitled to judgment as a matter of law because Coquina did not sufficiently prove that the settlement with the RRA Bankruptcy Trustee constitutes its damages.  TD Bank argues that Coquina did not present sufficient evidence for a jury to find the settlement was reasonable, Coquina failed to show that the settlement payments it made to the RRA Trustee relate to investments it made after August 17, 2009, and the settlement payments are contingent and speculative.

On October 17, 2011, Coquina entered into a settlement with the RRA bankruptcy trustee.  On October 21, 2011, the bankruptcy court held a hearing on the Trustee's Motion to Approve the Settlement Agreement, and thereafter granted the Motion and approved the terms of the settlement agreement in their entirety.  As part of that settlement, Coquina paid $12.5 million to the Trustee, and agreed to pay the Trustee 75% of any net monetary award it received in this action until Coquina paid the Trustee a total of $18.5 million, after that, Coquina agreed to pay the Trustee 25% of any net monetary award it received in this action until Coquina paid the Trustee a total of $31.1 million.

A party seeking to recover a settlement amount as damages must "establish that the settlement was made based on its potential liability to the [other party to the settlement]." *In re Mirabilis Ventures, Inc.*, No. 09-271, 2011 WL 3236027, at *6 (M.D. Fla. Jul. 28, 2011).  A showing of "potential liability"[6] is necessary to prevent a party from recovering a settlement amount when he was "a mere volunteer who has settled the underlying claim when there was no

---

[6] Coquina need only show "potential liability" instead of "actual liability" because TD Bank received adequate protection during the settlement approval process.  *Cf. GAB Business Servs.*, 809 F.2d at 761. TD Bank appeared at the settlement approval hearing before the Honorable Raymond B. Ray.  TD Bank did not oppose the settlement, although it had the opportunity to do so on at least two occasions.  (*See* Sept. 25, 2012 Motions Hr'g, Pl.'s Ex. A, at 16, 17).

exposure to legal liability that obligated him or her to do so." *Id.* Further, a plaintiff can "only recover so much of the settlement as it proved was reasonable in amount, and a consequence of [the defendant's wrongful conduct]." *GAB Business Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 761 (11th Cir. 1987).

I agree with TD Bank that none of Coquina's witnesses explicitly testified that the agreement was reasonable. However, Coquina presented sufficient evidence regarding the amount of its investments, the amount of money Rothstein failed to repay to it, the nature of the bankruptcy proceeding, Coquina's settlement with the Trustee and its potential liability, its calculation of damages, and its calculation of payments under the settlement agreement, for a reasonable jury to find that the settlement terms were reasonable. Coquina also submitted into evidence the actual settlement agreement, which explained that, "in the interest of avoiding costly and time-consuming litigation, the Trustee and Coquina have agreed to the terms set forth in th[e] Settlement Agreement." Notably, the total amount of the settlement was not an arbitrary number without a basis in the amount Coquina proved that it invested or the potential liability Coquina established that it faced with respect to the Trustee's demand. In sum, Coquina provided sufficient evidence to show that the settlement amount was reasonable and in line with Coquina's total exposure and potential liability as a result of the losses it suffered in its investments with Rothstein.[7]

I now turn to the question of whether Coquina adequately proved its damages. "Under

---

[7] That the settlement agreement did not parse out payments for investments that occurred before and after August 17, 2009, is immaterial. This argument relates to TD Bank's contention, discussed and rejected in Part III.B, that Coquina cannot recover any damages it incurred prior to August 17, 2009, when TD Bank employees first made misrepresentations to Coquina. That date is irrelevant for the aiding and abetting claim, which does not require a showing of reliance on a material misrepresentation. As for the fraudulent misrepresentation claim, for the reasons discussed below, the jury had sufficient evidence for a jury find TD Bank liable for its misconduct and award $16 million in damages, based on the investments Coquina made after August 17, 2009, which amounted to $24 million.

Florida law, 'recoverable damages occasioned by a tort include all damages which are a natural, proximate, probable or direct consequence of the act, but do not include remote consequences.'" *Mirabilis Ventures*, 2011 WL 3236027, at *5 (quoting *Taylor Imported Motors, Inc. v. Smiley*, 143 So. 2d 66, 68-69 (Fla. Dist. Ct. App. 1962)).   A plaintiff in Florida "must show with reasonable certainty that [it] suffered damages and that the damages flowed as the natural and proximate result of defendant's wrongful conduct."  *Aldon Indus., Inc. v. Don Myers & Assocs., Inc.*, 517 F.2d 188, 191 (5th Cir. 1975).  The amount of damages cannot be left to speculation or conjecture."  *Id.*  However, "the impossibility of calculation with 'absolute exactness' will not defeat recovery."  *Id.*

As discussed above, the evidence at trial showed that Coquina deposited a total of $37.7 million in RRA's TD Bank account and Rothstein paid out $31.1 million to Coquina.  At base, Coquina suffered an initial $6.7 million in losses (i.e., money Rothstein never repaid to Coquina), and around $700,000 in prejudgment interest.  After RRA went bankrupt, the RRA Trustee made a demand upon Coquina to recover payments Coquina received from Rothstein in connection with its investments in order to redistribute those funds through the bankruptcy process.  Clearly, had TD Bank not aided and abetted in Rothstein's fraud and not made fraudulent misrepresentations to Coquina, Coquina would not have been subject to the Trustee's demand.  Coquina presented evidence that TD Bank proximately caused Coquina's losses, which are reflected in the amount it owed to the Trustee.

Coquina put forth evidence regarding the total amount it invested with Rothstein, the amount of money Rothstein never repaid to Coquina, the amount Rothstein repaid to Coquina, but which was subject to the Trustee's demand, its potential liability in the bankruptcy action, and provided a means to compute its damages. *Cf. Mirabilis Ventures*, 2011 WL 3236027, at *6

(excluding evidence of damages as a result of settlement where plaintiff "did not provide any computation of its damages or any materials bearing on the nature and extent of injuries suffered" and the evidence suggested plaintiff "had settled the Government's claim without having any idea of the amount of tainted money that had flowed into the company, the penalties and interest it faced as a result, or the legal theory under which such liability might be imposed.").  Specifically, White testified about the circumstances involving the investment, the amount Coquina invested, and the amount it received from Rothstein.  Coquina submitted wire transfer statements to further show how much money Coquina invested with Rothstein.  Yip, Coquina's damages expert, also testified about the amount of money Coquina invested and the amount of money it received from Rothstein.  Yip explained the settlement agreement between Coquina and the bankruptcy trustee, and discussed what Coquina would owe under the agreement, as well as its total exposure.  She explained the formula for calculating the payments Coquina would have to make to the Trustee.  Such evidence was sufficient for a jury to calculate damages with reasonable certainty; the damages were not contingent or speculative.

### 4. *Coquina' Claim for Attorney's Fees*

TD Bank states it is entitled to a judgment as a matter of law on Coquina's claim for attorney's fees with respect to its RICO claim.  This Court dismissed Coquina's RICO claim before trial, at summary judgment.  Coquina did not pursue that claim at trial.  This issue is therefore moot.

**B.  TD Bank's Motion for New Trial, to Alter Judgment, and for Remittitur**

**1.  *Testimony of Frank Spinosa and Court's Jury Instructions on Adverse Inference***

TD Bank moves for a new trial based on this Court's ruling allowing Frank Spinosa to testify and the Court's instruction to the jury that they could draw an adverse inference against TD Bank based on Spinosa's assertion of the Fifth Amendment privilege.

On October 19, 2011, I entered an Omnibus Order on Motions in Limine, granting TD Bank's motion to exclude Spinosa's deposition testimony.  (ECF No. 548).  I found that, at the time of the deposition, Spinosa did not have any loyalty to TD Bank and drawing an adverse inference against the Bank based on the deposition testimony would be improper.  On November 8, 2011, before jury selection, I indicated that Spinosa could testify at trial and assert his Fifth Amendment privilege before the jury.  On November 10, 2011, before Spinosa took the stand, I heard arguments about what jury instruction, if any, I should give regarding Spinosa's assertion of his Fifth Amendment privilege.  After Spinosa invoked his Fifth Amendment privilege for the first time, I issued the following instruction:

> Ladies and gentlemen of the jury, you should be aware that this witness is a former employee of TD Bank.
>
> He has, at this point in time, invoked his privilege against self-incrimination that is guaranteed to him under the United States Constitution.
>
> I instruct you that this is his constitutional right to do so.  I further instruct you that you may infer, from his refusal to answer certain questions, that the answer would be harmful to him.
>
> The Fifth Amendment to the Constitution affords every person the right to decline to answer any question if that person believes that the answer may tend to incriminate them.
>
> A negative or adverse inference means that you may infer from Mr. Spinosa's assertion of his Fifth Amendment privilege, as a former bank employee, that the answers would be adverse to TD Bank.  Therefore, under the law, you may, but you need not infer, that Mr. Spinosa's refusal to answer certain questions would be adverse to TD Bank's interests.
>
> Mr. Spinosa's assertion of his Fifth Amendment privilege alone is not proper -- is not a proper basis for finding TD Bank liable in this case.  However, in conjunction with other evidence to be presented, Mr. Spinosa's assertion of his

Fifth Amendment privileged may be considered by you in determining TD Bank's liability in this case.

(Trial Tr. 19-20, Nov. 10, 2011, ECF No. 800).  Spinosa went on to invoke his Fifth Amendment privilege in response to every substantive question Coquina's counsel asked him on direct examination.  TD Bank did not cross-examine the witness.

TD Bank first argues the Court's ruling allowing Spinosa to testify substantially prejudiced it because it was caught by surprise.  TD Bank maintains that it relied on the Court's ruling on the admissibility of Spinosa's deposition testimony, and had no indication prior to its opening statement that I would allow Spinosa to testify at trial and that I would instruct the jury that it could draw an adverse inference against the Bank based on Spinosa's invocation of his Fifth Amendment privilege.  Prior to jury selection, however, I indicated that Spinosa would be allowed to testify and stated that I would consider giving an instruction about Spinosa's invocation of his Fifth Amendment privilege.  (*See* Trial Tr. 8-10, Nov. 8, 2011, ECF No. 799). Thus, the fact that Spinosa did testify two days later was hardly a surprise to TD Bank.

Next, TD Bank suggests that the Court could not reconsider its prior ruling on TD Bank's motion in limine.  To the extent I reconsidered my prior ruling,[8] it is well-settled that orders on motions in limine are subject to reconsideration.  *See, e.g.*, *United States v. Shelley*, 405 F.3d 1195, 1208 (11th Cir. 2005) ("[W]henever a district court makes an *in limine* evidentiary ruling prior to trial, it is always subject to reconsideration based on what happens at trial."); *Mirabilis Ventures,* 2011 WL 3236027, at *5 ("A district judge is free, in the exercise of sound judicial

---

[8] I had not previously ruled whether Spinosa could testify at trial; the Omnibus Order on Motions in Limine granted TD Bank's motion to exclude Spinosa's deposition testimony only.  Thus, my ruling allowing Spinosa to testify cannot be properly characterized as a reconsideration of a prior order.  I did, however, reconsider my prior finding that an adverse inference against the Bank would be inappropriate, and permitted the jury to draw an adverse inference against the Bank based on Spinosa's invocation of his Fifth Amendment privilege.

discretion, to alter a previous *in limine* ruling, even if nothing unexpected happens at trial." (citing *Luce v. United States*, 469 U.S. 38, 41 (1984))); *In re Herzfeld*, No. 04-44635, 2007 WL 7143395, at *1 (Bankr. N.D. Ga. Dec. 17, 2007) ("Indeed, a ruling on a motion in limine is interlocutory and therefore subject to reconsideration by the Court at trial so its value to the litigants in determining its trial strategy is limited."). The mere fact that I reconsidered my prior order is not grounds for a new trial. TD Bank does not present any convincing argument that I made an error of law when I found, after trial commenced, that an adverse inference against the Bank based on Spinosa's assertion of his Fifth Amendment privilege comported with the *Libutti* factors, *see Libutti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997), or that allowing Spinosa to testify would not run afoul of Rule 403 of the Federal Rules of Evidence.

According to TD Bank, Spinosa's repeated invocation of his Fifth Amendment privilege substantially prejudiced the Bank and requires a new trial. A district court has discretion to allow a properly disclosed fact witness to testify, even though he may invoke his Fifth Amendment rights. *See FDIC v. Fidelity & Deposit Co. of Md.*, 45 F.3d 969, 978 (5th Cir. 1995) ("[W]e refuse to adopt a rule that would categorically bar a party from calling, as a witness, a non-party who had no special relationship to the party, for the purpose of having that witness exercise his Fifth Amendment right."); *RAD Servs., Inc. v. Aetna Cas. & Surety Co.*, 808 F.2d 271, 277 (3d Cir. 1986) ("The trial judge maintains discretion under Fed. R. Evid. 403 to control the way in which non-party claims of privilege reach the jury.").

I do not find that Spinosa's repeated invocation of his Fifth Amendment privilege substantially prejudiced TD Bank. As discussed further below, this Court instructed the jury that it may, but need not, infer that Mr. Spinosa's refusal to answer certain questions would be adverse to TD Bank's interests, and that Spinosa's Fifth Amendment assertions, alone, were not

17

a proper basis for finding TD Bank liable.  TD Bank had the opportunity to cross-examine Spinosa, although it chose not to do so.  Finally, TD Bank was able to—and did—comment on Spinosa's invocation of his Fifth Amendment privilege during its closing argument.  *Cf. Fidelity & Deposit Co. of Md.*, 45 F.3d at 978.  TD Bank is not entitled to a new trial on the ground that Spinosa invoked his Fifth Amendment privilege before the jury.

TD Bank further argues that the Court's adverse inference instruction was improper.  It is well-settled that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976).  A jury can only draw an adverse inference against a party as to a particular fact when "independent evidence exists of the fact to which the party refuses to answer."  *See S.E.C. v. Whittemore*, 659 F.3d 1, 12 (D.C. Cir. 2011).  In other words, a judgment cannot rest solely on the adverse inference.  *See LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995) ("[A]lthough inferences based on the assertion of the privilege are permissible, the entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence exceeds constitutional bounds.'" (quoting *Baxter*, 425 U.S. at 318)).  Further, a court does not need to "tailor its adverse inference instructions on a 'question-by-question basis.'"  *S.E.C. v. Jasper*, 678 F.3d 1116, 1126 (9th Cir. 2012).

After Spinosa asserted his Fifth Amendment privilege for the first time, I instructed the jury that they "may, *but need not*" infer that Spinosa's "refusal to answer certain questions would be adverse to TD Bank's interests."  I warned the jury that "Spinosa's assertion of his Fifth Amendment privilege alone . . . is *not* a proper basis for finding TD Bank liable in this case."  I also informed the jury that "*in conjunction with other evidence to be presented*, Mr. Spinosa's assertion of his Fifth Amendment privileged *may be considered* by you in determining TD

Bank's liability in this case."  Reading the instruction as a whole, I find that it complies with the law, as set forth above.  I emphasized that the jury was not required to draw any adverse inferences against TD Bank, and the jury could not find TD Bank liable based solely on Spinosa's refusal to answer questions.[9]

TD Bank also contends that the Court should have required Coquina's counsel to submit a list of questions it intended to ask Spinosa before his direct examination, so that TD Bank would have the opportunity to object to improper questions not supported by the record.  TD Bank had the opportunity to make any appropriate objections to any questions Coquina posed to Spinosa, as is always the case during a witness's testimony.  TD Bank did so.  I ruled on those objections.  TD Bank does not point me to any legal authority that states that the procedure I employed is inappropriate.

TD Bank further argues that the nature of some of Coquina's questions to Spinosa substantially prejudiced it.  Specifically, TD Bank contends Coquina asked Spinosa questions based on hearsay and information Coquina's counsel received from the RRA Bankruptcy Trustee in violation of an order the Honorable James I. Cohn entered in *In re Rothstein Rosenfeldt Adler, P.A.*, Case No. 11-61338-CIV-COHN (S.D. Fla. Dec. 22, 2011).  In that matter, Judge Cohn permitted the Bankruptcy Trustee to conduct a private interview of Rothstein after the Trustee

---

[9] Further, I note that TD Bank was able to—and did—comment on Spinosa's invocation of his Fifth Amendment privilege and the Court's instruction at closing arguments:

> In fact, the Court's instructions recognize that you can't jump to conclusions. And one of the things that the Court has told you, and you will be able to read in your instructions, is that you may draw a negative inference from an assertion of the Fifth. You are not required to, you are not required to; and the only time you can draw a negative inference is if there is independent corroborating evidence for that inference; independent corroborating evidence for that inference.
>
> So when Mr. Mandel showed you all of the times he asked a question and Mr. Spinosa asserted the Fifth, you can't take a negative inference from that, unless you find that there is independent corroborating evidence of that fact.

(Trial Tr. 135-36, Jan. 17, 2012, ECF No. 821).

confirmed that the information gained through that interview would not be shared with counsel in the Rothstein-related civil cases.  (*See* Case No. 11-61338, ECF No. 100).  After learning Coquina's counsel used the information in this trial to form a good faith basis for a line of questioning during Spinosa's examination, Judge Cohn found the Trustee violated the Court's order in that case.  (*Id*. at 6).

Counsel must have a good-faith basis for posing questions to a witness.  *See United States v. Beck*, 625 F.3d 410, 418 (7th Cir. 2010) ("No attorney may ask a question if he doesn't have a good-faith basis to ask it; that is, attorneys cannot take a shot-in-the-dark approach to their questions.").  However, "counsel need not proffer a factual foundation for all questions asked on cross-examination.  A well reasoned suspicion that a circumstance is true is sufficient." *United States v. Sampol*, 636 F.2d 621, 658 (D.C. Cir. 1980) ("The general rule in such situations is that the questioner must be in possession of some facts which support a genuine belief that the witness committed the offense or the degrading act to which the questioning relates." (internal quotation marks omitted)).  Materials that would ordinarily be inadmissible hearsay may form a good faith basis to pursue a line of questioning.  *See, e.g.*, *United States v. Rodney*, 999 F.2d 541 (6th Cir. 1993) (unpublished) (noting that, "[w]hile the [government's] information was multiple hearsay, it did provide a basis for the government's inquiry."); *United States v. Lance*, Nos. 3:08-cr-096, 3:11-cv-355, 2011 WL 7039460, at *6 (S.D. Ohio Dec. 5, 2011) ("While hearsay documents can provide a good-faith basis for cross-examination, they cannot be admitted in evidence as substantive proof of their contents.").

Coquina was able to provide a good-faith basis for its questions to Spinosa about Rothstein's payments to him.  Although the Trustee violated Judge Cohn's order by providing Coquina with notes of his interview with Rothstein, Coquina was not a party to that action and

did not violate any order of the Court.  In fact, Coquina's counsel represented to this Court at the September 25, 2012 motions hearing that he was unaware of Judge Cohn's order when he used information learned from the Trustee to question Spinosa.  Coquina's counsel also represented to this Court that his questions were based on several different sources of information, not only the Trustee's notes of the Rothstein interview.  Having reviewed the record and the representations made to me, I do not find that TD Bank is entitled to a new trial on this ground.

Finally, even if this Court committed error in allowing Spinosa to testify and allowing the jury to draw an adverse inference against the Bank, a new trial is inappropriate because I do not find that the verdict was against the great weight of the evidence.  Further, to the extent TD Bank objects to Spinosa's assertion of the Fifth Amendment in response to questions about TD Bank's knowledge of the fraud, any error this Court made in allowing Spinosa to testify would be harmless in light of its ruling, as a sanction for TD Bank's role in discovery violations, that the fact that TD Bank had actual knowledge of Rothstein's fraud be taken as established for purposes of this action.

### 2.  *Admission of Evidence of Purportedly Unpleaded Claims*

TD Bank argues that this Court should not have allowed Coquina to seek to recover $22 million in damages based on what it claims were unpleaded allegations.  TD Bank further argues that the Court should not have permitted Coquina to seek supplemental damages based on its settlement with the Bankruptcy Trustee.

TD Bank argues the Court should have excluded evidence that Spinosa made representations to Coquina that approximately $22 million was held in an RRA account, because it was not pleaded with specificity in Coquina's Complaint.  This evidence, however, is related to pleaded issues.   Coquina's Complaint alleged that Spinosa "conferred with Coquina's

representatives on different occasions, both in person and via telephone, confirming that the funds that Rothstein said were held for Coquina were being maintained in a TD Bank account for the sole and exclusive benefit of Coquina." Through deposition testimony, TD Bank learned as early as March 31, 2011, that Spinosa represented to Coquina that $22 million was held in an RRA TD Bank account. The only difference between that evidence and Coquina's pleadings is the level of detail regarding the substance of Spinosa's alleged representations. Rule 9's heightened pleading standard, however, does not require a plaintiff to plead its evidence. *See, e.g., Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1264 n.92 (5th Cir. 1990) ("Rule 9(b) does not require nor make legitimate the pleading of detailed evidentiary matter."); *Knight v. E.F. Hutton & Co.*, 750 F. Supp. 1109, 1115 (M.D. Fla. 1990) (same).

TD Bank also argues that Coquina did not timely supplement its discovery responses before trial. However, as this Court held in the Omnibus Order on Motions in Limine, any failure to disclose was harmless, as TD Bank knew about this evidence since March 31, 2011, and therefore it did not come as a surprise at trial. Admission of this evidence does not warrant a new trial.

TD Bank further argues that the Court should not have permitted Coquina to seek supplemental damages based on its settlement with the Bankruptcy Trustee. TD Bank also argues this Court did not give it a sufficient opportunity or a reasonable amount of time to conduct discovery regarding the claims the Trustee threatened to bring against Coquina, which defenses Coquina raised, and whether Coquina's decision to settle the Trustee's potential claims was reasonable under the circumstances.

I am unconvinced that this Court erred in permitting Coquina to seek supplemental damages based on its settlement with the Bankruptcy Trustee. TD Bank knew of the existence of

the Trustee's demand and Coquina's intention to include any "claw back" payments in its calculation of damages since the beginning of this case.  On July 13, 2010, Coquina served its Initial Disclosures on TD Bank.  As part of its computation of damages, Coquina disclosed that the RRA Bankruptcy Trustee made demand upon Coquina for over $30 million.  (*See* ECF No. 520-2).  Coquina also disclosed the existence of this demand in three different places in its June 16, 2010 Civil RICO Statement.  (*See* ECF No. 16).  Coquina entered into a settlement with the RRA Bankruptcy Trustee on October 17, 2011, and sought to include the settlement amount as part of its damages calculations shortly thereafter.  This development was not a surprise to TD Bank.

Following the bankruptcy court's approval of the settlement on October 21, 2011, I entered an order allowing TD Bank to conduct limited discovery into the nature of the settlement.  (ECF No. 570).  I ordered Coquina to make its damages expert available for deposition by TD Bank, and to produce any existing documents reflecting settlement payments to the Trustee, including transfer printouts and copies of checks or other payment methods, any releases related to the settlement agreement, and an accounting of any associated expenses, along with supporting documentation, such as itemized invoices, for the same.  (*Id*.)  In this Court's view, there was little need for further discovery on the settlement agreement.  The settlement amount was in line with the amount Rothstein had paid to Coquina as "returns" for its purported investments and in line with the Trustee's demand.  Given the terms of the settlement agreement, it was incredible to presume that the settlement was for anything other than to resolve the Trustee's demand for money Rothstein paid to Coquina on the fraudulent investments.  Further discovery on this issue would have served only to further delay the trial and expend unnecessary

resources.  I do not find that TD Bank's inability to conduct expansive discovery on this issue resulted in a verdict against the great weight of the evidence.

As to the issue of usury, TD Bank maintains that more expansive discovery may have revealed whether the Trustee threatened to claim that Coquina violated Florida usury law. However, TD Bank admits that the Trustee's demand letter states that the Trustee had threatened to bring claims against Coquina for usury.  Thus, having already obtained its answer on that question in the form of the demand letter itself, it is unclear what additional discovery could have revealed on that issue.  Because I find that TD Bank had a reasonable opportunity to conduct discovery into this matter and the admission of the settlement itself was not in error, a new trial on this ground is improper.

### 3.  *Admission of Settlement Agreement*

TD Bank contends that the admission of the October 17, 2011 settlement agreement between Coquina and the RRA Bankruptcy Trustee prejudiced it and requires a new trial.  TD Bank notes that the settlement agreement contained certain findings of fact that constitute inadmissible hearsay.  For example, the settlement agreement states that "Coquina and its counsel have represented to the RRA Trustee and his counsel that neither Coquina nor its partners . . . had any knowledge of the Rothstein Ponzi scheme at the time of their receipt of funds," which the RRA Trustee sought to claw back, and "the Trustee has no knowledge to the contrary nor any indication of Coquina's knowledge of complicity in or with the Rothstein Ponzi scheme."  Further, TD Bank argues that because the jury knew that the bankruptcy court had approved the settlement, the admission of the settlement agreement prejudiced TD Bank by suggesting to the jury that they should concur with the findings set forth in the agreement.

Hearsay is a declarant's out-of-court statement that a party offers in evidence to prove the truth of the matter asserted in the statement.  Fed. R. Evid. 801(c).  Factual findings made in a separate case by another court constitutes hearsay and cannot be judicially noticed or admitted under the public records exception to the hearsay rule.  *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1287 (11th Cir. 2001) (citing *United States v. Jones*, 29 F.3d 1549, 1551, 1553-54 (11th Cir. 1994)).  A statement of facts drafted by counsel but incorporated into a judge's opinion is particularly concerning because "they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice." *Id.* (quoting *Nipper v. Snipes*, 7 F.3d 415, 417-18 (4th Cir. 1993)).  Thus, such factual findings in a judicial opinion should normally be excluded under Rule 403, as well.  *See id.* at 1288.

TD Bank likens this case to the circumstances in *Tieco*, where the Eleventh Circuit held that the admission of a judicial opinion resulted in reversible error.  In *Tieco*, the trial judge admitted a judicial opinion, which included a memorandum of facts drafted by a party.  261 F.3d at 1286.  The Court of Appeals noted that "[t]he memorandum was an exhaustive account that neatly conformed to [the counterclaim-plaintiff's] allegations, especially with respect to the malicious prosecution, abuse of process, and civil conspiracy counterclaims," and it "depicted in great detail [the counterclaim-plaintiff's] view about the nature of [counterclaim-defendant's] involvement in the AG's investigation of [counterclaim-plaintiff]." *Id.*  Further, the Eleventh Circuit noted that, in the opinion, the judge "did not mince words" when setting out his findings. *Id.*  The counter-plaintiff relied heavily on the judicial opinion during the examination of witnesses, including reading extensive portions of the opinion, and during closing argument, where counsel told the jurors that, if they had any question about certain witnesses' credibility, they should consult the opinion.  *Id.*

The circumstances in this case are easily distinguishable from *Tieco*.  In this case, I admitted a settlement agreement, not a judicial opinion.  The parties, including TD Bank, stipulated that the bankruptcy judge approved the settlement.  (Trial Tr. 20, Dec. 9, 2011, ECF No. 812).  The bankruptcy judge's order approving the settlement agreement, however, was not admitted into evidence.  The settlement agreement does not contain a case caption, which might suggest that it has the court's imprimatur.  (See Trial Ex. P-896).  It is obvious from the settlement agreement that any statements contained therein reflected the parties' understanding of the facts, not the judge's.  Moreover, the statement of facts does not contain any ultimate findings on liability or innocence.  It merely states the representations that the parties made to each other and their personal knowledge of the facts:  "Coquina and its counsel *have represented* to the Trustee and his counsel that neither [it nor other related persons] . . . had any knowledge of the Rothstein Ponzi scheme at the time of their receipt of funds" subject to claw back, and "*the Trustee* has no knowledge to the contrary nor any indication of Coquina's knowledge of or complicity in or with the Rothstein Ponzi scheme."

I find that the admission of the settlement agreement did not substantially prejudice TD Bank.  The settlement agreement was clearly relevant to Coquina's computation of damages.  Futher, the settlement agreement is non-hearsay to the extent Coquina used it to prove its liability to the Trustee.  *See, e.g.*, *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992) ("A contract, for example, is a form of verbal act to which the law attaches duties and liabilities and therefore is not hearsay.").  The statements contained in the agreement did not express ultimate findings of liability or innocence, which may have presented problems under Rule 403 of the Federal Rules of Evidence. In his closing argument, Coquina's counsel mostly discussed the settlement agreement in the context of calculating damages.  (*See, e.g.*, Trial Tr. 91-93, Jan. 17, 2012, ECF

No. 93).   Although Coquina's counsel admittedly made one comment regarding the factual statements in the settlement agreement, this isolated remark, in the context of a two-hour-long closing argument, did not substantially prejudice TD Bank.[10]   The motion for new trial on this ground is denied.

### 4.  *Admission of Evidence of Extrinsic Acts*

TD Bank argues that the admission of evidence regarding other, non-Coquina investors or potential investors in Rothstein's Ponzi scheme, who attended "shows" or other meetings at TD Bank, was in error and entitles TD Bank to a new trial.   Coquina counters that the Court properly admitted such evidence, as it was relevant to prove the nature of the underlying Ponzi scheme, which, by its very nature, requires other investors to function, and to prove TD Bank's knowledge of the fraud.

Evidence of other acts may be admissible as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."   Fed. R. Evid. 404(b).  In analyzing whether extrinsic-act evidence is properly admissible, a court must determine (i) "that the extrinsic offense evidence is relevant to an issue other than the defendant's character"; and (ii) that the evidence "possess[es] probative value that is not substantially

---

[10] Coquina's counsel made the following remark, over TD Bank's objection:

> MR. MANDEL: Lastly, if we had knowledge of the fraud, if you look at the settlement agreement, you will see that the trustee --
> MS. SKOLNICK: Objection, Your Honor.
> THE COURT: Overruled.
> MR. MANDEL: You will see that there is a denial that we had any knowledge of the Ponzi scheme in that document and the settlement agreement that was entered into with the trustee and approved by the bankruptcy court says that the trustee has no knowledge or any indication of Coquina's knowledge of or complicity in or with the Rothstein Ponzi scheme.

(Trial Tr. 180, Jan. 17, 2012, ECF No. 821).

outweighed by its undue prejudice" pursuant to Rule 403.  *Lanham v. Whitfield*, 805 F.2d 970, 972 (11th Cir. 1986).

One of the elements of an aiding and abetting fraud claim is the existence of an underlying fraud.  *See ZP No. 54 Ltd. P'ship*, 917 So. 2d at 372.  Coquina alleged in its complaint that the underlying fraud was a Ponzi scheme Rothstein operated to defraud investors, including Coquina, with TD Bank's assistance.  In the most basic terms, a Ponzi scheme is an investment fraud where prior investors are paid purported returns with funds obtained from new investors.  Thus, evidence of the existence of other investors is relevant to establishing the existence of a Ponzi scheme.  *Cf. Am. Cancer Soc'y v. Cook*, 675 F.3d 524, 528 (5th Cir. 2012) (reversing court's entry of judgment where receiver failed to show company was operating a Ponzi scheme because it offered "no proof that [the investment program's] perpetuation, unlike that of a traditional Ponzi scheme, was based on the manufacturing of 'returns' to investors from other investors' contributions.").

To prove its aiding and abetting claim, Coquina also had to show that TD Bank knew about the fraud against Coquina.  *See ZP No. 54 Ltd. P'ship*, 917 So. 2d at 372.  Coquina introduced evidence of other investors attending "shows" or meetings at TD Bank with several employees to show TD Bank's knowledge that Rothstein was operating the Ponzi scheme, which, by definition, required the existence of other investors.  *Cf. United States v. Butler*, 792 F.2d 1528, 1535 (11th Cir. 1986) (evidence of extrinsic acts may be admissible to show knowledge); *United States v. Sellers*, 906 F.2d 597, 604 n.11 (11th Cir. 1990) (evidence can be 'relevant to an issue other than . . . character' where . . . it is probative of knowledge and intent on the part of the defendant").

Based on my review of the record, I find that the evidence regarding other investors was

properly admitted at trial.  The evidence did not relate to character, and its probative value outweighed any prejudice to TD Bank.  Further, to the extent the evidence relates to TD Bank's knowledge, any error in admitting evidence of other investors is harmless, as the fact that TD Bank had actual knowledge of Rothstein's fraud is taken as established for purposes of this action based on this Court's sanctions ruling.

TD Bank makes two additional arguments regarding Coquina's closing argument.  First, TD Bank states that Coquina's counsel "raised the spector of money laundering and terrorist financing," when he stated that TD Bank had an obligation to report and stop fraud once the fraud was evident because "money laundering and terrorist financing are financial crimes with potentially devastating social and financial effects, devastating effects."  (*See* TD Bank's Mot. for New Trial 24; Trial Tr. 71, Jan. 17, 2011, ECF No. 821).  TD Bank did not object to the statement at the time it was made, but did object to the use of the term "terrorist financing" after the closing argument was finished.  Coquina's counsel also stated that "the next Scott Rothstein is out there somewhere or maybe worse yet, some drug lord or terrorist, and I'll bet they are running, not walking . . . to open their accounts at TD Bank right now."  (Trial Tr. 72, Jan. 17, 2012, ECF No. 821).  TD Bank objected at the time this statement was made.

These references relate to evidence in the case.  Catherine Ghiglieri, Coquina's banking expert, testified that the BSA requires that banks monitor transactions "to detect money laundering, terrorist activity, or other types of criminal activity."  (Trial Tr. 47, Dec. 6, 2011, ECF No. 809).  The AML/BSA manual Ghiglieri relied on to reach her opinions also states that the BSA's purpose is to safeguard financial institutions "from abuses of financial crime, including money laundering, terrorist activity, and other illicit financial transactions."  (Trial Tr. 51, Dec. 6, 2011, ECF No. 809).  In his closing argument, Coquina's counsel was drawing the

jury's attention to the importance of a bank's regulatory compliance and monitoring systems, while commenting on the evidence put forth at trial.  Coquina's remarks in this regard do not entitle TD Bank to a new trial.

Second, TD Bank states that Coquina's counsel improperly attacked TD Bank's counsel's integrity during his closing argument, when he stated that TD Bank's attorney "didn't spend time talking to you about the evidence, and ladies and gentlemen, it will be up to you to decide whether or not she was misleading you," and on other occasion commented,  "So it is up to you, ladies and gentlemen, to decide, whether or not what [TD Bank's counsel] told you in her remarks, whether or not that was misleading."  (Trial Tr. 174, 175, Jan. 17, 2012, ECF No. 821). TD Bank's counsel did not object to the first statement, but objected to the second statement when it was made, although it did not state the grounds for the objection.

In the context of the argument, Coquina's counsel was commenting on the fact that TD Bank's counsel had not presented, during her closing, all of the evidence in the case, which would go against her client.  I agree, however, that it was unnecessary for Coquina's counsel to go the extra step to suggest TD Bank's counsel might be misleading the jury.  That said, I do not find that these isolated comments during a lengthy closing argument were sufficiently severe to substantially prejudice TD Bank and entitle it to a new trial.

5. ***Exclusion of TD Bank's Evidence Regarding Criminal Usury and Certain Damages Expert Opinions***

First, TD Bank argues that the Court erred in excluding evidence related to purported violations of Florida usury statutes.  Specifically, TD Bank argues this Court should have admitted the RRA Trustee's demand package[11] into evidence and allowed the Bank to reference the demand package at trial and question witnesses about the Trustee's demand.  In the demand,

---

[11] The "demand package" includes the March 5, 2010 demand letter and exhibits thereto, including a proposed complaint against Coquina.  (*See* Trial Ex. D-947).

the RRA Trustee claimed that Coquina intended to charge, take, or receive more than the legal rate of interest from RRA pursuant to the structured settlement investments, which were drafted as promissory notes.[12]  Coquina counters that the demand package was properly excluded under Rule 408 of the Federal Rules of Evidence, which prohibits the admission of documents that relate to compromise negotiations, or Rule 403 of the Federal Rules of Evidence, because the demand package constitutes a charging document whose probative value is outweighed by a danger of unfair prejudice.

The Trustee demand letter constitutes an offer of compromise.  A notice appears at the top of the demand letter, stating that "[t]his correspondence was prepared for settlement purposes and is a privileged settlement communication."  The Trustee sets forth his claims and demands over $31 million from Coquina.  The Trustee then states that "[t]o encourage a speedy and effective resolution of this matter prior to litigation" he is willing to accept an amount below $31 million.  The Court properly excluded the demand letter pursuant to Rule 408.

Further, the admission of the demand letter, which referred to claims that the Trustee never actually filed against Coquina, and which may not have been even remotely viable or meritorious, would only serve to confuse and mislead the jury about the nature of the claims in this case—aiding and abetting fraud and fraudulent misrepresentation.  The demand letter's probative value was slight in comparison to the danger of misleading and confusing the jury.  TD Bank was able to show what were the terms and conditions of the settlement through the settlement agreement, which was admitted into evidence.  Thus, references to the demand letter were also properly excluded pursuant to Rule 403 of the Federal Rules of Evidence.

---

[12] It is clear from the evidence presented at trial that the use of a promissory note to memorialize Coquina's investments with Rothstein was a fiction.  The parties did not intend to effectuate loans between them.

Next, TD Bank argues that the Court erred in excluding its damages expert, Thomas Blake's opinion on what Coquina should have reasonably expected its returns to be. TD Bank takes issue with this Court's October 18, 2011 Omnibus Order on Motions to Exclude Experts (ECF No. 527), in which I noted that TD Bank retained Blake to provide an opinion on damages, not on what Coquina should have reasonably expected its returns to be. TD Bank seizes on this one sentence and states that I excluded Blake's opinion solely on this ground. TD Bank ignores the next paragraph of the order, in which I explain that I am excluding Blake's opinion that Coquina's measurement of damages should be zero because he did not provide any support for calculating Coquina's damages as its likely return on the Rothstein investment. I concluded that Blake's opinion did not comport with a recognized measure of damages and was therefore unreliable. Because TD Bank does not now object to the soundness of my finding on the reliability of Blake's opinion, TD Bank never called Blake as a witness at trial, and TD Bank never made any challenge or objection to this Court's order until now, I do not find that TD Bank is entitled to a new trial on this ground.

### 6.  *Purported Errors in Jury Instructions*

TD Bank identifies four errors in the jury instructions, which it contends requires a new trial: (i) the knowledge and proximate cause language in the aiding and abetting instruction; (ii) the references to Rothstein, which it contends were misleading and prejudicial; (iii) the imputation instruction, which allowed the jury to impute Spinosa's knowledge to the Bank; and (iv) the Court's refusal to instruct the jury on TD Bank's theory of defense. I will consider each argument in turn.

The aiding and abetting instruction stated that to prove knowledge, Coquina must prove TD Bank was "generally aware" of its role in Rothstein's fraud. TD Bank contends that "actual

knowledge" was necessary for a finding of liability.  In support of this contention, TD Bank relies on *Lawrence v. Bank of America*, 455 F. App'x 904, 907 (11th Cir. 2012), an unpublished decision. There, the Court stated, in the motion-to-dismiss context, that "[t]o be liable, the [defendant] bank would have had to have actual knowledge of [the Ponzi schemer's] fraudulent activities."  *Id*. at 907.  It is well-established that an unpublished opinion is not controlling authority and may not be persuasive where its facts are materially different from the present case. *See Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).  *Lawrence* does not bind this Court, and its facts, as I discussed on January 13, 2012, are distinguishable from this case.  (Trial Tr. 106-120, 135-137, Jan. 13, 2012, ECF No. 820).[13]  Finally, any error with regard to the knowledge element of this instruction is harmless, as the fact that TD Bank had actual knowledge of Rothstein's fraud is taken as established for purposes of this action based on this Court's sanctions ruling.

The aiding and abetting instruction also states that Coquina must prove it suffered damages as a proximate result of TD Bank's aiding and abetting fraud.  In particular, TD Bank objects to one particular sentence in this instruction:  "Under the law, an aider-abettor is liable for damages caused by the main perpetrator."  TD Bank argues that this sentence informed the jury that they could find TD Bank liable for Rothstein's conduct.  The sentence, however, does not reference Rothstein at all.  Although certainly not the model of clarity,[14] the next sentence in the instruction provides clarification:  "You may only find that TD Bank 'substantially assisted' in the fraud causing the damages Coquina seeks to recover from TD Bank if you find that TD

---

[13]  Moreover, when a case is before a federal court on diversity jurisdiction, the court must apply the substantive law of the state where they render decisions.  *See Lawrence*, 455 F. App'x at 906 n.3.  TD Bank did not cite any state authority for the proposition that actual knowledge is required in a Florida aiding and abetting claim.  The *Lawrence* decision also did not provide the state authority, which clarifies the "actual knowledge" requirement.

[14]  The Court heard extensive arguments on the jury instructions, which involved numerous drafts, proposed language, and edits.

Bank's alleged conduct in the fraud against Coquina proximately caused those damages."  I do not find that the instruction, read as a whole, misstates the law.

Next, TD Bank argues the jury instruction's references to Rothstein are misleading and prejudicial because TD Bank was the only defendant at trial and references to "Defendant Rothstein" improperly conflate the factual allegations against Rothstein with those against TD Bank.  I find TD Bank's arguments on this issue unpersuasive.  The references to Rothstein were necessary precisely to distinguish the factual allegations against Rothstein (which the jury needed to consider to determine the existence of an underlying fraud against Coquina) and TD Bank (which was responsible for its own fraudulent misrepresentations and substantial assistance to the underlying fraud).  (*See, e.g.*, Jury Instructions 8-10, 14-15, ECF No. 745).  Further, I specifically instructed the jury that "Rothstein's default judgment relates only to the allegations against Rothstein, and does not have any effect on Plaintiff's allegations against TD Bank."  (*Id.* at 16).  Reading the instructions as a whole, I find that the references to Rothstein do not require a new trial.

The Court instructed the jury that "the knowledge and actions of a bank officer or director, such as Regional Vice-President Frank Spinosa, may be imputed to a bank, such as Defendant TD Bank."  TD Bank argues that this instruction is erroneous because it fails to make clear that Coquina had the burden of demonstrating that the imputation doctrine applies.  According to TD Bank, the instruction should have stated that, before finding imputation of an employee's knowledge was proper, the jury was required to find by a preponderance of the evidence that the employee was acting within the scope of employment when he acquired that knowledge.  Just prior to giving the imputation instruction, however, I gave the jury a vicarious liability instruction, derivative of Florida's Civil Pattern Jury Instruction § 401.14, which

explained that the jury had to decide, by a preponderance of the evidence, the preliminary issue of whether any TD Bank employee was a TD Bank agent and was acting within the scope of his or her employment at the time relevant to this case.  The instructions on vicarious liability and imputation were proper.  In any case, any error with regard to this instruction is harmless, as the fact that TD Bank had actual knowledge of Rothstein's fraud is taken as established for purposes of this action based on this Court's sanctions ruling.

Finally, TD Bank argues it is entitled to a new trial based on the Court's refusal to instruct the jury on TD Bank's defenses.  As the Court explained on January 13, 2012, the several instructions were unsupported by the evidence, were not proper defenses, or would only serve to confuse the jury.  (Trial Tr. 95-211, Jan. 13, 2012, ECF No. 820).  TD Bank's present arguments do not convince me otherwise.  To the extent the defense instructions relate to TD Bank's knowledge, any error in failing to so instruct the jury is harmless, as the fact that TD Bank had actual knowledge of Rothstein's fraud is taken as established for purposes of this action based on this Court's sanctions ruling.  A new trial is not warranted on this ground.

### 7.  *Purported Verdict Form Improprieties and Request for Remittitur*

The verdict form allowed the jury to award compensatory damages and punitive damages separately for each count.  TD Bank argues it is entitled to a new trial or, in the alternative, a reduction of the total damages awarded in the final judgment because the jury's verdict award provided Coquina with an improper double recovery for the same conduct.

"[A] remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence."  *Goldstein v. Manhattan Indus., Inc*., 758 F.2d 1435, 1448 (11th Cir. 1985).  A court "can and should preclude double recovery by an individual."  *St. Luke's Cataract & Laser Inst.,*

*P.A. v. Sanderson*, 573 F.3d 1186, 1203 (11th Cir. 2009) (quoting *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 333 (1980)); *see also Minotty v. Baudo*, 42 So. 3d 824, 833 (Fla. Dist. Ct. App. 2010) ("A double recovery based on the same elements of damages is prohibited.").

TD Bank contends that the damages evidence was the same for both counts, and therefore remittitur is proper. The evidence shows that Coquina invested a total of $37.7 million with Rothstein. Coquina asked for, at a minimum, $32 million in compensatory damages to make it whole. On the fraudulent misrepresentation claim, the jury awarded compensatory damages in the amount of $16 million. The jury also awarded $16 million in damages for the aiding and abetting conduct.

Added together, the total compensatory damages do not exceed the total amount of Coquina's losses, i.e., the damages award does not exceed the outer limits of the evidence set forth at trial. I must presume that the jury followed my instructions to award the damages they believed were just, reasonable, and attributable to the misconduct (laid out in two separate counts) for which they found TD Bank liable. On the record before me, I do not find that TD Bank has adequately demonstrated that the jury's award is duplicative.[15] *Cf. Gentile v. Cnty. of Suffolk*, 926 F.2d 142, 154 (2d Cir. 1991) (noting that "defendants do not demonstrate that a jury's award is duplicative merely by noting that it allocated the damages under two different causes of action," especially where the court "correctly instructed the jury to award only those damages that would reasonably compensate plaintiffs for whatever injuries were proximately

---

[15] To the extent the jury may have apportioned damages between the claims, I note that the total award was supported by the evidence. *See Richard Swaebe, Inc. v. Sears World Trade, Inc.*, 639 So. 2d 1120, 1121 (Fla. Dist. Ct. App. 1994) (quoting *Phillips v. Ostrer*, 481 So. 2d 1241 (Fla. Dist. Ct. App. 1985)) ("[W]hen the total award is supported by substantial, competent evidence, the jury's apportionment of damages does not affect the integrity of the verdict."). In *Minotty*, a case TD Bank heavily relies on, a Florida court of appeals held the trial court erred in failing to reduce a judgment, where the jury apportioned damages between two claims and the total was greater than the total amount of damages proven at trial. 42 So. 3d at 834.

caused by defendants' unlawful actions."); *Johnson v. Howard*, 24 F. App'x 480, 485 (6th Cir. 2001) ("Although a double recovery may not be had, the jury is not prohibited from allocating a total damages award between different theories of recovery.").

The jury also awarded $17.5 million in punitive damages for each claims. Punitive damages "are recoverable only against defendants whose wrongful conduct is particularly reprehensible." *G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1536 (11th Cir. 1985). To determine whether a punitive damage award is excessive, the court may consider the relationship between the amount awarded and (1) the degree of misconduct involved, as well as (2) the defendant's ability to pay the judgment. *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1530 (11th Cir. 1985) (citing *Arab Termite & Pest Control, Inc. v. Jenkins*, 409 So. 2d 1039, 1042-43 (Fla. 1982)).

I do not find that a remittitur of the punitive damages award is warranted because the evidence adequately supported the award. The jury was entitled to find, based on the evidence presented, that it was particularly reprehensible that a high-level official at a bank, as well as other employees, would make fraudulent misrepresentations to investors, and that a bank, which people entrust with their money, would aid and abet a Ponzi scheme such as the one Rothstein was operating. It was clear that the Bank is able to pay the judgment, as the evidence showed the Bank's net worth in 2011 was $28 billion.

Further, the punitive damages awarded for each separate claim served to punish TD Bank for different conduct. *Cf. St. Luke's Cataract & Laser Institute*, 573 F.3d at 1205. Those awards are therefore not duplicative.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that:

1.       Defendant TD Bank, N.A.'s Renewed Motion for Judgment as a Matter of Law (ECF No. 760) is **DENIED**; and

2.       Defendant TD Bank, N.A.'s Motion for New Trial, to Alter and Amend Judgment, and for Remittitur (ECF No. 759) is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 28th day of September 2012.

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of record*